J.C. Patrascioiu
CURL, GLASSON & PATRASCIOIU, P.L.C.
485 S. Main Ave., Bldg. 1
Tucson, AZ 85701
(520) 884-7777
Fax (520) 620-0921
jcp@curllaw.com
PCC No. 65961, State Bar No. 24836
*Attorneys for Defendant City of Tucson*

IN THE UNITED STATES DISTRICT COURT

OF THE DISTRICT OF ARIZONA

| | |
|---|---|
| JENNIFER EVANCHO,<br><br>Plaintiff,<br>v.<br><br>CITY OF TUCSON, a municipal corporation; PIMA COUNTY, a political subdivision of the State of Arizona; JAN LESHER, in her official capacity as Pima County Administrator; STEVE KOZACHIK, in his official capacity as Director of Pima Animal Care Center; DOES 1 through 10, in their individual and official capacities as Animal Control Officers, Supervisors, and employees of the City of Tucson and/or Pima County responsible for the seizure, detention, and threatened destruction of Sergeant Snuggles,<br><br>Defendants. | CASE NO: 4:26-CV-00363-RM<br><br>**MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO STAY**<br><br>Hon. Rosemary Marquez |

Defendant City of Tucson ("COT") respectfully moves this Court, pursuant to Federal Rules of Civil Procedure ("Rule") 8(a)(3), 8(d)(1), and 12(b)(6), to dismiss the claims asserted against it in Plaintiff Jennifer Evancho's Complaint ("Complaint") (Doc.

CURL, GLASSON & PATRASCIOIU, P.L.C.
485 S. Main Ave., Bldg. 1, Tucson, AZ 85701
(520) 884-7777 ❖ Fax (520) 620-0921
www.curllaw.com

1), or, in the alternative, to stay this action pending resolution of the parallel proceedings currently pending in state court (the "Motion"). COT separately opposes Plaintiff's application for a temporary restraining order and preliminary injunction ("TRO"). This Motion is more fully supported by the following Memorandum of Points and Authorities.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### I. **Introduction**

Plaintiff's dispute with COT originated in a municipal dangerous-animal proceeding that COT initiated after Plaintiff's dog, Sergeant Snuggles ("the Dog"), mauled Plaintiff's elderly mother. That issue has been litigated continuously in the Arizona courts for the past nine months. First, there was a contested hearing before a Tucson City Court magistrate, then a petition for special action in Pima County Superior Court ("Superior Court"), then a motion to vacate that Plaintiff represents is "now pending" in that same court, and finally proceedings before the Arizona Court of Appeals, Division Two. Every question the Complaint asks this Court to answer—whether the November 24, 2025 order was procedurally adequate, whether the December 11, 2025 amended order is void for want of jurisdiction, and whether the Dog should be released—is already before Arizona courts fully competent to answer it.

Nonetheless, rather than wait for those courts to finish, Plaintiff has filed a parallel federal action asking this Court to consider the identical questions on an emergency basis, inaccurately claiming her constitutional rights have been violated. Those are the circumstances in which principles of federalism, comity, and efficient judicial administration counsel abstention and a stay. And even setting abstention aside, the Complaint's claims against COT do not survive Rule 12(b)(6) analysis for several reasons: Plaintiff's *Monell* theories rest on a single incident and conclusory boilerplate allegations, her ratification and single-decision theories mischaracterize COT's litigation posture as constitutional wrongdoing, and her constitutional claims are founded on the fact that the Dog was seized and is detained pursuant to a facially valid order entered by a neutral judicial officer after a contested, adversarial hearing, one at which Plaintiff appeared with

CURL, GLASSON & PATRASCIOIU, P.L.C.
485 S. Main Ave., Bldg. 1, Tucson, AZ 85701
(520) 884-7777 Option 2 ❖ Fax (520) 620-0921
www.curllaw.com

counsel, cross-examined witnesses, and presented her own retained expert.

Notably, the Complaint's form, itself, independently warrants dismissal. At 42 pages excluding exhibits, it embeds legal argument and preemptive rebuttals to defenses that have not been raised within its statement of facts, organizes its factual allegations under argumentative headings that declare legal conclusions, and includes scandalous and impertinent commentary about a non-party official that bears on no element of any claim against COT. That pleading flies in the face of Rule 8's requirement of a short and plain statement, and it should be dismissed, or, at a minimum, its offending portions stricken, before the Court reaches the merits.

For the reasons, *infra*, COT respectfully requests that the Court dismiss the claims against it or, in the alternative, stay this action pending resolution of the state-court proceedings, and also requests that the Court deny Plaintiff's application for a TRO.

## II. Relevant Background

The following is drawn solely from the allegations in the Complaint and the documents it incorporates by reference, which the Court may consider on this Motion. See *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998). COT does not concede the truth of Plaintiff's characterizations of these events and reserves all factual defenses for further proceedings.

On October 7, 2025, the Dog, an Anatolian Shepherd she calls "Sergeant Snuggles," bit Plaintiff's mother, Clara Gastelum. Compl. ¶ 19. Animal control officers took custody of the dog that day. *Id.* ¶ 21. On November 24, 2025, the Tucson City Court ("City Court") held a contested hearing on COT's Petition and Order to Show Cause. Plaintiff appeared with counsel, presented her own witnesses, including the bite victim and a retained canine-behavior expert, and cross-examined COT's witnesses. *Id.* ¶¶ 24, 32–34; Ex. B generally. Following that hearing, the magistrate found the Dog to be a "vicious or destructive animal" and ordered forfeiture and destruction, but stayed destruction pending appeal. *Id.* ¶ 35; Ex. B at 114:12-19.

CURL, GLASSON & PATRASCIOIU, P.L.C.
485 S. Main Ave., Bldg. 1, Tucson, AZ 85701
(520) 884-7777 Option 2 ❖ Fax (520) 620-0921
www.curllaw.com

The November 24, 2025 Minute Entry itself confirms this account: the Magistrate found the Dog "a vicious animal pursuant to Tucson City Code 4-7," ordered him "forfeited to the State for humane destruction," and "stayed" that destruction "pending Defendant's appeal", noting a bond of $3,600 was necessary to perfect the appeal. Ex. D.

Plaintiff posted that bond on December 4, 2025, and on December 10, 2025 filed a Petition for Special Action in Superior Court, Case No. C20258606, seeking review of the City Court's order. Compl. ¶¶ 40–41. On December 11, 2025, the City Court entered an amended order. *Id.* ¶ 42. Plaintiff alleges that order is void because the City Court had already been divested of jurisdiction when her appeal was perfected. *Id.* ¶¶ 42–44.

According to the Complaint, the Superior Court special action remains pending. Plaintiff alleges a "Motion to Vacate now pending in Superior Court," and that, as of July 14, 2026, COT advised Plaintiff's counsel that "the matter is before the Court of Appeals," *Id.* ¶¶ 56, 78, 80(b). Plaintiff's own abstention argument likewise concedes that "the matter remains pending on appeal" and that its validity is "the very matter now pending before the Lower Court of Appeals in the Superior Court and the Arizona Court of Appeals." *Id.* ¶¶ 138, 143.

On July 17, 2026, while that state-court review remained pending, Plaintiff filed the Complaint asserting three § 1983 claims against COT and Pima County: an unreasonable-seizure claim ("Count I"), a procedural due process claim ("Count II"), and a substantive due process claim ("Count III"). *Id.* ¶¶ 85–114. Each is premised on the same predicate, that the November 24 and December 11, 2025 orders are procedurally defective and, as to the amended order, void. *Id.* The Complaint also seeks a TRO barring the Dog's destruction and requiring his return, ignoring the appeal that already stays destruction pending the outcome of the state-court proceedings. *Id.* ¶¶ 144–148; Prayer for Relief A.

## III. <u>Legal Standard</u>

### A. Rule 8 and Rule 12(f)

Rule 8(a)(3) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(d)(1) requires that "[e]ach

CURL, GLASSON & PATRASCIOIU, P.L.C.
485 S. Main Ave., Bldg. 1, Tucson, AZ 85701
(520) 884-7777 Option 2 ❖ Fax (520) 620-0921
www.curllaw.com

allegation must be simple, concise, and direct." A complaint that is argumentative, prolix, and that intermixes narrative advocacy and legal argument with the statement of facts fails to comply with Rule 8 and is subject to dismissal, typically with leave to amend. *McHenry v. Renne*, 84 F.3d 1172, 1177–80 (9th Cir. 1996); *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058–59 (9th Cir. 2011); *Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir. 1981). Separately, Rule 12(f) permits the Court to strike from a pleading "redundant, immaterial, impertinent, or scandalous matter."

**B. Rule 12(b)(6)**

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court need not accept as true legal conclusions couched as factual allegations, and where a complaint's exhibits contradict its own characterization of events, the exhibits control. *Steckman*, 143 F.3d at 1295–96.

**C. Abstention and Stay Principles**

Although federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given them, that obligation yields in defined circumstances to comity and efficient judicial administration. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). As the Complaint concedes, *Younger v. Harris*, 401 U.S. 37 (1971), and its progeny require federal courts to refrain from interfering with certain categories of ongoing state proceedings, including civil enforcement proceedings "akin to a criminal prosecution." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78–79 (2013). Separately, *Colorado River* permits a federal court to stay or dismiss an action in deference to a parallel state proceeding where doing so serves "wise judicial administration," with "due regard to the conservation of judicial resources and comprehensive disposition of litigation." 424 U.S. at 817–18. Finally, apart from either abstention doctrine, a district court retains inherent authority to stay proceedings "incidental to the power inherent in

CURL, GLASSON & PATRASCIOIU, P.L.C.
485 S. Main Ave., Bldg. 1, Tucson, AZ 85701
(520) 884-7777 Option 2 ❖ Fax (520) 620-0921
www.curllaw.com

every court to control the disposition of the causes on its docket." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

**D. Preliminary Injunctive Relief**

Preliminary injunctions are an "extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A plaintiff seeking a temporary restraining order or preliminary injunction must show a likelihood of success on the merits, a likelihood of irreparable harm absent relief, that the balance of equities favors her, and that relief serves the public interest. *Id*. at 20. Likelihood of success is the most important factor and, as here, where the defendant is a government entity, the equities and public-interest factors merge. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc); *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

**IV.<u>Argument</u>**

**A. The Complaint should be dismissed, or in the alternative, stricken in part.**

Before reaching the merits, the Court should recognize that the Complaint does not comply with the basic pleading requirements of Rule 8. At 42 pages excluding exhibits, featuring 155 numbered paragraphs, the Complaint reads less like a statement of Plaintiff's claims than like a merits brief, complete with argument headings, preemptive rebuttals to defenses no party has raised, and commentary unrelated to any cause of action.

**1. The Complaint embeds legal argument rather than stating facts.**

Section VII of the Complaint, spanning ¶¶ 138-143, does not allege facts; it briefs the law of the *Rooker-Feldman* doctrine, *Younger* abstention, and claim and issue preclusion, complete with case citations and legal argument, in anticipation of defenses no defendant has raised. That is the content of a memorandum in opposition to a motion to dismiss, not a statement of a claim. See *McHenry*, 84 F.3d at 1178 (complaint improperly contained a plethora of factual and often irrelevant information that made it all but impossible for defendants to file a comprehensive answer).

**2. The Complaint's headings are argumentative rather than organizational.**

Rule 8 requires each allegation to be "simple, concise, and direct." The Complaint

CURL, GLASSON & PATRASCIOIU, P.L.C.
485 S. Main Ave., Bldg. 1, Tucson, AZ 85701
(520) 884-7777 Option 2 ❖ Fax (520) 620-0921
www.curllaw.com

instead organizes its factual sections under argumentative captions, among them "The Position Is False," "Because the Order Is Void, the Refusal Is Especially Telling," and "What the Refusal Proves — Municipal Liability." Compl. ¶¶ 79, 82–83. These are advocacy headings, not factual organization, and they proclaim legal conclusions before the underlying facts are even pled. Such pleading is improper.

**3. The Complaint contains matter unrelated to any element of any claim.**

¶ 122 and its accompanying footnote accuse the Pima County Attorney, who is not a named party, of hypocrisy for publicly joining a coalition against "federal overreach" while, in Plaintiff's telling, officials within her own office engage in comparable conduct. *Id*. ¶ 122 & n.2. The paragraph closes with the observation that "constitutional limits on power are a principle of convenience, not conviction." *Id*. This editorializing has no bearing on any element of any count and belongs, if anywhere, in advocacy directed at the public rather than in a federal pleading. Rule 12(f) exists precisely to permit the Court to strike a "redundant, immaterial, impertinent, or scandalous matter" of this kind.

**4. The Complaint devotes extensive narrative to irrelevant matters.**

¶¶ 11-17, among others, recount the Dog's personality, the family's military background, and the bonding history of the family's other dogs at length. These claims are entirely untethered to the elements of unreasonable seizure or due process. While Plaintiff may seek a ruling born of sympathy, this narrative material does not belong in a Rule 8 pleading, and its volume, together with the argumentative headings and embedded legal briefing described *supra*, makes it needlessly difficult for COT to identify and respond to the factual allegations that actually bear on its alleged liability.

**5. Dismissal, or in the alternative striking the offending material, is warranted.**

Because the Complaint's defects go beyond mere surplusage and pervade its organization and structure, dismissal with leave to amend is the appropriate remedy. See *Nevijel*, 651 F.2d at 674 (affirming dismissal where the complaint was a "labyrinthine set of allegations" that the district court could not reasonably require defendants to answer). In the alternative, if the Court concludes the Complaint's core factual allegations are

CURL, GLASSON & PATRASCIOIU, P.L.C.
485 S. Main Ave., Bldg. 1, Tucson, AZ 85701
(520) 884-7777 Option 2 ❖ Fax (520) 620-0921
www.curllaw.com

sufficiently intelligible to permit a response, COT respectfully requests that the Court strike ¶ 122 and its footnote, the preemptive abstention briefing at ¶¶ 138-143, and the argumentative section headings identified *supra*, pursuant to Rule 12(f).

**B. The Complaint should be dismissed pursuant to Rule 12(b)(6).**

**1. Legal standard for municipal liability.**

A municipality cannot be held liable under § 1983 on a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Liability only attaches where the municipality's official policy, custom, or the decision of a final policymaker was the "moving force" behind the constitutional violation. *Id.* at 694; *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). A single incident of allegedly unconstitutional conduct, without more, ordinarily cannot establish the existence of a municipal custom or practice. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents."). Meanwhile, a *Monell* claim, like any other, must clear the bar set by *Iqbal* and *Twombly*: bare allegations that a municipality maintains a "policy, custom, or practice" of committing the violation alleged are conclusory and insufficient standing alone. *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636–37 (9th Cir. 2012).

**2. Plaintiff's claim rests on a single incident and conclusory allegations.**

Plaintiff alleges five supposed COT policies or customs: a) using "§ 4-13 administrative procedures" for destruction cases; b) permitting reliance on breed evidence; c) seeking post-hearing amendments to defeat appellate review; d) failing to train employees; and e) extracting boarding fees. Compl. ¶ 91. Every one of these is drawn entirely from what allegedly happened to the Dog. The Complaint fails to identify a single other dangerous-animal proceeding in which COT used the wrong code section, relied on breed evidence, or sought a post-jurisdictional amended order. A single case, however extensively pled, describes an isolated incident, not a "persistent and widespread practice." *Trevino*, 99 F.3d at 918. Plaintiff's failure-to-train theory fails as well: it requires factual allegations of a pattern of similar violations by untrained employees.

CURL, GLASSON & PATRASCIOIU, P.L.C.
485 S. Main Ave., Bldg. 1, Tucson, AZ 85701
(520) 884-7777 Option 2 ❖ Fax (520) 620-0921
www.curllaw.com

*Connick v. Thompson*, 563 U.S. 51, 62 (2011). Nonetheless, the Complaint alleges none.

**3. Plaintiff's ratification theory fails as a matter of law.**

Ratification requires that an authorized policymaker make "a conscious, affirmative choice to ratify the conduct" of a subordinate, with actual knowledge of the constitutional violation and its basis. *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999); *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004). The Ninth Circuit has repeatedly held that a mere failure to overrule a subordinate's actions is insufficient to support a § 1983 claim. *Id*. Nonetheless, that is what Plaintiff alleges.

Plaintiff's ratification theory is that, after receiving her pre-suit demand letter, COT officials "would not consent to release," "would not confirm the capacity of their representation," and "would not commit to preserve evidence," instead responding through counsel that the matter was "before the Court of Appeals." Compl. ¶¶ 125–129. These allegations merely describe COT maintaining a litigation position while state appellate review remained pending, not the ratification with actual knowledge of the constitutional violation and its basis. A public entity's decision to decline a settlement demand and stand on a facially valid order pending appellate review of that order is not itself an actionable constitutional decision. Indeed, were it otherwise, any defendant who declined to concede liability prior to final adjudication would expose itself to a fresh *Monell* claim for maintaining its defense. Ratification doctrine requires more: a deliberate, informed, and knowing endorsement of unconstitutional conduct as official policy, not a litigation posture adopted while the underlying order remained under active review in the very courts with authority to set it aside.

**4. Plaintiff's alternative single-decision theory fails for the same reasons.**

Plaintiff pleads in the alternative that a single decision by a final policymaker is itself municipal "policy." *Id*. ¶¶ 117, 131. That doctrine applies only to a policymaker's own operative decision among available alternatives as opposed to a later decision not to disturb someone else's earlier act, which is ratification, not single-decision liability. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–83 (1986). Here, the only COT conduct

CURL, GLASSON & PATRASCIOIU, P.L.C.
485 S. Main Ave., Bldg. 1, Tucson, AZ 85701
(520) 884-7777 Option 2 ❖ Fax (520) 620-0921
www.curllaw.com

Plaintiff identifies is the November 24, 2025 order, entered by a magistrate exercising judicial, not executive policymaking, functions, and COT's subsequent litigation position defending that order on appeal. Compl. ¶¶ 78, 125–129. Neither described conduct is a policymaker's operative policy choice. Accordingly, the single-decision theory adds nothing to a ratification theory that independently fails.

**5. Plaintiff has not plausibly alleged a constitutional violation by COT.**

Because municipal liability requires an underlying constitutional violation, the Complaint's failure to plausibly allege one independently defeats each count. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Each count is analyzed as follows:

**a. Fourth Amendment (Count I)**

The Dog was seized and has been detained pursuant to an order entered by a neutral judicial officer following a contested, adversarial hearing at which Plaintiff appeared with counsel, called her own expert, cross-examined COT's witnesses, and argued provocation. Compl. ¶¶ 24, 32–35; Ex. B. A seizure of personal property is the paradigm of a reasonable one when it is merely "accomplished pursuant to a judicial warrant issued upon probable cause". *United States v. Place*, 462 U.S. 696, 701 (1983). The seizure here rests on considerably more process than a warrant affords, and is not the kind of seizure the Fourth Amendment's reasonableness inquiry condemns, even if Plaintiff believes the magistrate misapplied Arizona's evidentiary and burden-of-proof requirements. Plaintiff's disagreement with the magistrate's evidentiary rulings and ultimate finding is a claim of state-law error already presented to the Arizona courts reviewing that order. In short, it is not a plausible allegation that COT's seizure was objectively unreasonable within the meaning of the Fourth Amendment.

**b. Procedural Due Process (Count II)**

Plaintiff received exactly the process ordinarily required. Specifically, she received notice of the proceeding, an adversarial hearing before a neutral officer, representation by counsel, the opportunity to present witnesses and expert testimony, and the opportunity to cross-examine COT's witnesses. Compl. ¶¶ 24, 32–35. Plaintiff's due process theory does

CURL, GLASSON & PATRASCIOIU, P.L.C.
485 S. Main Ave., Bldg. 1, Tucson, AZ 85701
(520) 884-7777 Option 2 ❖ Fax (520) 620-0921
www.curllaw.com

not allege she was denied a hearing. Rather, it alleges the hearing officer applied the wrong evidentiary standard, incorrectly considered evidence, and used the wrong procedural track. *Id*. ¶¶ 37, 96–100. Those are allegations that the magistrate erred in applying state law and state evidentiary rules, not that the process itself was constitutionally deficient. Federal due process does not guarantee an error-free proceeding or the correct application of state evidentiary and burden-of-proof rules. Federal due process simply guarantees notice and a meaningful opportunity to be heard, both of which Plaintiff undeniably received. The proper vehicle for correcting an asserted misapplication of state procedural and evidentiary law is the special action Plaintiff has already filed in Superior Court, not a parallel federal constitutional claim against COT.

Plaintiff separately alleges that conditioning the Dog's survival and return on payment of the supersedeas bond and boarding fees is itself an independent due process violation. *Id*. ¶ 99. As to COT, that theory adds nothing beyond the boarding-fee custom already addressed *supra*: Plaintiff's own Complaint attributes the Dog's day-to-day custody, care, and billing to Pima County and the PACC facility it operates, *Id*. ¶¶ 6, 132, and the $3,600 bond was set by the magistrate as a condition of staying the trial court's order pending the appeal Plaintiff chose to pursue. *Id*. ¶ 35. Neither was imposed by any COT policymaker. A magistrate's bond condition and a County's fee billing are not a COT policy or custom that was the "moving force" behind Plaintiff's payments. Accordingly, Plaintiff has not plausibly pled a procedural due process claim.

**c. Substantive Due Process (Count III)**

Plaintiff pleads this claim "in the alternative" and directs it principally at the supersedeas bond, the boarding fees, and communications to the Board of Supervisors. *Id*. ¶ 108. As to COT specifically, the only conduct alleged is that it obtained and has not withdrawn the destruction order while appellate review remains pending. Litigating a facially valid order through the appellate process rather than unilaterally abandoning it mid-appeal does not "shock the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (substantive due process applies only to the most egregious official

**Curl, Glasson & Patrascioiu, P.L.C.**
485 S. Main Ave., Bldg. 1, Tucson, AZ 85701
(520) 884-7777 Option 2 ❖ Fax (520) 620-0921
www.curllaw.com

conduct, arbitrary in the constitutional sense). Accordingly, Plaintiff failed to plausibly plead a substantive due process claim.

**C. In the alternative, this action should be stayed.**

**1. *Younger* abstention counsels a stay of Plaintiff's claims against COT.**

*Younger* abstention applies to, among other things, "state civil proceedings that are akin to criminal prosecutions." *Sprint*, 571 U.S. at 72, 79. Such quasi-criminal civil enforcement proceedings typically (i) are initiated by the state in its sovereign capacity, (ii) are preceded by the state's investigation and a formal charging document, and (iii) seek to sanction the defendant for wrongful conduct. *Id*. at 79–80.

The proceeding underlying this case fits that description exactly. COT, not a private party, initiated the dangerous-animal proceeding by filing a Petition and Order to Show Cause following an investigation by animal control officers. Compl. ¶¶ 21, 23. COT prosecuted the matter through a prosecutor. *Id*. ¶ 24. And the proceeding sought, and resulted in, a forfeiture and destruction order, the paradigmatic sanction a sovereign imposes on a private citizen for a code violation. *Id*. ¶¶ 35–36. The Complaint describes the hearing as adjudicating "whether a beloved family dog would live or die" under a "clear-and-convincing" burden. *Id*. ¶ 34. That is a civil enforcement action within *Sprint*'s second *Younger* category, not the ordinary two-private-party civil litigation *Sprint* held falls outside *Younger*. See 571 U.S. at 79.

*Younger*'s remaining requirements are also satisfied on the face of the Complaint. The state proceeding is ongoing: Plaintiff alleges a Motion to Vacate "now pending in Superior Court," and proceedings pending "before the Lower Court of Appeals in the Superior Court and the Arizona Court of Appeals". Compl. ¶¶ 80, 143. The proceeding implicates an important state interest, the State's traditional police-power authority over public safety and the regulation of dangerous animals. Further, Plaintiff has an adequate opportunity to raise her federal constitutional theories in that forum: her Complaint recounts that she has already argued lack of jurisdiction, due process defects, and the prohibition on breed evidence to the Arizona courts, and nothing prevents her from

CURL, GLASSON & PATRASCIOIU, P.L.C.
485 S. Main Ave., Bldg. 1, Tucson, AZ 85701
(520) 884-7777 Option 2 ❖ Fax (520) 620-0921
www.curllaw.com

presenting her Fourth and Fourteenth Amendment theories there as well.

The Complaint anticipates and attempts to preempt this argument, contending that a "municipal dangerous-animal proceeding fits none" of the *Younger* categories because it "does not sanction Plaintiff for a wrongful act but adjudicates the status of an animal." *Id*. ¶ 140. That characterization lacks merit. As described in the Complaint, the proceeding was captioned as a "Petition and Order to Show Cause," prosecuted by a prosecutor under a clear-and-convincing burden, and resulted in an order requiring Plaintiff to forfeit her property, precisely the features *Sprint* identifies as characteristic of civil enforcement. *Id*. ¶¶ 23–24, 34–36.

In this Circuit, where *Younger* applies, claims for damages are stayed, not dismissed, pending resolution of the state proceeding, while claims for injunctive and declaratory relief that would interfere with that proceeding are properly dismissed. *Gilbertson v. Albright*, 381 F.3d 965, 968 (9th Cir. 2004) (en banc). COT accordingly requests dismissal of Plaintiff's claims for declaratory and injunctive relief against it. If Plaintiff's damages claims are not dismissed for failing to state a claim, Plaintiff's damages claims are properly stayed pending resolution of the state court proceedings the Complaint describes as ongoing.

Plaintiff's fallback position fares no better. In ¶ 141 Plaintiff asserts that even where a *Younger* category applies, "a Fourth Amendment claim challenging the reasonableness of a seizure is severed from any abstention and proceeds". Notably, however, Plaintiff cites no authority for that proposition, likely because none exists. The stay-versus-dismissal line *Gilbertson* draws turns on the remedy sought, not on which constitutional provision underlies the § 1983 claim: damages claims are stayed and claims for injunctive or declaratory relief are dismissed, regardless of whether the claim sounds in the Fourth or Fourteenth Amendment. 381 F.3d at 968. Nothing in *Gilbertson*, *Sprint*, or their progeny carves out Fourth Amendment claims from that framework, and the same stay analysis that governs Counts II and III governs Count I as well.

Plaintiff's preemptive bad-faith argument, does not save her claims from a stay at

CURL, GLASSON & PATRASCIOIU, P.L.C.
485 S. Main Ave., Bldg. 1, Tucson, AZ 85701
(520) 884-7777 Option 2 ❖ Fax (520) 620-0921
www.curllaw.com

the pleading stage, either. Compl. ¶ 142. The bad-faith exception to *Younger* requires facts showing the underlying state proceeding was brought without a reasonable expectation of obtaining a valid sanction, or was undertaken to harass. Plaintiff's allegations, that COT officials declined to consent to the Dog's release while the matter remained on appeal and that a County official circulated a disputed account of the underlying incident to the Board of Supervisors, do not plausibly allege that the dangerous-animal proceeding itself, filed after an admitted bite, was brought in bad faith or without any reasonable basis when initiated. Disagreement with how COT has since litigated the matter is not an allegation that the proceeding was baseless when filed. Nor does it matter that Plaintiff frames the alleged bad faith as arising from COT's conduct in maintaining, rather than initiating, the proceeding: the bad-faith exception targets proceedings brought without a reasonable expectation of a valid outcome, and a plaintiff cannot satisfy it merely by alleging that the government continued to pursue an otherwise valid action for retaliatory or improper reasons. *Yelp Inc. v. Paxton*, 137 F.4th 944, 952 (9th Cir. 2025) (bad-faith exception unavailable where the plaintiff failed to show the state proceeding was brought without a reasonable expectation of a valid judgment, notwithstanding the plaintiff's allegation that the state was pursuing the action in retaliation).

Nor can Plaintiff avoid a stay by invoking the general "extraordinary circumstances" language in *Younger* itself, reserved for injury that is "both great and immediate" and not satisfied by the generalized anxiety that accompanies any pending state proceeding. *Younger*, 401 U.S. at 46; *Kugler v. Helfant*, 421 U.S. 117, 124 (1975). The Complaint itself forecloses the "immediate" half of that showing: the trial court stayed destruction pending appeal upon Plaintiff's posting of the $3,600 bond, and there is no allegation that stay has lapsed or that any steps have been taken toward destruction while state review remains pending. Compl. ¶ 35. A bond Plaintiff herself posted to preserve the status quo is evidence that no immediate harm exists, not evidence that it does.

**2. In the alternative, *Colorado River* abstention warrants a stay.**

Even if the Court concludes *Younger* does not squarely apply, a stay remains

CURL, GLASSON & PATRASCIOIU, P.L.C.
485 S. Main Ave., Bldg. 1, Tucson, AZ 85701
(520) 884-7777 Option 2 ❖ Fax (520) 620-0921
www.curllaw.com

warranted under *Colorado River* because this action is parallel to, and substantially duplicative of, the pending state-court proceedings. The relevant factors, none of which are dispositive and all of which are weighed pragmatically, include: (1) whether either court has assumed jurisdiction over property, (2) the relative convenience of the forums, (3) the desirability of avoiding piecemeal litigation, (4) the order in which the forums obtained jurisdiction, (5) whether state or federal law controls, and (6) whether the state proceeding is adequate to protect the parties' rights. *R.R. Street & Co. v. Transp. Ins. Co.*, 656 F.3d 966, 978–79 (9th Cir. 2011).

Those factors favor a stay here. The Superior Court special action was filed first, on December 10, 2025, more than seven months before this action. Compl. ¶ 41. Both proceedings turn on the identical predicate question, whether the November 24 and December 11, 2025 orders are procedurally valid and, as to the amended order, jurisdictionally void, and a ruling in one forum on that question will substantially resolve the other. Proceeding in both forums simultaneously creates a real risk that a state court and this Court could reach inconsistent conclusions about the validity of the very same orders, the piecemeal-litigation concern *Colorado River* exists to avoid. Further, the controlling questions, the jurisdictional effect of a supersedeas bond under Arizona law, the proper construction of Tucson City Code §§ 4-11 and 4-13, and the meaning of A.R.S. § 11-1025(C), are questions of state and municipal law that the Arizona courts are better positioned to resolve in the first instance. Finally, the pending state proceedings are plainly adequate to protect Plaintiff's rights. She filed her appeal and nothing prevents her from presenting her federal constitutional theories in that forum as well.

### D. The Court should deny Plaintiff's application for a TRO.

The Complaint separately applies for a TRO barring the Dog's destruction and requiring his return. Compl. ¶¶ 144–148; Prayer for Relief A. COT opposes that application. Plaintiff must show a likelihood of success on the merits, a likelihood of irreparable harm absent relief, that the balance of equities favors her, and that relief serves the public interest, and she cannot make that showing on any of the four factors. *Winter*,

CURL, GLASSON & PATRASCIOIU, P.L.C.
485 S. Main Ave., Bldg. 1, Tucson, AZ 85701
(520) 884-7777 Option 2 ❖ Fax (520) 620-0921
www.curllaw.com

555 U.S. at 20.

Likelihood of success is the most important *Winter* factor, and for the reasons set forth *supra*, Plaintiff's claims against COT are subject to dismissal under Rule 8, fail on the merits under Rule 12(b)(6), and are in any event subject to a *Younger* or *Colorado River* stay. *Garcia*, 786 F.3d at 740. Further, Plaintiff cannot show a likelihood of irreparable harm where the City Court already stayed the Dog's destruction pending appeal, and nothing in the Complaint suggests that stay has been or will be lifted while the state proceedings remain pending. Compl. ¶ 35. Finally, Arizona's dangerous-animal ordinances reflect COT's and the public's interest in protecting residents from an animal a magistrate found to pose a danger after a contested hearing. That is an interest that does not depend on where the dispute over that finding is ultimately resolved. Enjoining COT mid-appeal, before the Arizona courts considering the same order have ruled, would substitute this Court's provisional judgment for a process still unfolding in the forum Plaintiff herself invoked. Because COT is a government entity, the equities and public-interest factors merge and both favor denying the application. *Drakes Bay Oyster Co.*, 747 F.3d at 1092. The Court should deny Plaintiff's application for a TRO.

## V. <u>Conclusion</u>

For the foregoing reasons, COT respectfully requests that the Court dismiss the Complaint under Rules 8(a)(3) and 8(d)(1), or, in the alternative, strike the offending portions identified *supra* under Rule 12(f). In the further alternative, COT requests that the Court dismiss the claims against it under Rule 12(b)(6). In the further alternative still, COT requests that the Court stay this action, dismissing Plaintiff's claims for declaratory and injunctive relief against COT and staying her damages claims against COT, pending resolution of the pending state court proceedings. Finally, COT requests that the Court deny Plaintiff's application for a TRO.

//

//

//

CURL, GLASSON & PATRASCIOIU, P.L.C.
485 S. Main Ave., Bldg. 1, Tucson, AZ 85701
(520) 884-7777 Option 2 ❖ Fax (520) 620-0921
www.curllaw.com

DATED: August 17, 2026

CURL, GLASSON & PATRASCIOIU, P.L.C.

By: /s/ *J.C. Patrascioiu*
J.C. Patrascioiu
*Attorneys for Defendant City of Tucson*

## CERTIFICATE OF SERVICE

I hereby certify that on August ____, 2026 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

William B. Thomas
McDOWELL HETHERINGTON LLP
1001 Fannin Street, Suite 2400
Houston, TX 77002
william.thomas@mhllp.com
*Attorneys for Plaintiff*

Christina E. Ponig
FLETCHER HELD, PLLC
808 Travis Street, Suite 1553
Houston, Texas 77002
cmaccio@fletcherheld.com
*Attorneys for Plaintiff*

/s/ *SJP*

CURL, GLASSON & PATRASCIOIU, P.L.C.
485 S. Main Ave., Bldg. 1, Tucson, AZ 85701
(520) 884-7777 Option 2 ❖ Fax (520) 620-0921
www.curllaw.com