Christina E. Ponig (*Admitted Pro Hac Vice*)
FLETCHER HELD, PLLC
808 Travis Street, Suite 1553
Houston, Texas 77002
713-255-0422 (phone) / 713-255-0419 (fax)
cmaccio@fletcherheld.com
-and-
William B. Thomas (State Bar No. 039456)
McDOWELL HETHERINGTON LLP
1001 Fannin Street, Suite 2400
Houston, TX 77002
713-337-5580 (phone) / 713-337-8850 (fax)
william.thomas@mhllp.com

Attorneys for Plaintiff Jennifer Evancho

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
TUCSON DIVISION

| | |
|---|---|
| Jennifer Evancho,<br><br>Plaintiff,<br>vs.<br><br>City of Tucson, a municipal corporation; Pima County, a political subdivision of the State of Arizona; Jan Lesher, in her official capacity as Pima County Administrator; Steve Kozachik, in his official capacity as Director of Pima Animal Control Center; Does 1 through 10, in their individual and official capacities as Animal Control Officers, Supervisors, and employees of the City of Tucson and/or Pima County responsible for the seizure, detention, and threatened destruction of Sergeant Snuggles,<br><br>Defendants. | No. 4:26-cv-00363-RM<br><br>SUPPLEMENT TO APPLICATION FOR PRELIMINARY INJUNCTIVE RELIEF<br><br>ORAL ARGUMENT REQUESTED |

Plaintiff Jennifer Evancho ("Plaintiff") respectfully submits this notice of filing supplemental evidence, and the accompanying short memorandum, in support of her pending Application for Preliminary Injunctive Relief, filed on July 23, 2026.

## I. BACKGROUND

On June 18, 2026, Plaintiff made a formal records request under A.R.S. § 39-121 for the following records pertaining to Snuggles:

Veterinary records; exam notes; vaccination records; distemper/respiratory

> testing records; lab results; medication logs; treatment plans; kennel cards; feeding/water logs; cleaning/sanitation logs; urine/feces cleanup logs; exercise logs; enrichment logs; behavior notes; incident reports; bite/dangerous-dog records; legal-hold records; photos; videos; housing-location records; transfer/movement records; euthanasia-review records; outbreak-exposure records; communications concerning Snuggles's care, health, testing, confinement, exercise, enrichment, behavior, or outcome classification; and PACC policies or procedures for legal-hold/dangerous-dog animals.

Two months later, on August 24, 2026, Pima County produced records in response as well as others that Ms. Evancho had requested from the City of Tucson Attorney's office. The following day, on August 25, 2026, Pima County moved to dismiss Plaintiff's Original Complaint.

To the extent leave to file this Supplement is required under LRCiv 7.2, Plaintiff respectfully equests it. The showing is narrow: these records were not in Plaintiff's possession when she filed her Application, Plaintiff obtained them by statutory request rather than discovery, and they are the records of Pima County who holds the animal.

Two limits define what follows. First, nothing in this filing asks this Court to review, vacate, or declare invalid any order of any Arizona court. The records bear on Defendants' own conduct—what they did on October 7, 2025, what authority they identified for doing it, and what has happened in their custody since. Second, Plaintiff does not plead a new claim here. These facts support the Fourth Amendment claim already before the Court; the standalone count arising from the October 7 seizure will be pled in an amended complaint.[1]

## II. THE NEWLY PRODUCED RECORDS

Exhibit K is an excerpt of the Activity Report for Activity No. A25-375923-5

[1] Plaintiff will file a First Amended Complaint as of right under Rule 15(a)(1)(B), which pleads the conduct described herein as a distinct claim under the Fourth Amendment. Plaintiff respectfully requests that the pending Application be deemed directed to the First Amended Complaint as the operative pleading upon filing. *Pacific Radiation Oncology v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015) (requiring "relationship between injury claimed in the motion for injunctive relief and conduct asserted in the underlying complaint").

(INV/BITE), containing the responding officers' narrative entries from October 7, 2025 through April 8, 2026. Page 9 is a photograph of the executed Pima County Animal Care "Quarantine Transport Agreement." Page 10 of the PDF is a photograph of the executed "Impoundment and Bond Notice." Photographs of Clara Gastelum that Pima County included in the report have been withheld on privacy grounds and due to absence of Ms. Gastelum's consent.

Exhibit L is the complete "Behavior Information" file for the animal, printed August 24, 2026. It is one page, footed "Page 1 of 1," and contains a single entry dated October 7, 2025.

Exhibit M is the kennel card. Exhibit N is the vaccination record of Pegasus Veterinary Center. Exhibit O is the Pima Animal Care Center medical history, with entries from October 7, 2025 through August 18, 2026. Exhibit P is true and correct copy of the a carbon copy of the Quarantine Transfer Agreement that Pima County animal control officers gave to Jennifer Evancho on October 7, 2025.

## III. DEFENDANTS' OWN RECORDS ESTABLISH THE SCOPE AND DURATION OF THE JUSTIFICATION FOR THE OCTOBER 7 SEIZURE

The Application asks whether Defendants' justification for holding this animal still holds force. *Brewster v. Beck*, 859 F.3d 1194, 1196–97 (9th Cir. 2017). Defendants' own records answer the antecedent question: what that justification was and how long it was to last.

### A. Defendants drafted the instrument, and the instrument fixed a release date.

The responding officers told Plaintiff that the animal "will need to go to PACC for a precautionary 10-day quarantine," and recorded that statement. Ex. K at 3. They then presented her with a preprinted Pima County Animal Care form captioned "QUARANTINE TRANSPORT AGREEMENT." Ex. K at 9.

The block of that form reciting authority "to come upon my property and seize the animal" is struck through with an X, left blank, and signed by no one. *Id.;* see also Ex. P. The block by which an owner elects not to redeem the animal is likewise blank and

unsigned. *Id.* The single block that Plaintiff executed reads: "I WILL REDEEM this animal on the release date at the Pima Animal Care Center and will pay all pound fees due. I understand that my animal may be euthanized if not redeemed by 5:00 pm on the quarantine release date." In a bolded preprinted field, the form fixes the "Quarantine release date: 10/17/25." Ex. K at 9; Ex. P.

The only jeopardy the instrument discloses is jeopardy arising from Plaintiff's own failure to appear. Nothing on the form states or suggests that the animal would be withheld if Plaintiff did appear.

No officer entered the enclosure to take the animal. Defendants recorded that "Jennifer was willing and able to walk Sargent Snuggles on a leash to the PACC truck and assisted" — and that the transport occurred "with no incident." Ex. K at 3.

**B. The statutory predicate for pound confinement was absent, and Defendants confirmed it the same day.**

A.R.S. § 11-1014(A) requires pound or veterinary confinement of "[a]n unvaccinated dog or cat that bites any person." For a vaccinated animal, the statute provides that it "may be confined and quarantined at the home of the owner."

The animal was currently vaccinated against rabies. Ex. N. In the same log entry that records the transport, Defendants wrote that "Officer Mills received emails from Pegasus Veterinary Center indicating that Sargent Snuggles is up to date on vaccines." Ex. K at 3. Defendants thus removed the animal first and confirmed the absence of the statutory predicate afterward, on the same day—and did nothing.

**C. Defendants never identified any ground for impoundment.**

Tucson City Code § 4-10(a) authorizes impoundment of an animal found "in plain view, or pursuant to a valid search warrant" on probable cause of specific, defined conditions. The Impoundment and Bond Notice Defendants served on October 11, 2025 identifies the impoundment as made pursuant to Tucson City Code § 4-10 and sets the bond at "City of Tucson $1,325.00," with the Pima County and South Tucson lines blank and the venue given as Tucson City Court. Ex. K at p. 10 of PDF. None of the four boxes identifying

a ground for impoundment is checked. The period box is unchecked. The license number field is blank.

**D. Plaintiff appeared to redeem the animal three times, each before the date Defendants set.**

Defendants' records show that Plaintiff spoke with Pima County animal control officers on October 10, October 11, and October 13, 2025, to inquire about his return. Ex. K at 3–7. The animal was not released. He has now been held for more than ten months.

## IV. DEFENDANTS' RECORDS DOCUMENT WHAT THE DETENTION HAS DONE

**A. Shelter stress and escalating chemical restraint.**

The medical history records approximately thirty clinical encounters between October 7, 2025 and August 18, 2026. Twenty-five recite the same reason: "SHELTER STRESS." Ex. O. Trazodone was begun on the day of intake and escalated on November 24, 2025 "due to behavior in kennel," then sustained continuously through August 18, 2026. A standing order for gabapentin began April 1, 2026 and was reordered twice. *Id.*

The April 1, 2026 entry states the causal sequence in Defendants' own words: the animal's "APS hold extended due to becoming more stressed/anxious," and a second psychoactive medication was begun. On May 15, 2026 the reorder recites that he is "very stressed in kennel." Ex. O.

In more than 320 days of continuous daily custody, the records document no bite, no lunge, no threat display, and no aggression of any kind. *See id.* The only behavioral entry Defendants ever made was on the day of intake, and it records that the animal "[t]olerated ketch pole restraint, walked on ketch pole to kennel. Calm, unknown if dog reactive. Did not attempt to bite staff during vaccinations. Very nervous and scared." Ex. L.

**B. Defendants dispensed weight-dosed medication for ten months without recording a weight.**

Trazodone and gabapentin are dosed by weight. The last weight recorded anywhere in the medical history is October 13, 2025. Ex. O. The weight field is blank at every encounter thereafter—including the dose escalation, the addition of the second medication,

and each reorder. Plaintiff contends that Defendants have chemically managed a condition their own custody has produced, escalated it twice, have sustained it for nearly eleven months, and never weighed the animal to verify that proper doses have been administered.

**C. The January 5, 2026 episode, and what Defendants did not do.**

On January 5, 2026 the animal was logged as "seemed lethargic in kennel, not acting like himself." He required oral sedation together with injectable dexmedetomidine and hydromorphone to permit examination. Radiographs showed moderate to marked gastric distension. Ex. O.

Neither the Activity Report nor the medical history records any communication to Plaintiff about that episode, then or afterward. Plaintiff—who has paid approximately $16,000 in kennel fees toward Snuggles' care—learned of the January 5 episode on August 24, 2026, when these records were produced. See Supplemental Declaration of Jennifer Evancho, attached.

## V. THE LEGAL CONSEQUENCE

These records bear on the pending Application in three ways. ***First***, they fix the justification and its duration. Defendants' own instrument represents a ten-day quarantine ending October 17, 2025. "A seizure is justified under the Fourth Amendment only to the extent that the government's justification holds force. Thereafter, the government must cease the seizure or secure a new justification." *Brewster*, 859 F.3d at 1197. Plaintiff disputes that the seizure of Snuggles on October 7, 2025 was lawful. Subject to those arguments, whatever supported taking custody on October 7 did not support holding the animal after the date Defendants themselves set. ***Second***, they go to the manner of execution, which is independently actionable. "A seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on unreasonable seizures." *Id.* at 1196. ***Third***, they support return for the reasons stated in *Brewster*.

## VI. RELIEF

Plaintiff's Application is unchanged. She asks that the animal be returned to her custody. In the alternative, and pending resolution of this action and the action in state court, she asks that he be placed with a licensed animal rescue, subject to an order that he not be adopted out, transferred, euthanized, or released to any person—including Plaintiff—absent further order of this Court.

DATED this 28 day of August 2026.

*/s/ Christina Ponig*
Christina E. Ponig *(Admitted Pro Hac Vice)*
FLETCHER HELD, PLLC
William B. Thomas
MCDOWELL HETHERINGTON, LLP
*Attorneys for Jennifer Evancho*