Christina E. Ponig (*Admitted Pro Hac Vice*)
FLETCHER HELD, PLLC
808 Travis Street, Suite 1553
Houston, Texas 77002
713-255-0422 (phone) / 713-255-0419 (fax)
cmaccio@fletcherheld.com
-and-
William B. Thomas (State Bar No. 039456)
McDOWELL HETHERINGTON LLP
1001 Fannin Street, Suite 2400
Houston, TX 77002
713-337-5580 (phone) / 713-337-8850 (fax)
william.thomas@mhllp.com

Attorneys for Plaintiff Jennifer Evancho

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
TUCSON DIVISION

| | |
|---|---|
| Jennifer Evancho,<br><br>Plaintiff,<br>vs.<br><br>City of Tucson, a municipal corporation; Pima County, a political subdivision of the State of Arizona; Jan Lesher, in her official capacity as Pima County Administrator; Steve Kozachik, in his official capacity as Director of Pima Animal Control Center; Does 1 through 10, in their individual and official capacities as Animal Control Officers, Supervisors, and employees of the City of Tucson and/or Pima County responsible for the seizure, detention, and threatened destruction of Sergeant Snuggles,<br><br>Defendants. | No. 4:26-cv-00363-RM<br><br>REPLY IN SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTIVE RELIEF AND MOTION FOR EXPEDITED CONSIDERATION<br><br>ORAL ARGUMENT REQUESTED |

Plaintiff Jennifer Evancho respectfully submits this Reply in support of her Application for Preliminary Injunctive Relief and Motion for Expedited Consideration as follows:

## I. INTRODUCTION

The City of Tucson insists Sergeant Snuggles is "safely housed," offering no declaration and no citation. The County's own medical file—produced days ago on a public-records request and filed concurrently—records the diagnosis "SHELTER STRESS"

on roughly thirty occasions across nearly eleven months, with escalating anti-depressant and anti-anxiety medications expressly tied to his confinement. And the City insists there is no irreparable harm because destruction is stayed. But that answer addresses only one harm alleged and not the harm the detention is inflicting now.

Two further points frame what follows. First, in more than 320 days of continuous custody the County has documented no aggression of any kind—no bite, no lunge, no threat display. The only behavioral assessment it ever made, on the day of the incident, describes a "calm" animal. Second, the Opposition is unsworn from beginning to end. The City asks this Court to deny emergency relief concerning a living animal based on assertions that no City witness has attested against a verified pleading.

## II. THE CITY HAS SUBMITTED NO EVIDENCE CONTROVERTING PLAINTIFF'S SWORN SHOWING.

The City filed no declaration, affidavit, exhibit, or request for judicial notice. Every record citation in its brief is to Plaintiff's own pleading. Thus, on every fact material to the *Winter* factors, this Court has one evidentiary submission: Plaintiff's.

### A. Plaintiff's showing is sworn evidence; the City's is not.

The Complaint is verified and accompanied by Jennifer Evancho's declaration under 28 U.S.C. § 1746. Doc. 1-2. A verified complaint "may be treated as an affidavit" and may support injunctive relief. *Lew v. Kona Hosp.,* 754 F.2d 1420, 1423 (9th Cir. 1985). That showing may be displaced by counter-affidavits. *AK Futures LLC v. Boyd St. Distro, LLC*, 35 F.4th 682, 692 (9th Cir. 2022). An unverified brief, like that submitted by the City, is attorney argument, not evidence. *Barcamerica Int'l USA Tr. v. Tyfield Importers, Inc.,* 289 F.3d 589, 593 n. 4 (9th Cir. 2002) (in summary judgment context) (citation omitted).

### B. The City asserts allegations—and supports none of them.

The City advances three load-bearing characterizations of the facts. None is sworn. ***First,*** the City asserts Snuggles "remains safely housed under the existing stay." Dkt. 9 at 10:13. But the County's records reflect continuous shelter stress from intake, Trazodone escalated and sustained, Gabapentin added and twice reordered, and a hold extended

because he was "becoming more stressed/anxious." Dkt. 12-6. ***Second***, the City asserts that animal "mauled" Ms. Gastelum. Dkt. 9 at 5:13. The word choice is counsel's and is deployed to fix the "last uncontested status" on which the City's incorrect *status quo* argument rests. Dkt. 9 at 5:4–13. ***Third***, a footnote invites an inference from injury photographs, which the City did not file. Dkt. 9 at 7 n.1. That too rests on nothing in the record as addressed below.

Abstention and the governing standard are questions of law, addressed below. But to the extent the *Winter* factors turn on facts, they turn on facts that only one party has placed before this Court under oath. The predicates of irreparable harm—no behavioral evaluation, documented deterioration, and a total bar on Plaintiff's access—stand uncontradicted. On the record, the evidence supports Plaintiff.

## III. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS

### A. Abstention Does Not Apply

The City various attempts to invoke abstention grounds fail. Plaintiff's core claim is independent of the state-court merits. Under *Brewster v. Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017), "[a] seizure is justified under the Fourth Amendment only to the extent that the government's justification holds force. Thereafter, the government must cease the seizure or secure a new justification." *Brewster* held a thirty-day vehicle impound unconstitutional once the original exigency ended. Here, Snuggles has been confined more than 320 days. Whether the seizure was lawful to start with or whether the detention remains reasonable is a question that did not exist when the November 24 and December 11, 2025 orders issued and that no Arizona court has been asked to decide. The claim requires no determination that any state order is invalid, contrary to the City's urging. Dkt. 9 at 7:16–17.

The Ninth Circuit has applied that principle to municipal impoundments. In *Sandoval v. County of Sonoma*, 912 F.3d 509 (9th Cir. 2018), vehicles were impounded for a thirty-day period mandated by state statute. The Ninth Circuit began from the premise that the warrantless seizures are unreasonable and rejected the community-caretaking justification as an exception to the warrant requirement as state law "does not categorically

permit government officials to impound private property." *Id.* at 516. Once seized property is no longer needed for the purpose that justified taking it, the owner is presumed entitled to its return—"even if the seizure was lawful." *United States v. Martinson*, 809 F.2d 1364, 1369 (9th Cir. 1987).

The City's severability argument depends on a false premise that "Plaintiff's Fourth Amendment claim challenges the very seizure and forfeiture the state court adjudicated," Dkt. 9 at 7, so relief would have "the practical effect of enjoining" the state proceeding. *Gilbertson v. Albright*, 381 F.3d 965, 968 (9th Cir. 2004) (en banc). This is incorrect. The November 24, 2025 hearing adjudicated whether the animal was vicious. It did not adjudicate whether the seizure on October 7, 2025 was lawful or whether detention after October 17, 2025 was authorized.

Defendants' own records establish what happened on October 7 and what did not. They did not enter the enclosure and take the animal. See Ex. 12-2 at 3. They told Plaintiff he "will need to go to PACC for a precautionary 10-day quarantine," presented a preprinted "QUARANTINE TRANSPORT AGREEMENT," and gave her a carbon copy "with the date and time to redeem her dog." *Id.* at 3, p. 10 of PDF. The form fixes, in a bolded preprinted field, "**Quarantine release date**: 10/17/25," and discloses one risk only: that the animal "may be euthanized if not redeemed by 5:00 pm on the quarantine release date." *Id;* Dkt. 12-7. Nothing warns that he would be withheld if she appeared. The block reciting authority "to come upon my property and seize the animal" was struck through, left blank, and signed by no one. *Id.*

Plaintiff does not ask this Court to enjoin the Arizona Court of Appeals, vacate any order, or direct any state court to act. She asks that executive officials stop an ongoing seizure and place the animal where he will not continue to deteriorate while that appeal proceeds. Relief that preserves the subject matter of the state appeal is the opposite of the interference *Younger* forbids. *See Herrera v. City of Palmdale*, 918 F.3d 1037 (9th Cir. 2019). Plaintiff's requested relief here does not reach the state court judgment, and *T.M.* does not bar Plaintiff's action here. *T.M.* holds that the doctrine may apply to a state

judgment still subject to appellate review, whether final or not. *T. M. v. Univ. of Maryland Med. Sys. Corp.*, 146 S. Ct. 1739, 1748 (2026). It leaves every other element where *Exxon Mobil* placed them, and reaffirms that the doctrine remains "narrowly confined 'to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Id.* at 1754 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

Two of those elements fail here, and neither turns on finality. ***First***, **causation.** The injury must be one caused by the judgment. Defendants seized the animal on October 7, 2025. The order they invoke issued on November 24, 2025 — seven weeks later. An injury inflicted before an order exists was not caused by it, and neither Defendant addresses the October 7 seizure at all. ***Second***, **the relief sought.** Plaintiff does not ask this Court to review, reject, vacate, or set aside any state order. She asks that executive officials cease an ongoing unlawful seizure. *T.M.* expressly preserves that distinction, reaffirming that *Rooker-Feldman* does not reach a plaintiff who challenges "does not bar a suit challenging a 'statute or rule governing th[at] [state-court] decision.'" *Id.* at 1748 n. 4 (quoting *Skinner v. Switzer*, 562 U.S. 521, 532 (2011); *see Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003) (doctrine does not reach a plaintiff who "asserts as a legal wrong an allegedly illegal act or omission by an adverse party").

Even if *Younger* applied, extraordinary circumstances are present: documented, progressive harm to a living animal that no later judgment can undo. The City also cannot place this proceeding in *Sprint*'s second category, which requires a proceeding "initiated to sanction the federal plaintiff … for some wrongful act." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 79–80 (2013). Tucson City Code § 4-7(3) authorizes a viciousness declaration and destruction order only "[u]pon a finding of guilt." Plaintiff was never charged so no finding of guilt was ever made. *See* Dkt. 1-3 at 18:17-18. Adequate opportunity is independently lacking. On August 19, 2026, the Court of Appeals reinstated the appeal, divested the Superior Court, denied enlarged protective relief, and set the opening brief for

October 19, 2026. A decision cannot be expected before well into 2027. No Arizona forum in this posture can award § 1983 damages, adjudicate municipal liability, or reach Lesher, Kozachik, or the Doe Defendants.

*Colorado River* is unavailable. A stay requires "full confidence" the state proceeding will end the litigation, *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993), and is improper where there is "substantial doubt" it will resolve the federal case, *Holder v. Holder*, 305 F.3d 854, 868 (9th Cir. 2002). The state appeal reviews two 2025 orders. It cannot award § 1983 damages and cannot decide whether an eleventh-month detention remains reasonable. "[T]he presence of federal-law issues must always be a major consideration weighing against surrender." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 (1983). Even where *Younger* applies, damages actions are stayed, not dismissed. *Gilbertson*, 381 F.3d at 968.

**B. The Rule 8 Attack Is Meritless**

The City's pleading objections do not bear on any *Winter* factor. A defendant able to identify, quote, and brief each theory by paragraph number has received the notice Rule 8 exists to secure. *Hearns v. San Bernardino Police Dep't,* 530 F.3d 1124, 1131–32 (9th Cir. 2008).

**C. The Constitutional Claims Are Likely to Succeed**

Legal process does not extinguish the Fourth Amendment claim. *Manuel v. City of Joliet*, 580 U.S. 357, 367 (2017). A statute directing impoundment does not make the impoundment reasonable. *Sandoval*, 912 F.3d at 516. The claim runs on two independent grounds. The City engages neither. First, the taking was unauthorized. Tucson City Code § 4-10—the box Defendants checked on their Impoundment and Bond Notice (Dkt. 12-2 at p. 11 of PDF)—permits impoundment only of an animal "in plain view, or pursuant to a valid search warrant" on probable cause of specified, defined conditions. Defendants sought no warrant. The notice, served four days later, leaves all four ground boxes blank, states no reason, and backdates the taking to October 7. *Id.* Second, the detention has outlasted any justification. A.R.S. § 11-1014(A) requires pound confinement only of an unvaccinated

animal. Defendants confirmed the same day, in the transport log, that he was "up to date on vaccines." *Id.* at 3.

Plaintiff disputes that the seizure on October 7, 2025 was lawful. But whatever Defendants argue justified custody on October 7, 2025 does not sustain a detention now stretching into its eleventh month. *Brewster*, 859 F.3d at 1196–97. In more than 320 days of daily custody—roughly thirty clinical encounters—the file documents no bite, lunge, threat display, or aggression of any kind. Dkt. 12-6. The only behavioral assessment PACC recorded, on the day of the incident, describes a "calm," though "nervous and scared," animal. Dkt. 12-3. The seizing officer reported he was calm as he was loaded. *Id.* Neither observation appears in the findings on which the destruction order rests.

The due-process claim is independent. The October 11, 2025 notice identified only Tucson City Code §§ 4-10 and 4-11 and no other provision. The complaint is not that the magistrate ruled incorrectly; it is that Defendants' notice did not tell Plaintiff what proceeding she was in—a defect in executive conduct complete seven weeks before any order issued. *See Cole v. Arkansas*, 333 U.S. 196, 201 (1948). Substantive due process is pled in the alternative and is not the basis of the Application. The *Monell* claim is viable on single-decision and ratification theories. Final policymakers were put on notice of the constitutional violations by, at the latest, July 6, 2026. The July 14 response was that counsel had been "advised by my superiors" that the City "will not comply." A municipality's operative construction of the ordinance it enforces is policy. *See Sandoval*, 912 F.3d at 516–17.

## IV. PLAINTIFF HAS SHOWN IRREPARABLE HARM

The City's irreparable-harm argument rests on a single premise: because destruction is stayed, no harm is imminent. The stay answers one alleged harm. It answers none of the harm the detention is inflicting now.

The harm is the ongoing detention itself. The County's medical records—filed as a supplement—show continuous "SHELTER STRESS" from intake through at least August 18, 2026; Trazodone escalated to 350 mg BID and Gabapentin added at 1000 mg PO BID,

expressly tied to an extended hold; notes that he is "very stressed in kennel"; no recorded weight for most of the confinement, including during dose escalations of weight-based medications; a January 5, 2026 triage for lethargy and suspected bloat requiring injectable sedation; and no documented aggression across more than 320 days of daily custody. The April 1, 2026 note states the causal chain: the hold was extended, the animal became "more stressed/anxious," and a second psychoactive medication was begun. See Dkt. 12-6. Against that file, the assertion that Snuggles "remains safely housed," Dkt. 9 at 10:13 is unsworn. The phrase appears in briefs signed by counsel and nowhere in records signed by clinicians. The County employs those clinicians. It submitted nothing.

Defendants have also represented that destruction "has been judicially stayed since November 24, 2025." Dkt. 9 at 2; *see also id.* 9. Plaintiff accepts that representation and asks the Court to hold Defendants to it. That harm cannot be undone by a later award of money. Months under escalating chemical restraint cannot be given back. Animals are "effects" protected by the Fourth Amendment; they are not fungible chattels. *Recchia v. City of L.A. Dep't of Animal Servs*., 889 F.3d 553, 561-62 (9th Cir. 2018). Snuggles is the *res* of this dispute, and he is being damaged while it is litigated. Federal courts have granted injunctive relief on this showing. For example, in *Reed v. Presque Isle Cnty*., 594 F. Supp. 3d 884 (E.D. Mich. 2022), dogs were held while state review of a destruction order proceeded. The court held that "death cannot be undone," (*id.* at 888) and that "there is no risk to public safety because Defendants possess the dogs" (*id.*at 889)—the same circumstance the requested transfer here would preserve. A living animal presents that risk in a form no damages award reaches. The City's citation to a $15,000 rehabilitation estimate as proof the injury is "purely economic" ignores that the injury to a beloved family pet is ongoing and substantial. Rehabilitation will be required to undo the harm Defendants have inflicted underscores, rather than undermines, its irreparable character.

## V. THE RELIEF SOUGHT IS PROHIBITORY, AND IN ANY EVENT THE HEIGHTENED STANDARD IS MET

The City insists the requested relief is "mandatory." Even accepting that

characterization, Plaintiff meets the standard. The *status quo ante* is "the last uncontested status which preceded the pending controversy." *GoTo.com, Inc. v. Walt Disney Co*., 202 F.3d 1199, 1210 (9th Cir. 2000). That status is not "dog in PACC kennel under continuous chemical restraint." It is Snuggles in his home with his family. The City identifies the status quo as "the Dog's placement in PACC custody." Dkt. 9 at 5. But that placement is the contested act. An order ending an ongoing unreasonable seizure does not undo a legitimate status; it stops an unlawful one. The relief is also calibrated to the only interest the City asserts. Plaintiff asks that Snuggles be released to her home. In the alternative, pending this litigation, she asks that he be moved to a licensed facility as approved by the Court, under an order forbidding release to any person absent further order, at no cost to Defendants. Containment would be fully served. Defendants may enter into this arrangement today, on their own authority, without disturbing any order.

## VI. THE EQUITIES AND PUBLIC INTEREST FAVOR RELIEF

Because the City is a government entity, the equities and public-interest factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). The public interest is not served by an illegal seizure while the animal deteriorates under chemical restraint. It is served by requiring officials to conform their ongoing conduct to the Constitution and to their own clinical observations. The City invites an adverse inference from injury photographs it did not submit. Dkt. 9 at 7 n.1. Plaintiff reserves all objections to the photographs, including under Rule 403 and on grounds of the absence of the depicted individual's privacy rights and in the absence of her consent. Of note, the person they depict has asked Defendants not to destroy this animal.

The City's claim that the equities favor "allowing the state process to run its course" (Dkt. 9 at 2) cannot be assessed apart from what that course now is. Briefing in the state appeal closes in December and a decision cannot be expected before well into 2027. Snuggles was taken on his estimated first birthday. On the state court's schedule, he may remain for nearly two years in a kennel, medicated throughout. The Court of Appeals will decide whether the 2025 orders were lawful. It will not decide whether he should spend

another year where he is. The City asks that any relief be conditioned on security sufficient to cover its costs. Dkt. 9 at 10–11. Rule 65(c) permits the Court to dispense with a bond where there is "no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). The City's principal exposure is "the loss of the boarding-fee recovery," Dkt. 9 at 11—fees it elsewhere attributes entirely to "Pima County and the PACC facility it operates," Dkt. 9 at 11, and which represent the cost of a detention Plaintiff asks the Court to end.

## VII. THE DISCLOSURE, ACCESS, AND PRESERVATION REQUESTS SHOULD BE GRANTED

The City opposes location disclosure, periodic reporting, inspection, and preservation on the ground that "Plaintiff has not shown that any request for this information was ever refused." Dkt. 9 at 10. The record is to the contrary. Counsel's July 6, 2026 demand sought a litigation hold and confirmation that no destruction would occur. The July 14 response was that counsel had been "advised by my superiors that we will not comply with your requests at this time." No one acting for Plaintiff has been permitted to see, examine, weigh, or evaluate this animal. The most recent physical examination in the produced records is January 5, 2026. No weight has been recorded since October 13, 2025. A party that forecloses the other side's access to the evidence cannot be heard to argue that the other side has failed to produce it. The relief Plaintiff seeks is also the relief the City itself requested. At the close of the November 24, 2025 hearing, the City's prosecutor asked that the animal "be surrendered to PACC" and that "he should be evaluated." Dkt. 1-3 at 112:2–6. Tucson City Code § 4-13(c)(2) makes that step mandatory: "Whenever the city enforcement agent has reason to believe an animal is dangerous, an evaluation of the animal shall be conducted." Ten months later, the entire behavioral file Defendants have produced is a single page bearing one intake-day entry. Dkt. 12-3. An order directing the evaluation the City asked a court to order, and that its own Code requires, is not extraordinary relief. It asks Defendants to do what they told a court should be done and have not done.

The medical records arrived August 24, 2026—two months after the request, and

four days after the City assured this Court that Snuggles "remains safely housed." Dkt. 9 at 10:13. A.R.S. § 39-121.01(D)(1) requires public records be "promptly" furnished. A party who learns of deterioration in two-month arrears cannot act in time. That is why periodic reporting is warranted. Defendants already owe a preservation duty; their refusal to confirm compliance is a reason to reduce it to an order. The state appeal reviews two 2025 orders. It has nothing to do with 2026 veterinary records. The City's contention that these requests "would require briefing and fact-finding," Dkt. 9 at 10, is an argument for the hearing Plaintiff has requested, not against it.

## VIII. CONCLUSION

Expedited consideration is warranted. Every additional week under the conditions the County's own clinicians have recorded is injury no judgment can repair. Plaintiff respectfully requests that the Court grant the Application; direct that Sergeant Snuggles be transferred to Plaintiff's custody or, in the alternative, to a licensed sanctuary approved by the Court, that the facility not release him to any person absent further order, and set an expedited schedule to implement that relief. In the alternative, Plaintiff requests an evidentiary hearing on the condition and placement of the animal at the Court's earliest convenience.

DATED this 28 day of August 2026.

*/s/ Christina Ponig*
Christina E. Ponig *(Pro Hac Vice Pending)*
FLETCHER HELD, PLLC
William B. Thomas
MCDOWELL HETHERINGTON, LLP
*Attorneys for Jennifer Evancho*