J.C. Patrascioiu
CURL, GLASSON & PATRASCIOIU, P.L.C.
485 S. Main Ave., Bldg. 1
Tucson, AZ 85701
(520) 884-7777
Fax (520) 620-0921
jcp@curllaw.com
PCC No. 65961, State Bar No. 24836
*Attorneys for Defendant City of Tucson*

IN THE UNITED STATES DISTRICT COURT

OF THE DISTRICT OF ARIZONA

| | |
|---|---|
| JENNIFER EVANCHO,<br><br>Plaintiff,<br>v.<br><br>CITY OF TUCSON, a municipal corporation; PIMA COUNTY, a political subdivision of the State of Arizona; JAN LESHER, in her official capacity as Pima County Administrator; STEVE KOZACHIK, in his official capacity as Director of Pima Animal Care Center; DOES 1 through 10, in their individual and official capacities as Animal Control Officers, Supervisors, and employees of the City of Tucson and/or Pima County responsible for the seizure, detention, and threatened destruction of Sergeant Snuggles,<br><br>Defendants. | CASE NO: 4:26-CV-00363-RM<br><br>**CITY OF TUCSON'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Hon. Rosemary Marquez |

Defendant City of Tucson ("COT") respectfully moves this Court, pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6), to dismiss the claims asserted against it in Plaintiff Jennifer Evancho's Verified First Amended Complaint

("FAC") (Doc. 14), or, in the alternative, to stay this action pending resolution of the parallel proceedings currently pending in state court. This Motion is more fully supported by the following Memorandum of Points and Authorities, the L.R.Civ. 12.1 Certificate of Consultation, attached as Exhibit 1, other supporting exhibits, and the complete record in this action.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. Introduction

The FAC serves as an acknowledgment of the merit of the arguments raised in COT's first motion to dismiss (Doc. 8), as well as those raised in the motion to dismiss (Doc. 10) filed by co-Defendant Pima County (the "County"). Nonetheless, the FAC does not cure the defects but rather attempts to restructure around them. Where the original Complaint asked this Court to police the correctness of a city magistrate's evidentiary rulings under the banner of the Fourth and Fourteenth Amendments, the FAC now recasts the same underlying dispute as: (1) a warrantless-seizure claim based on a quarantine intake that Plaintiff's own exhibits show she consented to; (2) a due process claim that expressly disclaims any challenge to the November 24, 2025 hearing Plaintiff actually received; and (3) three new facial challenges to Tucson City Code ("TCC") that independently fail for a variety of reasons. Plaintiff's relabeling does not provide what was missing before: a plausible allegation that COT's policy, as opposed to the rulings from the city magistrate (the "Trial Court") and the Superior Court that remain on appeal, was the moving force behind an alleged constitutional violation.

The FAC's exhibits, which are the same as the exhibits to the Complaint, confirm the attempt to pivot: Plaintiff alleges that her July 6, 2026 demand letter to COT "set forth the constitutional violations detailed above." FAC ¶ 75. It did not. That letter, which the FAC attaches as Exhibit F, identifies a single theory: that the Trial Court's December 11, 2025 order was void for want of jurisdiction because it was issued after Plaintiff perfected her appeal and posted her supersedeas bond, a state-law theory the Pima County Superior Court has since rejected on special action review. *See* Exhibit 2, C20258606 Under

CURL, GLASSON & PATRASCIOIU, P.L.C.
485 S. Main Ave., Bldg. 1, Tucson, AZ 85701
(520) 884-7777 Option 2 ❖ Fax (520) 620-0921
www.curllaw.com

Advisement Ruling. The letter never mentions a warrant, a seizure, the Fourth Amendment, or any of the six theories the FAC now pleads. Where, as here, "a complaint's own incorporated exhibits contradict its characterization of events, the exhibits control." *Steckman v. Hart Brewing*, 143 F.3d 1293, 1295–96 (9th Cir. 1998). Plaintiff cannot plausibly allege that COT was on notice of constitutional theories that did not exist until she amended her federal complaint, and the mismatch is one more instance of the moving target Plaintiff has presented across this dispute: first a jurisdictional-voidness theory pressed pre-suit and rejected by the Superior Court, then a federal Complaint arguing COT policy makers had ratified unconstitutional conduct by merely allowing the state court appellate process to proceed, and now the FAC built on completely different theories, which Plaintiff misrepresents as having been raised all along.

The relabeling also does not cure the threshold problem. The injunctive and declaratory relief the FAC seeks, an order compelling Plaintiff's dog (the "Dog") returned and barring enforcement of the TCC provisions the Trial Court applied, would require this Court to undo the practical effect of a state-court judgment entered before this action was filed. Accordingly, this Court lacks subject-matter jurisdiction to grant that relief under the *Rooker-Feldman* doctrine.

Further, the core problem persists as to what remains. The Dog was quarantined following a disturbing incident in which, without warning, the Dog bit Plaintiff's elderly mother causing significant injury to her face, scalp, arm, and groin (the "Incident"), injuries that were treated with emergency plastic surgery. [Doc. 14-3, p. 14, 34-37, 76] Plaintiff now casts the Incident as a "provoked, first-time bite." [Doc. 14, p.8]. Regardless of whether that characterization is fair, even Plaintiff acknowledges the Dog was taken with her consent. *Id.* at ¶ 40. Then, within about six weeks, Plaintiff received a full adversarial hearing before a neutral magistrate at which Plaintiff was represented by counsel, cross-examined COT's witnesses, and presented her own retained animal-behavior expert. [Doc. 14-3] That is considerably more process than the Constitution requires for a temporary deprivation pending a prompt hearing. Thus, her Fourth and

CURL, GLASSON & PATRASCIOIU, P.L.C.
485 S. Main Ave., Bldg. 1, Tucson, AZ 85701
(520) 884-7777 Option 2 ❖ Fax (520) 620-0921
www.curllaw.com

Fourteenth Amendment claims fail.

Plaintiff's new facial attacks on TCC fare no better: the Trial Court found the Dog both "vicious" and "destructive", so invalidating the destructive-animal definition would not disturb the independently sufficient vicious-animal finding and cannot redress her injury; she received the very individualized hearing and expert evaluation she claims the destruction provision withholds, so her own allegations defeat the structural challenge; and the disposition provisions she attacks have never been applied to the Dog, who remains alive and in custody, so she lacks standing for that challenge.

For these reasons, and those set out *infra*, COT respectfully requests that the Court dismiss the claims against it in the FAC both for lack of subject-matter jurisdiction and for failure to state a claim. In the alternative, COT requests the Court stay this action pending resolution of the state court proceedings.

## II. <u>Relevant Background</u>

The following is drawn solely from the allegations of the FAC, the documents it incorporates by reference, and the rulings in the state court, which the Court may consider on this Motion. *See* Fed. R. Evid. 201(b); *Daniels-Hall v. Nat'l Educ. Ass'n,* 629 F.3d 992, 998–99 (9th Cir. 2010) (matters of public record, including municipal codes, are properly considered on a motion to dismiss); *see also Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001). COT does not concede the truth of Plaintiff's characterizations and reserves all factual defenses for further proceedings.

On October 7, 2025, Pima Animal Care Center ("PACC") Officers Mills and Estrella responded to Plaintiff's property after the Dog bit Plaintiff's mother, Clara Gastelum. [Doc. 14, ¶¶ 29, 32]. The Dog was confined in a fenced enclosure which the officers did not enter. *Id*. ¶¶ 31, 40. The officers presented Plaintiff with a preprinted "Quarantine Transport Agreement." *Id*. ¶ 35. The block authorizing seizure of the animal was struck through and unsigned. *Id*. ¶ 36. The block Plaintiff executed instead stated that she "WILL REDEEM this animal on the release date" of October 17, 2025. *Id*. ¶¶ 37–38. Plaintiff then personally, and without incident, walked the Dog on a leash to the transport

CURL, GLASSON & PATRASCIOIU, P.L.C.
485 S. Main Ave., Bldg. 1, Tucson, AZ 85701
(520) 884-7777 Option 2 ❖ Fax (520) 620-0921
www.curllaw.com

vehicle. *Id.* ¶ 40.

TCC § 4-10(a) authorizes impoundment, in plain view or by warrant, on probable cause of any of three independent grounds, including on probable cause "that an animal is vicious or destructive and may be a danger to the safety of any person or other animal." TCC § 4-10(a)(3). TCC § 4-11 then governs the forfeiture procedure that follows the impoundment, which includes written notice COT intends to request a hearing, a hearing before a magistrate within fifteen to twenty working days of COT's request, pretrial disclosure of witnesses and exhibits, a clear-and-convincing evidentiary standard, the right to counsel and to present and cross-examine witnesses, and a written decision with findings of fact and conclusions of law. TCC §§ 4-11(a)(1), (a)(3)–(5), (f), (j).

Plaintiff called PACC to redeem the Dog on October 10, 11, and 13, 2025, and it was not released. *Id.* ¶ 44. On October 11, 2025, Officer Jacobus served an Impoundment and Bond Notice citing TCC § 4-10 and identifying a bond amount. *Id.* ¶¶ 46–48. On November 3, 2025, less than a month after the Incident, COT filed a Petition and Order to Show Cause, and on November 24, 2025, a contested hearing was held before the Trial Court. *Id.* ¶ 49. At that hearing, Plaintiff appeared with counsel, presented her own witnesses (including a retained canine-behavior expert), and cross-examined COT's witnesses. *Id.* ¶ 49, Ex. B. The Trial Court found the Dog a "vicious animal," ordered forfeiture for destruction, and stayed destruction pending appeal on a $3,600 bond. *Id.* ¶ 50, Ex. D. On December 4, 2025, Plaintiff posted that bond. *Id.* ¶ 50. On December 8, 2025, Plaintiff filed a motion for clarification of the Trial Court's order. Ex. 2 at 2. On December 10, 2025, Plaintiff filed a petition for special action in Pima County Superior Court, Case No. C20258606. *Id.* ¶ 50. On December 11, 2025, the Trial Court entered an amended order. *Id.* ¶ 51, Ex. E. The validity of both orders was affirmed by the Superior Court and remains before the Arizona Court of Appeals, Division Two, No. 2 CA-CV 2026-0137. *Id.* ¶ 51; Ex. 2 at 5, Exhibit 3, Arizona Court of Appeals Case 2 CA-CV 2026-0137 Docket.

The FAC restructures Plaintiff's claims around this history. Count I.A now frames

CURL, GLASSON & PATRASCIOIU, P.L.C.
485 S. Main Ave., Bldg. 1, Tucson, AZ 85701
(520) 884-7777 Option 2 ❖ Fax (520) 620-0921
www.curllaw.com

the October 7 intake and the detention after October 17 as a warrantless seizure in violation of the Fourth Amendment, asserted against Officers Mills, Estrella, and Jacobus individually and against COT and Pima County (the "County"). *Id*. ¶¶ 93–100. Count I.B, directed at the County's post-November 24 custody, is not asserted against COT. *Id*. ¶¶ 101–107. Count II, asserted against the officers, COT, and the County, purports to challenge the process provided as a violation of the Fourteenth Amendment Due Process Clause while expressly claiming it "does not challenge the sufficiency of the November 24, 2025 hearing." *Id*. ¶¶ 10-117. Count III, pleaded in the alternative against COT and the County only, challenges the supersedeas bond and boarding fees as a violation of Fourteenth Amendment Substantive Due Process. *Id*. ¶¶ 118–123. Counts IV through VI, asserted against COT alone, are new facial challenges to TCC §§ 4-11(f)(3), 4-7(1), 4-12(a), 4-12(d), and 4-11(k). *Id*. ¶¶ 124–169. And the FAC's *Monell* section for COT now rests solely on TCC Chapter 4 as enacted policy, as well as the forms used on October 7 or 11, and expressly disclaims the prior standalone ratification theory based on COT's July 14, 2026 correspondence declining Plaintiff's demand. *Id*. ¶ 174. Ultimately, FAC, like the Complaint before it, amounts to a *de facto* appeal of the state court judgment. Therefore this Court lacks subject-matter jurisdiction and, in any case, Plaintiff has failed to state a claim. Accordingly, the FAC is properly dismissed.

## III. <u>Legal Standards</u>

### A. Subject-Matter Jurisdiction: The *Rooker-Feldman* Doctrine

Federal district courts lack subject-matter jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The doctrine applies where a federal plaintiff (1) asserts as a legal wrong an allegedly erroneous decision by a state court, and (2) seeks relief from the state court judgment. *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003). It applies regardless of whether the state-court judgment remains subject to further review in state appellate

CURL, GLASSON & PATRASCIOIU, P.L.C.
485 S. Main Ave., Bldg. 1, Tucson, AZ 85701
(520) 884-7777 Option 2 ❖ Fax (520) 620-0921
www.curllaw.com

proceedings. *T.M. v. Univ. of Md. Med. Sys. Corp.*, 608 U.S. ___, 146 S. Ct. 1739, 1752 (2026). A federal action is an impermissible *de facto* appeal where "the federal claim can only succeed to the extent that the state court wrongly decided the issues before it, or if the relief requested would effectively reverse or void the state court decision." *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 859 (9th Cir. 2008).

**B. Rule 12(b)(6)**

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where a complaint's own incorporated exhibits contradict its characterization of events, the exhibits control. *Steckman*, 143 F.3d at 1295–96.

**C. *Monell* Liability**

A municipality cannot be held liable under § 1983 on a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Liability attaches only where an official policy, custom, or the decision of a final policymaker was the "moving force" behind the constitutional violation, *id*. at 694; *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997), and a *Monell* claim requires an underlying constitutional violation in the first instance. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

**D. Standing and Ripeness for Facial Challenges**

Article III standing requires an injury in fact that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical," and which is fairly traceable to the challenged conduct. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Further, a plaintiff attacking a statute on its face must show a genuine threat that the specific provision will be enforced against her, not a generalized grievance about the statutory scheme. *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). Finally, a facial challenge requires the plaintiff to establish "that no set of circumstances

CURL, GLASSON & PATRASCIOIU, P.L.C.
485 S. Main Ave., Bldg. 1, Tucson, AZ 85701
(520) 884-7777 Option 2 ❖ Fax (520) 620-0921
www.curllaw.com

exists under which the [provision] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).

**E. Abstention and Stay Principles**

Although federal courts have a "virtually unflagging obligation" to exercise jurisdiction, that obligation yields in defined circumstances to comity. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). *Younger v. Harris*, 401 U.S. 37 (1971), requires federal courts to refrain from interfering with certain ongoing state proceedings, including civil enforcement proceedings "akin to a criminal prosecution." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78–79 (2013). Where *Younger* applies, damages claims are stayed and claims for injunctive or declaratory relief that would interfere with the state proceeding are dismissed. *Gilbertson v. Albright*, 381 F.3d 965, 968 (9th Cir. 2004) (en banc). Separately, *Colorado River* permits a stay in deference to a parallel state proceeding where doing so serves "wise judicial administration." 424 U.S. at 817–18; *R.R. Street & Co. v. Transp. Ins. Co.*, 656 F.3d 966, 978–79 (9th Cir. 2011).

**IV. <u>Argument</u>**

**A. This Court lacks subject-matter jurisdiction under *Rooker-Feldman*.**

Plaintiff is a state-court loser. The Trial Court found the Dog a "vicious or destructive animal" and ordered forfeiture for destruction. FAC ¶¶ 50–51. The Superior Court affirmed that order on special action review in Case No. C20258606. Ex.2 at 5. Because *Rooker-Feldman* raises a factual challenge to this Court's subject-matter jurisdiction, the Court may consider the Superior Court's ruling and other matters outside the FAC in resolving it. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); Fed. R. Evid. 201(b); *Daniels-Hall*, 629 F.3d at 998–99. The validity of both the November 24 and December 11, 2025 orders remains before the Arizona Court of Appeals. FAC ¶ 51, Ex. 3. All three decisions, meaning the Trial Court's two orders and the Superior Court's ruling affirming, were entered before Plaintiff filed this action. The

CURL, GLASSON & PATRASCIOIU, P.L.C.
485 S. Main Ave., Bldg. 1, Tucson, AZ 85701
(520) 884-7777 Option 2 ❖ Fax (520) 620-0921
www.curllaw.com

FAC nonetheless asks this Court for an order compelling the Dog's immediate return and a permanent injunction against enforcement of §§ 4-7(1), 4-11(f)(3), 4-11(k), 4-12(a), and 4-12(d), some of which are the very provisions the Trial Court applied in reaching its judgment. That relief can only be granted if this Court concludes the state court's forfeiture order was wrong and undoes its practical effect, precisely the *de facto* appeal *Rooker-Feldman* forecloses. *Reusser,* 525 F.3d at 859; *Noel*, 341 F.3d at 1164.

This jurisdictional bar reaches the FAC's requested injunctive and declaratory relief specifically. Nonetheless, to the extent Counts IV through VI seek a declaration that §§ 4-7(1), 4-11(f)(3), 4-11(k), 4-12(a), and 4-12(d) are facially invalid in the very form the Trial Court applied them, they fare no better: a judgment in Plaintiff's favor on those counts would necessarily imply that the order entered under those provisions was itself invalid, which is again relief from the state judgment that only the state appellate courts, and ultimately the United States Supreme Court under 28 U.S.C. § 1257, may provide. *Exxon Mobil*, 544 U.S. at 284.

The Court should dismiss the FAC's claims for injunctive and declaratory relief against COT, including Counts IV through VI to the extent they seek that relief, for lack of subject-matter jurisdiction under Rule 12(b)(1). Plaintiff's remaining claims fail to state a claim for the reasons set out *infra* and, in the alternative, warrant a stay under *Younger* and *Colorado River*.

**B. Counts I.A, II, and III fail to state a claim against COT.**

**1. Count I.A fails against COT.**

The FAC's premise that "no judicial order or ordinance authorized the taking" does not survive a reading of the TCC. § 4-10(a)(3) authorizes impoundment on probable cause "that an animal is vicious or destructive and may be a danger to the safety of any person or other animal." An admitted, same-day biting incident is probable cause of exactly that. Plaintiff's argument reduces to a claim that officers should instead have invoked the state statute's home-confinement option for vaccinated animals, A.R.S. § 11-1014(A), rather than the TCC's own vicious-animal impoundment authority. A disagreement about which

CURL, GLASSON & PATRASCIOIU, P.L.C.
485 S. Main Ave., Bldg. 1, Tucson, AZ 85701
(520) 884-7777 Option 2 ❖ Fax (520) 620-0921
www.curllaw.com

of two lawful confinement options officers selected is distinct from an allegation that no lawful authority existed, and even framed as a state-law violation, it is, at most, a claim that officers misapplied a state statute's confinement-location provision, not a structural defect in any COT policy.

Regardless, consent independently forecloses the claim. Consent is a well-established basis for a seizure that requires no warrant, and it applies to property as it does to searches. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Plaintiff's own allegations—an owner who voluntarily surrenders an animal for quarantine following an admitted bite—amount to consent here. FAC ¶ 40. The "warrantless seizure" Count I.A describes is the product of Plaintiff's own agreement, not COT compulsion.

Even setting the TCC's impoundment authority and Plaintiff's consent aside entirely, temporary quarantine of a dog that has just bitten a person is a core exercise of the government's traditional authority to protect public health and safety pending a prompt determination, closely analogous to the recognized, non-investigatory exceptions to the warrant requirement for exigent circumstances. *Cf. Cady v. Dombrowski*, 413 U.S. 433, 441 (1973) (community caretaking functions); *Illinois v. McArthur*, 531 U.S. 326, 331 (2001) (brief restraint justified by an immediate government need is reasonable).

The interval between October 17 and the November 24 hearing fares no better. COT filed its Petition and Order to Show Cause within weeks of the bite, and Plaintiff received a full adversarial hearing shortly after. FAC ¶ 49. Continued custody of a biting animal for the brief period reasonably necessary to convene that hearing is not the kind of seizure the Fourth Amendment's reasonableness inquiry condemns. And in any event, custody during that interval was PACC custody, not COT's.

Finally, *Monell* liability independently fails. The FAC's sole COT policy theory for Count I.A is that the October 7 intake and the October 11 notice were "carried out on [COT] forms . . . with a [COT] bond amount." FAC ¶ 173. But the FAC does not allege that those forms direct officers to disregard an animal's vaccination status or hold an animal past its printed release date. A form that does not itself command the conduct

CURL, GLASSON & PATRASCIOIU, P.L.C.
485 S. Main Ave., Bldg. 1, Tucson, AZ 85701
(520) 884-7777 Option 2 ❖ Fax (520) 620-0921
www.curllaw.com

Plaintiff challenges cannot be the "moving force" behind it. *Monell*, 436 U.S. at 694.

Nor does the extended narrative in FAC ¶¶ 80–92, describing PACC's internal communications, the Dog's medical file, and County officials' post-hearing custodial decisions, supply what the form-based theory lacks. The FAC's *Monell* section confirms that COT's policy theory rests entirely on TCC as enacted and the two October forms. FAC ¶¶ 170–174. Allegations describing County conduct occurring after PACC took custody of the Dog are neither a COT policy nor evidence of one, and they cannot substitute for the "moving force" showing *Monell* requires. *Monell*, 436 U.S. at 694.

**2. Count II fails against COT.**

Count II expressly "does not challenge the sufficiency of the November 24, 2025 hearing as a judicial proceeding." FAC ¶ 109. What remains directed at COT is the October 7 or 11 paperwork. But due process does not require pre-deprivation process before a brief, quarantine-driven detention where a prompt post-deprivation hearing follows and can adequately protect the private interest at stake. *Barry v. Barchi*, 443 U.S. 55, 64–66 (1979) (temporary suspension pending a prompt post-suspension hearing satisfies due process); *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Plaintiff received exactly that: roughly six weeks between intake and a full contested hearing with counsel, cross-examination, and her own retained expert.

The remaining allegations Count II relies on, the November 2, 2025 "no contact" directive and the withheld January 2026 medical records, are pleaded as County conduct, not COT conduct. FAC ¶ 114. COT cannot be held liable under § 1983 for PACC's post-hearing custodial and communications practices, even if they were unconstitutional, which COT does not concede.

**3. Count III fails against COT.**

Count III challenges the extaction of the $3,600 supersedeas bond and the escalating boarding fees. FAC ¶¶ 119–121. But the FAC itself attributes the bond to the Trial Court, setting a condition for a stay pending appeal and attributes the day-to-day

CURL, GLASSON & PATRASCIOIU, P.L.C.
485 S. Main Ave., Bldg. 1, Tucson, AZ 85701
(520) 884-7777 Option 2 ❖ Fax (520) 620-0921
www.curllaw.com

boarding and kennel fees to PACC. FAC ¶¶ 50, 58, 73, 132. Neither was set, collected, or authorized by any COT policymaker. Because COT did not impose the exaction Count III challenges, the FAC cannot plausibly allege that a COT policy was its moving force. *Heller*, 475 U.S. at 799.

The TCC confirms the point and independently defeats the claim. § 4-11(h) requires an initial bond equal to twenty days of impoundment costs, and § 4-11(k) requires a further bond, equivalent to sixty days of impoundment costs, to perfect an appeal, matching the trajectory of the $3,600 bond Plaintiff posted "to perfect the appeal." FAC ¶ 50. § 4-11(l) then excuses the owner from all resulting fees if she prevails at the hearing or on appeal. A routine, ordinance-based bond requirement to preserve property and secure costs during an appeal the owner chose to pursue, ***fully excused if she succeeds***, is not the kind of arbitrary, conscience-shocking exaction substantive due process forbids. *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).

**C. Counts IV-VI should be dismissed for lack of standing and ripeness, and fail on the merits regardless.**

Even if the Court concludes that *Rooker-Feldman* does not extend to Counts IV through VI in their entirety, each fails independently for reasons particular to that Count. Count IV fails because the ordinance's own structure refutes Plaintiff's premise. Count V fails because an independent, unchallenged finding already supports the order Plaintiff seeks to undo, so invalidating the provision she attacks would not redress her injury, and her remaining vagueness theory fails on the merits. Count VI fails because the disposition provisions it attacks have never been applied to the Dog. Each is a threshold standing, ripeness, or pleading defect the Court may resolve without reaching the remaining merits of TCC Chapter 4.

**1. Count IV fails because the ordinance refutes Plaintiff's premise.**

Plaintiff's theory is that § 4-11(f)(3) permits destruction without the individualized evaluation that § 4-13(c)(2) requires before a less consequential muzzle-type order. FAC

CURL, GLASSON & PATRASCIOIU, P.L.C.
485 S. Main Ave., Bldg. 1, Tucson, AZ 85701
(520) 884-7777 Option 2 ❖ Fax (520) 620-0921
www.curllaw.com

¶¶ 132–136. The theory does not survive a reading of the two sections together. § 4-13(c)(2)'s evaluation requirement attaches only to a dangerousness declaration made unilaterally by "the city enforcement agent" under § 4-13(a)(2) before any hearing occurs. A hearing is available only if the owner later requests one, and even then, it is conducted informally by a hearing officer and COT's burden is a mere preponderance of the evidence. TCC §§ 4-13(a)(2), (c)(2)–(3), (d)(6)–(8). The evaluation merely functions as a substitute for the judicial process that administrative track otherwise lacks.

Meanwhile, § 4-11 is structured altogether differently. It authorizes any remedy, including the lesser remedies of spay/neuter with compliance or banishment, but only after a magistrate (not an enforcement agent) finds by clear and convincing evidence (not a preponderance) that the animal is dangerous, vicious, or destructive, following a hearing at which the owner has the right to counsel, the right to present and cross-examine witnesses, and a written decision containing findings of fact and conclusions of law. *Id.* §§ 4-11(a)(1), (a)(3)–(5), (f), (j). In other words, far from omitting an individualized assessment before the graver remedy, § 4-11 requires a full contested judicial hearing before any remedy under that section, including destruction, may issue at all. Plaintiff's own hearing bore this out: a certified canine-behavior expert testified regarding the Dog's temperament and a proposed behavior plan before the Trial Court. FAC ¶ 49; FAC Ex. B at 78-98.

Plaintiff's facial theory therefore inverts the ordinance's actual structure. The track available for the graver remedy of destruction requires more process and a heightened evidentiary standard compared to the administrative track available for a mere muzzle order. A scheme that supplies additional judicial process before the more serious deprivation satisfies *Mathews*. 424 U.S. at 335. And because the ordinance's structure, borne out by Plaintiff's own hearing, shows § 4-11(f)(3) operating together with a full evidentiary hearing exceeding anything § 4-13(c)(2) requires, Plaintiff cannot satisfy *Salerno*'s requirement that no set of circumstances exist under which the provision is valid. 481 U.S. at 745. She accordingly also lacks standing to press a hypothetical version

CURL, GLASSON & PATRASCIOIU, P.L.C.
485 S. Main Ave., Bldg. 1, Tucson, AZ 85701
(520) 884-7777 Option 2 ❖ Fax (520) 620-0921
www.curllaw.com

of the statute that was never, and could never be, applied to her that way.

**2. Count V fails because the "destructive animal" definition is immaterial.**

The Trial Court's written findings state that the Dog "falls within the category of a vicious or destructive animal pursuant to [TCC] § 4-7," and separately find both that he "has the propensity to destroy…" and that he "is an animal that bites..." FAC Ex. E. The order forfeiting the Dog therefore rests on two independent and sufficient grounds: the "destructive animal" definition in § 4-7(1)(b), which Count V challenges, and the "vicious animal" definition in § 4-7(1)(d), which Count V does not contend is facially invalid as applied to an animal that bites a person.

That independent, unchallenged finding defeats Count V's request for relief as to § 4-7(1)(b). A plaintiff must show that a favorable decision will redress her injury. *Lujan*, 504 U.S. at 560–61. Even if this Court declared § 4-7(1)(b) unconstitutional and enjoined its enforcement, the order forfeiting the Dog would remain fully intact under the Trial Court's separate, unchallenged finding that he is a "vicious animal" that bit a person. Invalidating § 4-7(1)(b) would not return the Dog to Plaintiff or otherwise change her position because the order does not depend on that provision alone. Plaintiff accordingly lacks standing to obtain the relief Count V seeks as to § 4-7(1)(b).

Plaintiff's vagueness theory as to the "vicious animal" definition's use of "endangers" fares no better. The Dog indisputably bit a person, and the Trial Court found exactly that. That is not a borderline application of a provision covering an animal that "bites . . . human beings." § 4-7(1)(d). A party whose conduct falls squarely within a statute's core prohibition may not challenge the statute as vague in its hypothetical application to others. *Parker v. Levy*, 417 U.S. 733, 756 (1974); *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495, 498–99 (1982) (civil regulatory statutes receive relaxed vagueness scrutiny, and a party whose conduct is clearly proscribed cannot complain of vagueness as applied to others).

CURL, GLASSON & PATRASCIOIU, P.L.C.
485 S. Main Ave., Bldg. 1, Tucson, AZ 85701
(520) 884-7777 Option 2 ❖ Fax (520) 620-0921
www.curllaw.com

**3. Count VI is unripe and Plaintiff lacks standing.**

Count VI attacks the criteria, or asserted absence of criteria, governing disposition of a forfeited animal after destruction, adoption, or transfer. FAC ¶¶ 155–166. But the Dog has not been disposed of and remains alive in PACC custody, and subject to a stay of destruction pending appeal. *Id*. ¶ 50. Plaintiff does not, and cannot, allege that any Defendant has taken a single step toward placing, transferring, or destroying the Dog under § 4-12. That is precisely the kind of speculative, "someday" injury *Lujan* holds insufficient to confer standing. 504 U.S. at 564. Plaintiff's fallback allegation that she also owns another dog, Coyoki, who is "theoretically subject to the same provisions," FAC ¶ 168, does not cure the defect. Nothing in the FAC alleges that Coyoki has ever been seized, evaluated, or made the subject of any proceeding, or that COT has threatened to invoke TCC Chapter 4 against her. A generalized, hypothetical possibility of future enforcement, untethered to any actual or imminent proceeding, does not confer standing. *Babbitt*, 442 U.S. at 298–99.

**D. *Younger* and *Colorado River* abstention warrant a stay.**

Even accepting Plaintiff's relabeling of her claims, and even if the Court reaches the merits rather than dismissing for lack of subject-matter jurisdiction, the relief the FAC seeks would require this Court to disturb the practical effect of proceedings Plaintiff concedes remain active in the Pima County Superior Court and the Arizona Court of Appeals. FAC ¶¶ 51, 179–180. For the reasons set out in COT's original motion, Doc. 8 at 12:4–14:26, the underlying municipal dangerous-animal proceeding remains a civil enforcement proceeding within *Younger*'s second category: it was initiated by COT following an investigation, prosecuted by a municipal prosecutor, and resulted in a forfeiture and destruction order, the paradigmatic sanction a sovereign imposes for a code violation. *Sprint*, 571 U.S. at 79–80. That proceeding remains ongoing on appeal, implicates the State's traditional police-power interest in regulating dangerous animals, and affords Plaintiff a full opportunity to raise the facial and as-applied theories pressed

CURL, GLASSON & PATRASCIOIU, P.L.C.
485 S. Main Ave., Bldg. 1, Tucson, AZ 85701
(520) 884-7777 Option 2 ❖ Fax (520) 620-0921
www.curllaw.com

here, including her new TCC Chapter 4 facial challenges, which are equally available to her as defenses or claims in the pending state proceedings. Where *Younger* applies, damages claims are stayed and claims for declaratory and injunctive relief that would interfere with the state proceeding are dismissed. *Gilbertson*, 381 F.3d at 968.

In the alternative, the *Colorado River* factors continue to favor a stay: the state special action was filed first; both proceedings substantially overlap on the validity and consequences of the same underlying order; proceeding in both forums risks inconsistent rulings on TCC Chapter 4's meaning and application; and the state courts are well positioned to resolve the state and municipal law questions Plaintiff's new facial challenges raise. *R.R. Street*, 656 F.3d at 978–79; *Colorado River*, 424 U.S. at 817–18.

## V. <u>Conclusion</u>

For the foregoing reasons, COT respectfully requests that the Court dismiss Plaintiff's claims for injunctive and declaratory relief against COT under Rule 12(b)(1) for lack of subject-matter jurisdiction and dismiss the remaining claims against COT in the FAC under Rule 12(b)(6). COT further requests that the Court grant its reasonable attorney's fees pursuant to 42 U.S.C. § 1988. In the alternative, COT requests that the Court stay this action, dismissing Plaintiff's claims for declaratory and injunctive relief against COT and staying her damages claims against COT, pending resolution of the pending state court proceedings.

DATED: September 15, 2026

CURL, GLASSON & PATRASCIOIU, P.L.C.

By: <u>/s/ *J.C. Patrascioiu*</u>
J.C. Patrascioiu
*Attorneys for Defendant City of Tucson*

CURL, GLASSON & PATRASCIOIU, P.L.C.
485 S. Main Ave., Bldg. 1, Tucson, AZ 85701
(520) 884-7777 Option 2 ❖ Fax (520) 620-0921
www.curllaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on September 15, 2026 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

William B. Thomas
McDOWELL HETHERINGTON LLP
1001 Fannin Street, Suite 2400
Houston, TX 77002
william.thomas@mhllp.com
*Attorneys for Plaintiff*

Christina E. Ponig
FLETCHER HELD, PLLC
808 Travis Street, Suite 1553
Houston, Texas 77002
cmaccio@fletcherheld.com
*Attorneys for Plaintiff*

Tyler Campman
Rebecca K. O'Brien
PIMA COUNTY ATTORNEY
CIVIL DIVISION
32 North Stone Avenue, Suite 2100
Tucson, Arizona 85701
Tyler.Campman@pcao.pima.gov
Rebecca.OBrien@pcao.pima.gov
*Attorneys for Pima County Defendants*

/s/ *SJP*

CURL, GLASSON & PATRASCIOIU, P.L.C.
485 S. Main Ave., Bldg. 1, Tucson, AZ 85701
(520) 884-7777 Option 2 ❖ Fax (520) 620-0921
www.curllaw.com