**LAURA CONOVER**
**PIMA COUNTY ATTORNEY**
**CIVIL DIVISION**
Tyler Campman, SBN 036416
Deputy County Attorney
Tyler.Campman@pcao.pima.gov
Rebecca K. O'Brien, SBN 021954
Deputy County Attorney
Rebecca.OBrien@pcao.pima.gov
32 North Stone Avenue, Suite 2100
Tucson, Arizona 85701
Telephone: 520-724-5700
*Attorneys for Defendant Pima County*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Jennifer Evancho,<br><br>Plaintiff,<br>vs.<br><br>City of Tucson, et al.,<br><br>Defendants. | No. 4:26-cv-00363-RM<br><br>**PIMA COUNTY'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |

Pima County moves to dismiss Plaintiff's Verified First Amended Complaint ("Complaint") [Doc. 15-1] in its entirety pursuant to Fed. R. Civ. P. 8(a)(2), 12(b)(1), and 12(b)(6). Plaintiff lost in state court and now asks this Court to interfere with the state court proceedings. This is clearly prohibited by federal law. This motion is supported by the accompanying Memorandum of Points and Authorities, the attached certificate of consultation, supporting exhibits, and the complete record in this action.

///

///



LAURA CONOVER
PIMA COUNTY ATTORNEY
CIVIL DIVISION

LAURA CONOVER
PIMA COUNTY ATTORNEY
CIVIL DIVISION

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This action arises from an October 7, 2025, incident in which Sgt. Snuggles, Plaintiff's Anatolian Shepard dog, bit Plaintiff's mother. A Pima Animal Care Center ("PACC") officer who arrived to the scene to investigate described finding a piece of the victim's scalp with her hair attached lying in the yard and seeing fresh spots of blood on the dog's white fur. [Doc. 14-3, pp. 14-15.] According to another official, the dog "did not show any sort of incremental escalation of his—attack. He went from zero to a hundred and mauled this woman to a Level 4 bite, which is one step before death." *Id.* at 43. Plaintiff's mother required surgical intervention for her injuries. *Id.* at 76.

On October 11, 2025, two PACC officers arrived to Plaintiff's home and explained the bond form to her. [Doc. 14-12, pp. 7, 11.] They told her that paying the bond would allow her to have a hearing where she could have counsel present, and that failure to do so would result in the forfeiture of the dog to PACC. *Id.* at 7. She stated that she understood and signed the bond form willingly. *Id.*

After an evidentiary hearing on the City of Tucson's Order to Show Cause, Tucson City Court Magistrate Judge Mayhew found on November 24, 2025, that Sgt. Snuggles was a vicious animal pursuant to the Tucson City Code and ordered that he be forfeited to the State for humane destruction. [Doc. 14-5 (" Order").] Pima County was not a party to those proceedings but PACC took possession of Sgt. Snuggles pursuant to that Order. Plaintiff then posted a bond to stay the Order and filed a Petition for Special Action in Pima County Superior Court on December 10, 2025.[1] **Exhibit 1**, Petition for Special Action. On

[1] This Court may take judicial notice of the City of Tucson and Superior Court proceedings as a matter of public record. Fed. R. Evid. 201; *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir.2001). In addition, in assessing whether it has jurisdiction pursuant to Fed. R.

LAURA CONOVER
PIMA COUNTY ATTORNEY
CIVIL DIVISION

March 26, 2026, Pima County Superior Court Judge Bryson found that "the [Tucson City Court's] findings were adequate, met the requirements of the code, and were supported by the evidence in the record." *See* **Exhibit 2**, C20258606 Under Advisement Ruling, p. 5. Accordingly, Judge Bryson dismissed Plaintiff's special action. *Id.* Plaintiff subsequently filed a Notice of Appeal in the Superior Court matter on April 9, 2026. *See* **Exhibit 3**, C20258606 Notice of Appeal. Plaintiff's appeal is currently before the Arizona Court of Appeals and the parties are engaged in motion practice. *See* **Exhibit 4**, Arizona Court of Appeals Case 2 CA-CV 2026-0137 Docket. Sgt. Snuggles has been housed at PACC during the pendency of these proceedings, pursuant to the Order.

## II. ARGUMENT

### 1. This case does not belong here.

Plaintiff asks this Court to do something principles of federalism prohibit—sit as an appellate court over a state court judgment while that judgment remains under review in state appellate proceedings. Two independent but similar doctrines bar this case. First, because Plaintiff is a state court loser complaining of injuries caused by a state court judgment, the *Rooker-Feldman* doctrine deprives this Court of subject matter jurisdiction, regardless of whether that judgment remains subject to further review on appeal. Second, because the underlying state proceeding remains ongoing and implicates important state interests, *Younger* abstention counsels this Court against interference. Either doctrine requires dismissal—together, they leave no room for this Court to entertain Plaintiff's collateral attack.

///

///

Civ. P. 12(b)(1), the Court may consider facts outside the record. *See Biotics Research Corp. v. Heckler,* 710 F.2d 1375, 1379 (9th Cir.1983) (consideration of material outside the pleadings did not convert a Rule 12(b)(1) motion into one for summary judgment).

LAURA CONOVER
PIMA COUNTY ATTORNEY
CIVIL DIVISION

### A. The *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine applies to cases brought by state court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review of those judgments. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The doctrine bars subject-matter jurisdiction where a federal plaintiff (1) asserts as a legal wrong an allegedly erroneous decision by the state court itself, and (2) seeks relief from the state court judgment. *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003). Importantly, the doctrine applies to all state court judgments rendered before the commencement of federal proceedings, regardless of whether those judgments remain subject to further review in state appellate proceedings. *T. M. v. Univ. of Maryland Med. Sys. Corp.*, 146 S. Ct. 1739, 1752 (2026). This Court does not have subject-matter jurisdiction in this case. S*ee Kollenburn v. Cnty. of Clackamas*, 2021 WL 719895, at *5 (D. Or. Feb. 24, 2021) (holding that the court lacked jurisdiction to grant the requested preliminary injunction in federal lawsuit filed after a dog owner's appeal to state court seeking to nullify a dangerous dog designation).

Plaintiff's second effort to recast her pleadings to circumvent Rooker-Feldman fails no less decisively than her first. She asserts multiple times in the Complaint that she is not challenging the order of any Arizona court. [Doc. 15-1, ¶ ¶ 9, 12.] However, that is clearly belied by the substance of her claims. For example, in challenging the County's post-November 24, 2025, custody, Plaintiff claims that "a County custodian may not indefinitely detain living property without a present, reasonable justification of its own," *Id.* at ¶ 102, but does not attempt to explain the obvious contradiction inherent in this claim. Surely the Order, issued by the Tucson City Court that Sgt. Snuggles be impounded, which Plaintiff by her words is not challenging, gives the County authority to possess the dog. Any alternative theory requires untenable legal contortions. Similarly, Plaintiff states that

LAURA CONOVER
PIMA COUNTY ATTORNEY
CIVIL DIVISION

"Count I(B) seeks injunctive relief ending the County's detention and damages against the County. It does not ask this Court to declare the City Court orders void." *Id.* at ¶ 104. Plaintiff's position is internally irreconcilable. She cannot maintain that she does not challenge the validity of the state court order while simultaneously asking this Court to require the County to disregard that order and release a dog they have been commanded to impound. Whatever label Plaintiff places on her claim, the relief she seeks necessarily runs headlong into the state court order.

### B. *Younger* Abstention

Post-*Sprint*, the *Younger* abstention doctrine extends to particular state-court proceedings that are akin to criminal prosecutions, or that implicate a state's interest in enforcing the orders and judgments of its courts. *Sprint Communications, Inc. v. Jacobs,* 571 U.S. 69, 72 (2013) (citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 (1975) and *Pennzoil Co. v. Texaco Inc.,* 481 U.S. 1 (1987)). *Younger* principles apply to actions for injunctive and declaratory relief, though they counsel that damages actions should be stayed rather than dismissed until state proceedings are completed. *Gilbertson v. Albright*, 381 F.3d 965, 968 (9th Cir. 2004).

Plaintiff herself has categorized this case as akin to a criminal prosecution and a sanction of her. *See* **Exhibit 5**, Plaintiff/Petitioner's Motion to Vacate Destruction Order, p. 17 ("A scheme that secures a **criminal-level determination and an irrevocable sanction** by lowering the burden and deleting the defense cannot be reconciled with procedural due process") (emphasis added). This case also clearly implicates the State's interest in enforcing the orders and judgments of its courts. Sgt. Snuggles was ordered to be impounded and humanely destroyed. Destruction has been stayed only due to Plaintiff's pending state court appeal. If this Court were to grant Plaintiff's requested relief, it would be directly contrary to the Order, effectively overturning it. Again, while Plaintiff may

LAURA CONOVER
PIMA COUNTY ATTORNEY
CIVIL DIVISION

believe the Order is void and the process illegitimate, those are arguments that should be made (and are currently being made) in the Arizona Court of Appeals.

The *Younger* principles were further synthesized in the Ninth Circuit and are appropriate where state proceedings: 1) are ongoing; 2) are quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts; 3) implicate an important state interest; and 4) allow litigants to raise federal challenges. *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754 (9th Cir. 2014). The state proceedings here are ongoing, represent quasi-criminal enforcement actions according to Plaintiff, and involve the State's interest in enforcing its orders as described above. They also implicate important state interests of animal control and public safety, and Plaintiff is able to raise federal challenges during the state court proceedings and has. *See* **Exhibit 5**, pp. 18-19 (raising due process arguments). For these reasons, even if the Court determined it had subject-matter jurisdiction after the *Rooker-Feldman* analysis, *Younger* abstention principles apply and counsel the Court to refrain from interfering in the state court proceedings, which remain ongoing.

**2. The Complaint fails to state a claim against Pima County.**

Plaintiff's claims, consisting of alleged violations of her Fourth and Fourteenth Amendment rights, as well as various *Monell* violations, are fatally flawed. Even assuming Plaintiff could clear the jurisdictional hurdle, she has failed to state a claim.

**A. Pima County is acting pursuant to the law.**

The bulk of Plaintiff's substantive allegations against Pima County fail for the same reason and so the County addresses them jointly—**it has, and continues, to act pursuant to a court order.** Sgt. Snuggles was ordered surrendered to PACC for humane destruction by Tucson City Court Judge Mayhew. [Doc. 14-6.] Therefore, there can be no successful allegation based on Pima County's possession of Sgt. Snuggles. Of course, it is Pima County's policy to comply with court orders. In essence, Plaintiff is asking Pima County

LAURA CONOVER
PIMA COUNTY ATTORNEY
CIVIL DIVISION

to act as a pseudo-appellate court and scrutinize the Order itself before giving it effect. The County cannot and will not do so. *See, e.g.*, *Stein v. Ryan*, 662 F.3d 1114, 1119 (9th Cir.2011) ("[There is] no authority requiring prison officials to review sentencing orders independently to make sure the court got it right."); *Valdez v. City & Cnty. of Denver*, 878 F.2d 1285, 1289 (10th Cir.1989) (prison officials have no duty "to act as pseudo-appellate courts scrutinizing the orders of judges").

A seizure or continued detention carried out in compliance with a facially valid judicial order is reasonable as a matter of law and does not give rise to Fourth Amendment liability. Similarly, the existence of a judicial order authorizing the County's possession of Sgt. Snuggles is evidence that due process was afforded, not withheld. In fact, Plaintiff herself provides the transcript of the evidentiary hearing detailing the process she was provided with pursuant to the Fourteenth Amendment, where she was also represented by counsel. [Doc. 14-3.] And because there is no underlying constitutional violation, *Monell* liability, the sole claim against Pima County, cannot attach as a matter of law.

Plaintiff claims that "the only instrument any Defendant has ever identified as authority to seize and hold Snuggles is the City of Tucson's destruction order." [Doc. 15-1, ¶ 78.] This misrepresentation of the facts represents Plaintiff's futile attempt to fix the central defect in her claim against Pima County. Pima County is not relying on an order issued by the City of Tucson. It is relying on an order issued by the Tucson City Court which was affirmed on special action appeal by the Pima County Superior Court. *See* **Exhibit 2**, C20258606 Under Advisement Ruling. Simply put, it cannot be unconstitutional for Pima County to act according to a court order when no higher court has held that order to be invalid. Indeed, Pima County is required to abide by the Order.

To the extent that Plaintiff is challenging the period of time that Sgt. Snuggles was impounded before the Tucson City Court issued its order, that impoundment was clearly justified. When PACC officers arrived to Plaintiff's home, they encountered a situation in

LAURA CONOVER
PIMA COUNTY ATTORNEY
CIVIL DIVISION

which Sgt. Snuggles had just bitten Plaintiff's mother in multiple places, including biting a portion of Plaintiff's mother's scalp off, leaving her needing surgical intervention. The bite was classified as a level 4, just one step below death. Plaintiff's claim is that the bite was a result of "dysregulating stressors," including the fact that a female dog nearby was in heat [Doc. 15-1, ¶ 30.], but that is, of course, a factor that was under Plaintiff's control, and also raised in the state court proceedings. **Exhibit 1**, Petition for Special Action, p. 3. How that point supports Plaintiff's position that the seizure was unjustified is unclear. Plaintiff's Complaint is also missing key details, like the fact that Sgt. Snuggles was on an illegal tie-out at the time the bite occurred. *Id.*; Pima County Code 6.04.110(B)(5). Taking in conjunction the severity of the bite, the conditions Sgt. Snuggles was found in, and Pima County's interest in animal control and community safety, it is clear that the impoundment was justified, even prior to the Tucson City Court's order. Importantly, the validity of the impoundment is a part and parcel of the state court proceedings, and Plaintiff's arguments regarding it have already been raised there. **Exhibit 5**, Plaintiff/Petitioner's Motion to Vacate Destruction Order, p. 11.

**3. Plaintiff's requested injunctive relief should be denied.**

Plaintiff cannot succeed on the merits in this case based on the arguments above. For this reason alone, her application for injunctive relief should be denied. Further, any relief involving returning Sgt. Snuggles to Plaintiff or moving him elsewhere would clearly be contrary to the Order and subject Pima County to two conflicting orders. In addition, she has not shown irreparable harm. Plaintiff's harm argument is based in part on the medication being given to Sgt. Snuggles at PACC. [Doc. 13, pp. 7-8.] However, her own animal behaviorist requested that Sgt. Snuggles be placed on Gabapentin. [Doc. 12-2, p. 8.] Plaintiff cannot request that Sgt. Snuggles be medicated, then turn around and point to that medication as evidence supporting the claim for injunctive relief.

///

LAURA CONOVER
PIMA COUNTY ATTORNEY
CIVIL DIVISION

## III. CONCLUSION

For the foregoing reasons, Plaintiff's Complaint should be dismissed[2] and her request for injunctive relief denied. In addition, Pima County requests that the Court grant it reasonable attorney's fees pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 1927.

RESPECTFULLY SUBMITTED September 15, 2026.

LAURA CONOVER
PIMA COUNTY ATTORNEY

By/s/: *Tyler Campman*
Tyler Campman
Rebecca O'Brien
Deputy County Attorneys

[2] Pima County's position is that the First Amended Complaint should be dismissed in its entirety as described above. The County notes that neither Jan Lesher, Steve Kozachik, nor any County Officers or Does have been served with the Complaint.

LAURA CONOVER
PIMA COUNTY ATTORNEY
CIVIL DIVISION

**CERTIFICATE OF SERVICE**

I hereby certify that on September 15, 2026, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Additionally, a copy of the foregoing was mailed on this same date to the following recipient:

William B. Thomas
McDOWELL HETHERINGTON LLP
1001 Fannin Street, Suite 2400
Houston, TX 77002
william.thomas@mhllp.com
Christina E. Ponig (Admitted Pro Hac Vice)
FLETCHER HELD, PLLC
808 Travis Street, Suite 1553
Houston, Texas 77002
cmaccio@fletcherheld.com
*Attorneys for Plaintiff*

J.C. Patrascioiu
CURL, GLASSON & PATRASCIOIU, PLC
485 S. Main Ave., Bldg. 1
Tucson, AZ 85701
jcp@curllaw.com
*Attorneys for Defendant City of Tucson*

By: */s/ Melanie Mosier*