Christina E. Ponig (*Admitted Pro Hac Vice*)
FLETCHER HELD, PLLC
808 Travis Street, Suite 1553
Houston, Texas 77002
713-255-0422 (phone) / 713-255-0419 (fax)
cmaccio@fletcherheld.com
-and-
William B. Thomas (State Bar No. 039456)
McDOWELL HETHERINGTON LLP
1001 Fannin Street, Suite 2400
Houston, TX 77002
713-337-5580 (phone) / 713-337-8850 (fax)
william.thomas@mhllp.com

Attorneys for Plaintiff Jennifer Evancho

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
TUCSON DIVISION

| | |
|---|---|
| Jennifer Evancho,<br><br>Plaintiff,<br>vs.<br><br>City of Tucson, a municipal corporation; Pima County, a political subdivision of the State of Arizona; Jan Lesher, in her official capacity as Pima County Administrator; Steve Kozachik, in his official capacity as Director of Pima Animal Care Center; Officer Mills, Badge No. 3424, in her individual capacity; Officer Estrella, Badge No. 3298, in his individual capacity; Officer J. Jacobus, Badge No. 3369, in his individual capacity; Does 1 through 10, in their individual and official capacities as Animal Control Officers, Supervisors, and employees of the City of Tucson and/or Pima County responsible for the seizure, detention, and threatened destruction of Sergeant Snuggles,<br><br>Defendants. | No. 4:26-cv-00363-RM<br><br>PLAINTIFF'S RESPONSE IN OPPOSITION TO PIMA COUNTY'S MOTION TO DISMISS (DKT. 19)<br><br>ORAL ARGUMENT REQUESTED |

Plaintiff Jennifer Evancho ("Plaintiff") submits this response in opposition to Defendant Pima County's Motion to Dismiss (Dkt. 19) as follows:

## I. INTRODUCTION

Pima County's motion is ten pages long and rests on a single sentence: the County

"has, and continues, to act pursuant to a court order." Dkt. 19 at 6. Everything in the motion is built on that proposition. Plaintiff does not quarrel with the proposition itself. The motion fails because the proposition does not reach the conduct actually pleaded.

This response addresses only the County's motion to dismiss at Docket 19. It does not submit the claims against the City of Tucson or Officers Mills, Estrella and Jacobus—including Counts IV through VI, which are pleaded against the City alone and as to which the County's motion advances no argument—and it is written to be read with Plaintiff's response to Docket 18.

**The order did not exist for the first forty-eight days.** PACC took possession of Sergeant Snuggles on October 7, 2025. The order issued on November 24, 2025. Doc. 19 at 2. That is forty-eight days of custody with no order of any kind—thirty-eight of them after the October 17, 2025 release date the County's own officers printed on the County's own form. *Stein v. Ryan* and *Valdez v. City & County of Denver* (Dkt. 19 at 7), the two cases the motion rests on, concern compliance with an existing judicial mandate. Neither says anything about holding property before any order exists.

**The order does not command the conduct charged.** The destruction orders (Exhibits D and E to the First Amended Complaint (Dkts. 14-5 & 14-6)) order forfeiture and humane destruction and stay destruction pending appeal. They say nothing about the terms, conditions or duration of interim custody; nothing about the boarding and kennel charges the County assesses on its own schedule; nothing about the November 2, 2025 directive that PACC staff "are NOT to reach out" to the owner and "are unable to speak with her"; nothing about access to the animal for evaluation; and nothing about the eight-month non-disclosure of a January 5, 2026 medical emergency. A court order can be a defense to the acts it commands. It is not a general immunity for everything a custodian does while holding the property.

**The motion also asks this Court to decide contested facts.** Whether the pre-order impoundment was "clearly justified," whether a tie-out was unlawful under a County ordinance the County's own charging instrument did not invoke, whether the bite was

provoked, whether the County's custodial choices were compelled by the order or made by the County, and whether Plaintiff asked that her dog be medicated for eleven months — each is a question of fact that the motion asks the Court to resolve against the pleading. Section III.A below catalogs the disputes that matter to the claims against the County.

Finally, one admission in the motion should be noticed at the outset. The County states that it "was not a party to those proceedings." Doc. 19 at 2; accord Dkt. 10 at 2. That concession defeats its own *Younger* adequate-forum argument.

## II. LEGAL STANDARDS

On Rule 12(b)(6), the Court accepts all well-pleaded allegations as true and draws all reasonable inferences in Plaintiff's favor. *Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1031 (9th Cir. 2008). The motion tests the sufficiency of the pleading; it does not resolve factual disputes or choose among competing inferences.

The County offers five state-court records under Federal Rule of Evidence 201 and cites *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001), itself. Dkt. 19 at 2 n.1. *Lee* marks the boundary: judicial notice reaches a record's existence and content, not the truth of disputed facts recited within it. *Id.* at 689–90; *Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 999 (9th Cir. 2018). None of the County's five exhibits is a declaration, and none addresses October 7, 2025.

The County's reliance on *Biotics Research Corp. v. Heckler*, 710 F.2d 1375 (9th Cir. 1983), does not change the analysis. Where a jurisdictional challenge is intertwined with the merits, the court leaves material factual disputes to the merits stage. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039–40 (9th Cir. 2004).

## III. ARGUMENT

### A. The Motion Asks the Court to Resolve Contested Facts, Which Is Itself a Ground for Denial.

The County's merits argument depends at nearly every step on a factual conclusion in its favor. At this stage the Court draws the opposite inference. *Manzarek*, 519 F.3d at 1031. The following allegations are taken as true on the County's motion to dismiss under

12(b)(6):

**October 7, 2025 — two different moments.** At the time of the incident, the animal was on a tie-out on the front patio, where Plaintiff had placed him to keep him separated from an intact female Anatolian Shepherd who was in heat. Ex. 14-4 at 4/10; Ex. 14-10 at 3–4. That is not the moment that matters to any claim in this case. Immediately afterward, and before any officer arrived, Plaintiff took the animal off the tether and confined him within a fenced enclosure on the east side of the property. Dkt. 14 at ¶ 31; Ex. 14-12 at 3/26 (Plaintiff "had confined the male dog to the fenced area on the east side").

**The moment of the seizure.** PACC officers reached the property after the Tucson Fire Department had been on scene and the victim had already been transported to the hospital. Ex. 14-12 at 2/26. By then the tether was not in use and the animal was secured behind a fence. The responding fire captain reported that "the dog was confined in a high horse fenced yard on the property," and the officers recorded their own observation of a large Anatolian Shepherd "walking the fence line confined in what appeared to be a horse pasture enclosure on the east side of the property." *Id.*; Dkt. 14 at ¶ 31. No officer entered the enclosure. Dkt. 14 at ¶ 40. No officer sought a warrant. *Id.* ¶ 33. The officers told Plaintiff the animal "will need to go to PACC for a precautionary 10-day quarantine." *Id.* ¶ 34.

**The County's own form.** PACC presented its preprinted "Quarantine Transport Agreement." Dkt. 14 at ¶ 35; Dkt. 14-17. The block reciting PACC's authority "to come upon my property and seize the animal" is struck through with an X, left blank, and signed by no one. *Id.* ¶ 36. The only block Plaintiff executed is a promise to redeem the animal on the release date, which the form fixes in a bolded preprinted field as October 17, 2025. *Id.* ¶¶ 37–38. In the same log entry recording the transport, PACC wrote that the animal was "up to date on vaccines." *Id.* ¶ 42; Dkt. 14-15.

**The refusals.** Plaintiff called PACC to redeem the animal on October 10, 11 and 13, 2025. Dkt. 14 at ¶ 44. He was not released. On the evening of October 10 a PACC officer told her the decision not to release him came from someone "higher up on the food chain."

*Id.* ¶ 45.

**The custody.** The animal has been in the County's continuous physical custody since October 7, 2025. Dkt. 14 at ¶¶ 57, 101. The medical file—shelter-stress entries, trazodone from intake, gabapentin on a standing order months later, and no recorded weight since October 13, 2025—is taken up below, where the County's gabapentin argument is answered.

**The information blackout.** On November 2, 2025 the County recorded a directive that staff "are NOT to reach out" to the owner and that "if the owner comes to PACC for any reason, we are unable to speak with her." Dkt. 14 at ¶ 68; Ex. 14-12 at 7/26. The County adhered to that directive for more than nine months. *Id.* Plaintiff learned of a January 5, 2026 gastric-distension episode requiring injectable sedation only on August 24, 2026, when records were produced in response to her own public-records request. *Id.* ¶¶ 66, 69.

The County's motion implicates the following disputes. The first four, and the medication point, independently preclude dismissal on this record. The County's account of the morning of October 7 is contested, but it is not a question this Court needs to decide in order to deny the motion.

1. **Whether the pre-order impoundment was "clearly justified."** Dkt. 19 at 7–8 argues that the severity of the injury made the October 7 impoundment reasonable. Reasonableness of a seizure is a question of fact. *San Jose Charter of the Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 975 (9th Cir. 2005). On the pleadings, the animal was confined in an enclosure officers did not enter, no warrant was sought, the removal was described by the officers as a "precautionary 10-day quarantine," the seizure-authority block on the County's own form was struck through and unsigned, the officers recorded the same day that the animal was currently vaccinated, and the release date the County printed was October 17. Dkt. 14 at ¶¶ 31–42. Critically, whatever had occurred that morning was over: by the time officers arrived the animal was already secured inside a fenced enclosure, so there was no ongoing hazard for a warrantless removal to abate. Dkt. 14 at ¶ 31; Ex. 14-12 at 2–3/26.

2. **Whether a tie-out was unlawful, and whether it has anything to do with this case**. The county asserts the animal "was on an illegal tie-out." Dkt. 19 at 8. There are three problems with the County's position. First, the tether appears nowhere in the First Amended Complaint. The County draws it instead from Plaintiff's state-court Petition for Special Action, Dkt. 19-3 at 3—a document outside the pleading. Judicial notice of that filing establishes that Plaintiff said it, not that a tether was unlawful; the latter is a legal conclusion the County asserts in a single clause. *Lee*, 250 F.3d at 689–90; *Khoja*, 899 F.3d at 999. Second, the tether had ended before the officers arrived. The seizure occurred when the animal was confined behind a fence, and it is the moment of the seizure that the Fourth Amendment measures. A tether that was no longer in use cannot supply a justification for removing an animal who was already secured. Third, the asserted illegality is contested, and it is contested on the County's own instruments: the Impoundment and Bond Notice PACC served on October 11, 2025 recites "Jurisdiction: Tucson," checks the box for Tucson City Code § 4-10, and leaves the Pima County Code box unchecked. Dkt. 14 at ¶¶ 46–47. No citation was ever issued to Plaintiff under any tethering provision, by the County or by anyone else. Ex. 14-10 at 3.

A fourth problem is the County's reference to the Pima County Code Chapter 6.04 as support for its position. Dkt. 19 at 8. Pima County Code § 6.04.010 provides that Chapter 6.04 "shall not apply to any incorporated city, town or Indian reservation" and "shall apply only within the unincorporated areas of the county." The seizure occurred inside Tucson. Whatever tethering rule the County is invoking from its own Code does not apply at the scene, which is why the October 11 notice invoked Tucson City Code § 4-10 and left the County box blank. Nor does the Tucson Code supply the missing ground. While Section 4-10(b) deems an animal in distress "if it is on a tie-out," the provision speaks in the present tense, and the tether had ended before any officer arrived. In any event, every ground in § 4-10(a)—deemed distress included—reaches only an animal "in plain view, or pursuant to a valid search warrant." The animal was behind a fence the officers did not enter.

3. **Whether the detention after October 17, 2025 was authorized**. The motion

does not address the date. It offers no justification for the custody between the expiration of the quarantine period the County itself set and the entry of the order seven weeks later.

4. **Whether the County's conduct was compelled by the order or chosen by the County.** The fee schedule, the November 2 no-contact directive, the refusal of access for evaluation, and the eight-month non-disclosure of the January 5 episode are County decisions. Whether they were required by the order—which says nothing about any of them—is a factual question, and causation under *Monell* is itself a question of fact. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

5. **The County's account of the morning of October 7**. In its motion, the County quotes hearing testimony that the animal "went from zero to a hundred and mauled this woman," disputes that the incident was provoked, and argues that a female dog in heat was not "under Plaintiff's control." Dkt. 19 at 2, 8 Those assertions are contested. Dkt. 14 at ¶¶ 29–30, 54. They are also irrelevant to whether this motion should be granted. Judicial notice of a transcript does not establish that the statements inside it are true. *Lee*, 250 F.3d at 689–90; *Khoja*, 899 F.3d at 999. There is no contributory-negligence defense to a Fourth Amendment claim. *Baker v. McCollan*, 443 U.S. 137, 146, 99 S. Ct. 2689, 2695, 61 L. Ed. 2d 433 (1979) ("Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law.") And none of those disputes would authorize the detention after the County's own October 17 release date, or the County's later custodial choices. The Court need not resolve the County's account of that morning to deny this motion, and it cannot resolve it now.

6. **Whether Plaintiff requested the medication she now describes as harm**. Dkt. 19 at 8. See Section III.F below. The County's own chart refutes the inference.

The County was entitled to test the sufficiency of the pleading. It was not entitled to ask the Court to find facts. Any one of the custody, form, authorization, and medication disputes above requires that the motion be denied.

## B. Rooker-Feldman Does Not Deprive This Court of Jurisdiction.

### *1. Causation is the element that fails.*

Rooker-Feldman occupies "narrow ground." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005). The doctrine is confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil*, 544 U.S. at 284; *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003). *T.M. v. University of Maryland Medical System Corp.*, 146 S. Ct. 1739 (2026), held that the doctrine may apply while state appellate review remains available. If the source of injury is the defendant's conduct, the claim is *independent.* An independent claim may "deny a legal conclusion that a state court has reached." *Exxon Mobil, 544 U.S. at 293* ("If a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party ..., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" (citation omitted)).

An independent claim is not converted into an appeal because "the same or a related question" was aired in state court. *Skinner v. Switzer*, 562 U.S. 521, 532 (2011). The source-of-injury question under *Exxon Mobil* is whether a state-court judgment caused the injury—not whether overlapping facts were mentioned in a special-action brief. No state-court judgment caused the October 7 taking, and none caused the County custodial practices the destruction orders do not address.

The County quotes the *Rooker-Feldman* formulation but never identifies the judgment that caused the October 7 taking. See Dkt. 19 at 4. Nor could it have. PACC took possession seven weeks before the first order issued. Taking a dog is a seizure of property. *Brewster*, 859 F.3d at 1196. An injury complete before a judgment exists is not caused by that judgment. That is a failure of an element, not an exception.

### *2. The claims against the County are independent of the destruction orders.*

That a state court reached a legal conclusion in a proceeding to which Plaintiff was

a party does not convert her federal claim into an appeal from that proceeding. *Exxon Mobil*, 544 U.S. at 293. Plaintiff does not challenge the destruction orders in this Court, and she does not contend that the County is free to ignore them. The County has said that it is complying with those orders. Dkt. 19 at 6. Plaintiff takes that representation as given. The County remains bound to the acts the orders command—forfeiture and humane destruction, stayed pending appeal. What the County may not do is treat its absence from the City Court caption as extra-order discretion, or as a jurisdictional off-switch. *Lance v. Dennis*, 546 U.S. 459, 466 (2006), addresses federal plaintiffs who were not parties to the state case. Plaintiff was a party. The County's concession therefore does not "end" *Rooker-Feldman*. It confirms the character of the claims actually pleaded against the County: duties under federal law that Chapter 4 does not displace, arising from the County's own seizure, its pre-order detention, and custodial practices the destruction orders do not specify. Dkt. 19 at 2.

***3. The "internally irreconcilable" argument mistakes the claim.***

The County argues that Plaintiff cannot disclaim review of the order while asking the County to release the animal. Dkt. 19 at 4–5. Plaintiff does not ask this Court to direct the County to disobey either destruction order (Dkts. 14-5 & 14-6), to declare the County unbound by those orders, or to treat nonparty status as a source of authority the orders do not confer. She asks the Court to adjudicate County conduct the order does not address: the October 7 taking; the detention after the October 17 release date the County's officers printed; the boarding charges; the no-contact directive; the refusal of access; and the non-disclosure of a medical emergency. Damages for that conduct do not require a ruling on the order. Injunctive relief against the County is limited to conditions of custody the order does not specify and to any increment of detention the order does not command. Compliance with the acts the orders command is not a defense to acts they do not command. None of that relief would be cured by affirming the order, and none of it requires this Court to reject it.

***4. Whether a nearly year-long detention remains reasonable today is a question no Arizona court has been asked to decide.***

The County attacks Plaintiff's assertion "that a County custodian may not indefinitely detain living property without a present, reasonable justification of its own." Dkt. 19 at 4 (quoting Dkt. 14 at ¶102). That is not an attack on the order. It is the rule of *Brewster v. Beck*, 859 F.3d 1194, 1196–97 (9th Cir. 2017): a seizure is justified "only to the extent that the government's justification holds force. Thereafter, the government must cease the seizure or secure a new justification." Answering whether the justification still holds in the twelfth month rejects no judgment, because no court has been asked the question.

***5.* Kollenburn *is distinguishable.***

*Kollenburn v. County of Clackamas*, 2021 WL 719895 (D. Or. Feb. 24, 2021), is unpublished and out of district. The plaintiff there asked the federal court to "nullify and deem void *ab initio*" a dangerous-dog designation and destruction order. Plaintiff's pre-order claims and continuing-seizure claim do not.

**C. *Younger* Abstention Does Not Apply.**

The County invokes two distinct *Younger* categories—proceedings "akin to criminal prosecutions" and proceedings implicating "a state's interest in enforcing the orders and judgments of its courts." Dkt. 19 at 5. Younger reaches only three "exceptional" categories of state proceedings, *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013). Even within a qualifying category, *Younger* abstention requires an adequate opportunity to raise the federal claims and federal relief that would interfere with the state proceeding. *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432 (1982); see *Sprint*, 571 U.S. at 81 (the *Middlesex* conditions are "additional factors," not the test). Here, the Court need not determine whether the state-court proceeding falls within any of the Sprint categories. The state forum was not adequate for the claims Plaintiff brings against the County, and the relief sought against the County does not interfere with the state court's ability to enforce the orders it entered.

***1. The state forum is not adequate, as the County itself establishes.***

*Younger* requires an adequate opportunity to raise the federal claims. *ReadyLink Healthcare, Inc. v. State Compensation Insurance Fund, 754 F.3d 754, 759 (9th Cir. 2014).* The County states that it "was not a party to those proceedings." Dkt. 19 at 2. The special action at C20258606 was an appellate special action under A.R.S. § 12-124 and Rule 4 of the Arizona Rules of Procedure for Special Actions. That proceeding reviews a municipal-court order on specified grounds. It is not an original civil action in a court of general jurisdiction, and it was not a forum in which the § 1983 claims against these defendants—including damages and *Monell* liability against the County—could be joined or tried. The County's absence from that caption does not mean the resulting orders do not bind the County as custodian. It means those proceedings were not a place where claims against the County could be raised. The pending appeal in *Evancho v. Tucson City Court*, No. 2 CA-CV 2026-0137 (Ariz. Ct. App.), does not fill the gap. That appeal reviews the same municipal destruction order. It is not a damages action against the County, and the County is not named.

***2.* Nothing sought here touches a state court's ability to enforce its own orders.**

The County's reliance on *Pennzoil Co. v. Texaco Inc*., 481 U.S. 1 (1987) is misguided. Dkt. 19 at 5. That case concerned federal interference with the machinery by which state courts enforce their judgments. The First Amended Complaint seeks no injunction against any Arizona court, any writ, any bond requirement, any contempt proceeding, or any execution mechanism. Dkt. 14 at ¶¶ 12, 180. It seeks damages and relief against the County's own custodial conduct.

***3. The City Court proceeding is not the* Sprint *category the motion describes.***

*Sprint*, 571 U.S. at 79–82, confines category two to proceedings "initiated to sanction the federal plaintiff . . . for some wrongful act," typically following an investigation "culminating in the filing of a formal complaint or charges." *Herrera v. City of Palmdale*, 918 F.3d 1037, 1044 (9th Cir. 2019). Tucson City Code § 4-7(3) authorizes the vicious- or destructive-animal declaration and its attendant penalties only "upon a finding of guilt."

Plaintiff was never charged, never convicted, and no fine or penalty was requested or imposed against her. The Code says as much: section 4-11(g) provides that "[t]he civil procedures and remedies provided for in this chapter are remedial and not punitive." The County's only support is a sentence from Plaintiff's state-court brief describing the scheme's effect. Doc. 19 at 5 (quoting Ex. 5 at 17). A description of effect is not how the proceeding was initiated. Even if the Court treated the Order to Show Cause as category two, the adequacy and interference defects above independently defeat abstention.

***4. If the Court abstains at all, damages are stayed, not dismissed.***

If abstention applies at all, the damages claims are stayed, not dismissed. *Gilbertson v. Albright*, 381 F.3d 965, 968 (9th Cir. 2004) (en banc). The County concedes this point. Dkt. 19 at 5.

**D. The Court Order Does Not Answer the Claims Actually Pleaded.**

The county cites *Stein v. Ryan*, 662 F.3d 1114, 1119 (9th Cir. 2011), and *Valdez v. City & County of Denver*, 878 F.2d 1285, 1289 (10th Cir. 1989) for a proposition Plaintiff does not contest: a custodian need not independently review a judicial order before giving it effect. *Stein* holds that a corrections department executing a prison sentence has no duty to sit as a court of review over the judgment. It does not hold that every condition of confinement is immunized because a judgment put the plaintiff in the building. A nine-month communications ban and the eight-month concealment of a medical emergency are conditions-of-custody problems; the destruction order does not specify them. *Valdez* is Tenth Circuit quasi-judicial immunity for individuals executing a writ. It is not Ninth Circuit law, and it is not a *Monell* defense to a municipal practice the writ does not command.

*Stein* and *Valdez* do not immunize the County from the conduct charged on Plaintiff's claims for two reasons:

***1.*** **Forty-eight days of custody preceded any order.**

PACC took possession on October 7, 2025. Dkt. 19 at 2. The order issued November 24, 2025. *Id.* Neither *Stein* nor *Valdez* concerns the seizure or detention of property before

any order exists; both concern compliance with an existing mandate. The County devotes a single paragraph to this period, Dkt. 19 at 7–8, and that paragraph argues the merits rather than the pleading—resting on the severity of the injury and on a tether that was no longer in use when its officers arrived. Thirty-eight of those days fell after the County's own release date of October 17, 2025.

***2. The orders say nothing about how the animal is held.***

The destruction orders (Dkts. 14-5 & 14-6) order forfeiture and humane destruction, and stay destruction pending appeal. They do not set the terms or duration of interim custody. They do not set or authorize boarding and kennel charges. They do not direct that the owner be refused contact or information. They do not forbid an evaluation of the animal. They do not permit the concealment of a medical emergency for eight months. Those were County choices, made under County practices, and the order is not a defense to them. Counts I.B, II and III are directed at precisely that residue, and the motion does not engage it.

**E. *Monell* Liability is Adequately Pleaded.**

The County argues that without an underlying violation *Monell* cannot attach. Doc. 19 at 7 (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)). That is correct as a statement of law but unavailing here, because Counts I.B and II plead underlying violations the order does not answer.

As to policy, the First Amended Complaint identifies County practices, not a rogue employee: the County's own Quarantine Transport Agreement, with the seizure-authority block struck and a printed October 17 release date the County then disregarded; continuous physical custody after that date and before any order; boarding and kennel charges assessed on a County schedule; and the November 2, 2025 operating instruction that staff were not to communicate with the owner, which the County followed for more than nine months, including while Plaintiff was unrepresented. Dkt. 14 at ¶¶ 35–38, 175–177. Those are official forms and operating instructions. Whether they were a moving force is a factual question for a later stage. *See Brown*, 520 U.S. at 404. The County's statement that "it is Pima County's policy to comply with court orders," Dkt. 19 at 6, is not itself the

unconstitutional policy—complying with a judicial order is not a constitutional violation—but it does defeat any suggestion that the custodial course was unauthorized freelance. The policy that matters is the one the order does not specify.

**F. The Motion's Injunction Section Is Not a Rule 12 Ground, and Its Factual Premise Is Wrong**

Part 3 of the County's motion argues the merits of Plaintiff's pending application for injunctive relief, the balance of harms, and the risk of conflicting orders. Dkt. 19 at 8. None of that is a ground for dismissal under Rule 12(b)(1) or 12(b)(6). The County has already opposed that application by joinder, Dkt. 11, and it has still not submitted a declaration or any evidence controverting the October 7 facts.

To the extent the Court considers the argument, its central factual premise fails on the County's own records. The County says Plaintiff's behaviorist requested gabapentin, so Plaintiff cannot point to medication as harm. Dkt. 19 at 8. The chart shows otherwise. Trazodone was started on the day of intake, October 7, 2025, before any request by anyone. The request the County points to was made on October 13, 2025, in the context of a ten-day quarantine and an expected return home. The trazodone dose was escalated on November 24, 2025 "due to behavior in kennel" and sustained through at least August 18, 2026. Gabapentin was begun on a standing order on April 1, 2026, when the chart records that the hold was extended "due to becoming more stressed/anxious," and was reordered in May and again in July 2026 "for shelter stress (very stressed in kennel)." No weight has been recorded in the file since October 13, 2025, although both drugs are dosed by weight. FAC ¶¶ 62–65; Ex. 14-16.

A single request in October 2025 is not consent to nearly a year of two psychoactive medications at escalating doses without a current weight being taken. And the irreparable harm alleged is the threatened destruction of a living animal and the continuing deprivation of Plaintiff's property, not the medication standing alone.

**G. The Remaining Grounds Require Little Discussion.**

***1. Rule 8(a)(2).***

The County invokes Rule 8(a)(2) in the opening sentence of its motion and never argues it anywhere in the ten pages that follow. An argument raised in a caption and never developed is waived. In any event, page length is not a Rule 8 violation. *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131–32 (9th Cir. 2008) (vacating Rule 8 dismissal of an eighty-one-page complaint).

***2. The County's fee demand.***

A prevailing § 1983 defendant recovers fees under 42 U.S.C. § 1988 only where the action is "frivolous, unreasonable, or without foundation." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978); *Hughes v. Rowe*, 449 U.S. 5, 14 (1980) (per curiam). Section 1927 reaches only an attorney who multiplies proceedings "unreasonably and vexatiously," requires a showing of subjective bad faith in this Circuit, *Fink v. Gomez*, 239 F.3d 989, 993–94 (9th Cir. 2001), and does not reach the filing of an initial or amended pleading, *In re Keegan Management Co. Securities Litigation*, 78 F.3d 431, 435 (9th Cir. 1996). The County offers no argument in support of either request. Both should be denied.

***3. The Defendants still to be served.***

The County notes in a footnote that Jan Lesher, Steve Kozachik and the County Does have not been served. Dkt. 19 at 9 n.2. The Rule 4(m) period has not expired. Official-capacity claims against Lesher and Kozachik rise and fall with the claims against the County in any event. The footnote seeks no relief and is not ground for dismissal.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Pima County's Motion to Dismiss in its entirety, deny the County's request that Plaintiff's application for injunctive relief be denied on this record, and deny its requests for fees under 42 U.S.C. § 1988 and 28 U.S.C. § 1927.

DATED this 28th day of September 2026.

*/s/ Christina Ponig*
Christina E. Ponig *(Admitted Pro Hac Vice)*
FLETCHER HELD, PLLC
William B. Thomas
MCDOWELL HETHERINGTON, LLP
*Attorneys for Jennifer Evancho*

**CERTIFICATE OF SERVICE**

I certify that, on September 28, 2026, I served counsel for Defendants with a copy of the foregoing document through the Court's electronic filing system.

*/s/ Christina Ponig*
Christina E. Ponig *(Admitted Pro Hac Vice)*