Christina E. Ponig (*Admitted Pro Hac Vice*)
FLETCHER HELD, PLLC
808 Travis Street, Suite 1553
Houston, Texas 77002
713-255-0422 (phone) / 713-255-0419 (fax)
cmaccio@fletcherheld.com
-and-
William B. Thomas (State Bar No. 039456)
McDOWELL HETHERINGTON LLP
1001 Fannin Street, Suite 2400
Houston, TX 77002
713-337-5580 (phone) / 713-337-8850 (fax)
william.thomas@mhllp.com

Attorneys for Plaintiff Jennifer Evancho

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
TUCSON DIVISION

| | |
|---|---|
| Jennifer Evancho,<br><br>Plaintiff,<br>vs.<br><br>City of Tucson, a municipal corporation; Pima County, a political subdivision of the State of Arizona; Jan Lesher, in her official capacity as Pima County Administrator; Steve Kozachik, in his official capacity as Director of Pima Animal Care Center; Officer Mills, Badge No. 3424, in her individual capacity; Officer Estrella, Badge No. 3298, in his individual capacity; Officer J. Jacobus, Badge No. 3369, in his individual capacity; Does 1 through 10, in their individual and official capacities as Animal Control Officers, Supervisors, and employees of the City of Tucson and/or Pima County responsible for the seizure, detention, and threatened destruction of Sergeant Snuggles,<br><br>Defendants. | No. 4:26-cv-00363-RM<br><br>PLAINTIFF'S RESPONSE IN OPPOSITION TO CITY OF TUCSON'S MOTION TO DISMISS (DKT. 18)<br><br>ORAL ARGUMENT REQUESTED |

Plaintiff Jennifer Evancho ("Plaintiff") submits this response in opposition to the Motion to Dismiss of the City of Tucson ("the City") (Dkt. 18) as follows:

## I. INTRODUCTION

The City of Tucson's motion asks this Court for less than its rhetoric suggests.

On jurisdiction, the City's *Rooker-Feldman* argument ends by asking the Court to dismiss Plaintiff's "claims for injunctive and declaratory relief against COT, including Counts IV through VI to the extent they seek that relief," and then turns to Rule 12(b)(6) because, in its own words, "Plaintiff's remaining claims fail to state a claim for the reasons set out *infra*…." Dkt. 18 at 9. The City therefore does not contend that this Court lacks jurisdiction over Plaintiff's damages claims. That framing is correct as far as it goes: damages for the October 7–November 24 seizure do not require this Court to review or reject any Arizona order, and they dispose of the suggestion that the First Amended Complaint is a "de facto appeal" of anything. The motion's own 12(b)(1) request cannot be enlarged into a jurisdictional bar on claims the motion itself sent to Rule 12(b)(6).

On the merits, the motion rests on a single move repeated in every section: it treats every act by every Defendant after October 7, 2025 as though it were the magistrate's judgment, and then argues that the judgment is unreviewable. But the conduct this case is about happened first. Officers took Sergeant Snuggles from a fenced enclosure they did not enter, without a warrant, on a form whose seizure-authority block was struck through and left unsigned. Dkt. 14 ¶¶ 31, 33, 35–36, 40. They printed a release date of October 17, 2025 and obtained Plaintiff's signature only on a promise to redeem him that day. *Id.* ¶¶ 37–38. Plaintiff called to redeem him on October 10, 11 and 13. *Id.* ¶ 44. He was not released. On October 11, the City's own Impoundment and Bond Notice invoked Tucson City Code § 4-10 and left every one of the four statutory grounds for impoundment unchecked. *Id.* ¶¶ 46–48. No City Court order existed during any of this. The first order came seven weeks later.

The motion never addresses October 17. It never explains what authorized the detention on October 18. And it reaches its conclusions only by resolving disputed facts and drawing inferences in its own favor—on consent, on probable cause, on exigency, on whose custody the animal was in, on whether the City's forms drove the conduct, and on whether Plaintiff ever received the individualized evaluation Chapter 4 requires. Rule 12 does not permit dismissal on those inferences.

The motion should be denied. In the alternative, if the Court concludes that any

specific request for relief would operate on a state-court order as an order, the remedy is to narrow that request, not to dismiss claims the City has not even challenged on jurisdictional grounds.

This response addresses only the City's motion to dismiss at Docket 18. It does not submit, and should not be read as submitting, the claims against Officers Mills, Estrella and Jacobus, Pima County, Lesher or Kozachik.

## II. DEFENDANT'S FAILURE TO CONSULT

The City of Tucson's motion to dismiss states that the City of Tucson conferred with Plaintiff on the nature of its motion. Dkt. 18-2. Plaintiff disagrees with that characterization of the parties' exchanges. On August 31, 2026, the City of Tucson communicated only that it had failed to confer on its original motion to dismiss but asked if Plaintiff intended to dismiss its claims and, in another communication, asked Plaintiff to file a new application for injunctive relief based on the amended complaint, which Plaintiff declined to do. Plaintiff does not interpret either outreach as consultation for purposes of LR Civ. 12.1(c). A copy of the correspondence is attached. See Ex. 1.

## III. LEGAL STANDARDS

***Rule 12(b)(6).*** The Court accepts well-pleaded allegations as true and draws reasonable inferences for Plaintiff. *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008). The motion tests the pleading; it does not resolve contested facts.

***Judicial notice***. A court may notice a record's existence and content, not a disputed fact recited in it. *Lee v. City of Los Angeles,* 250 F.3d 668, 689–90 (9th Cir. 2001); *Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 999 (9th Cir. 2018). The City's exhibits establish that the Superior Court ruled and what it said. They establish nothing about October 7, 2025.

***Rule 12(b)(1).*** Where jurisdiction is intertwined with the merits, factual disputes wait for the merits. *Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039–40 (9th Cir. 2004).

***Exhibits.*** *Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1295–96 (9th Cir. 1998), controls an exhibit that contradicts an allegation. It does not let the City characterize an exhibit and have the Court adopt the characterization.

***Facial challenges***. *United States v. Salerno*, 481 U.S. 739, 745 (1987), states the "no set of circumstances" formulation. *City of Los Angeles v. Patel*, 576 U.S. 409, 418 (2015), clarifies that a facial challenge considers applications in the mine run of cases governed by the provision, not every hypothetical.

## IV. ARGUMENT

### A. The Motion Turns on Contested Facts and Adverse Inferences, Which Is Itself a Ground for Denial.

Before reaching each count, one observation applies across the motion. Almost every argument the City makes requires the Court to resolve a factual question against Plaintiff or to draw an inference in the City's favor. At this stage, the Court does the opposite. *Manzarek*, 519 F.3d at 1031. These disputes require denial of the counts they attack.

1. **Consent.** Voluntariness and scope are questions of fact. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973); *Florida v. Jimeno*, 500 U.S. 248, 251 (1991). Plaintiff signed only a promise to redeem on October 17, on a form whose seizure-authority block is unsigned, after officers described a "precautionary 10-day quarantine." Dkt. 14 ¶¶ 34, 36–39.

2. **Probable cause under § 4-10(a)(3).** The City's officers checked none of the four statutory grounds on the instrument served four days later. Dkt. 14 ¶ 48. Whether probable cause existed, and as to which ground, is a fact question.

3. **Plain view or warrant**. Section 4-10(a) requires one or the other, on probable cause of specific defined conditions. The City quotes that predicate and then ignores it. Dkt. 18 at 5, 9–10. The animal was confined in an enclosure the officers did not enter. Dkt. 14 ¶¶ 31, 40.

4**. Exigency or caretaking**. *Cady* and *McArthur*, cited by the City, are fact-specific. Dkt. 18 at 10. Whether any immediate need existed as to a confined, owner-present,

vaccinated animal is a question of fact.

5. **Duration**. Reasonableness of a seizure's duration is a question of fact. *San Jose Charter of the Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 975 (9th Cir. 2005). The City filed its Petition to Show Cause on November 3—seventeen days after the October 17 date on its own form. Dkt. 18 at 5; Dkt. 14 ¶¶ 37–38, 44.

6. **Custody.** That "custody … was PACC custody, not COT's," Dkt. 18 at 10, is contested against a pleading of joint causation. Dkt. 14 ¶¶ 80–83, 105.

7. **Moving force.** Whether the City's forms and Code were the moving force is a fact question. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

8. **Evaluation.** Plaintiff alleges that no Defendant has ever evaluated the animal. Dkt. 14 ¶¶ 72, 74. The City's Exhibit 2 records that she and her expert were denied access. Dkt. 18-3 at 4–5. That dispute is for Count IV, not a pleading-stage finding.

9. **The demand letter.** The incorporated letters mention seizure, detention, and killing. Dkt. 14-7; Dkt. 14-8. Section 1983 requires no pre-suit notice. *Felder v. Casey,* 487 U.S. 131, 140–41 (1988).

10. **The bite.** The City says it occurred "without warning." Dkt. 18 at 3. The pleading and the victim's letter allege otherwise. Dkt. 14 ¶¶ 29–30, 54; Ex. I. The Court need not try the bite to deny this motion.

Any one of the disputes material to a count requires denial of that count.

## B. Rooker-Feldman Does Not Deprive This Court of Jurisdiction.

### *1. The doctrine's elements survive T.M.*

*Rooker-Feldman* is "confined to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). *T.M. v. University of Maryland Medical System Corp.*, 146 S. Ct. 1739 (2026), held only that the doctrine may apply while state appellate review remains available. It did not disturb the causation element or the independent-claim principle; it reaffirmed the *Exxon Mobil* formulation and left the

doctrine narrowly confined.

The City quotes that formulation and never engages it. Dkt. 18 at 6. No state-court judgment caused the October 7 seizure: the first order issued November 24. An injury complete before a judgment exists is not "caused by" that judgment. *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003). *T.M.* does not touch that element.

***2. Counts I.A and II arise from Defendants' own pre-judgment conduct.***

The wrongs that Plaintiff have pleaded are the warrantless taking, the refusals of redemption on October 10, 11 and 13, the detention after the October 17 release date Defendants themselves printed, and a notice stating no statutory ground. Dkt. 14 at ¶¶ 94–100, 109–117. Each can be adjudicated without deciding whether the magistrate ruled correctly. Indeed, the first amended complaint states four times that Plaintiff does not ask this Court to review, vacate, set aside, or declare invalid any Arizona order. Dkt. 14 at ¶¶ 12, 104, 116, 180.

***3. The facial counts attack an enactment, not an adjudication.***

Under *Rooker-Feldman*, a challenge to "the statute or rule governing the decision" is not barred, even where the plaintiff lost under that rule in state court. *Skinner v. Switzer*, 562 U.S. 521, 532 (2011). Counts IV through VI attack provisions that the Mayor and City Council enacted. Relief would constrain the City's future enforcement; it would not disturb any order. *See also Kougasian v. TMSL, Inc*., 359 F.3d 1136, 1140–41 (9th Cir. 2004) (a claim resting on an adverse party's own wrongful act is independent).

***4. The Superior Court's ruling is not the federal adjudication the City treats it as.***

The City's Exhibit 2 states its own standard: "this Court's standard of review is an abuse of discretion standard," and at oral argument "counsel concurred" in it. Dkt. 18-3 at 2. The analysis that follows asks only whether the magistrate's findings were adequate under *Ruben M*. and *Logan B. Id*. at 4. The ruling adjudicated no Fourth Amendment claim, no *Monell* question, no facial challenge to Chapter 4, and nothing occurring in 2026. "this Court cannot find the trial court abused its discretion" is not a merits judgment on any claim pleaded here.

***5. The relief sought does not operate on any order.***

Plaintiff does not ask this Court to direct any Defendant to disobey a Tucson City Court order, to decline to enforce such an order, or to treat noncompliance as federal relief. Dkt. 14 at ¶¶ 12, 180. Return and related injunctive relief are limited to conditions of custody the order does not specify and to any increment of detention the order does not command. *See* Dkt. 14 at ¶¶ 81–83, 105; Ex. 14-11. Withdrawal of the petition or a stipulation to release would be the City's own voluntary act; they are not a request that this Court operate upon the order as an order. The welfare, proof-of-life, records-preservation and fee relief operate on Defendants' custodial conduct. The facial relief operates prospectively.

***6. If the Court wants a boundary, it should draw it narrowly.***

Plaintiff does not seek an order declaring any Arizona order void. If the Court believes any specific prayer strays across that line, the appropriate course under *Exxon Mobil* is to narrow that prayer and retain the rest—not to dismiss claims as to which the City itself has told the Court that Rule 12(b)(6) supplies the governing standard.

**C. Count I.A States a Fourth Amendment Claim Against the City.**

***1. Section 4-10(a) requires plain view or a warrant, and the motion drops that requirement.***

The City's own background section states the rule: § 4-10(a) authorizes impoundment "in plain view or by warrant, on probable cause." Dkt. 18 at 5. Its argument then addresses probable cause alone. Dkt. 18 at 9–10. The first amended complaint alleges the animal was confined inside a fenced enclosure that the officers did not enter, and that no warrant was sought or obtained. Dkt. 14 at ¶¶ 31, 33, 40. On those allegations the ordinance's own predicate is unmet, and the City offers no answer.

Nor is the probable-cause showing established on the pleadings. The provision requires probable cause that an animal is vicious or destructive and may be a danger to the safety of any person or other animal. The City's officers served an instrument four days later

invoking § 4-10 and checking none of the four grounds. Dkt. 14 at ¶¶ 46–48. Whether probable cause existed—and as to which ground—is a fact question. *See supra* Part IV.A.2–3.

***2. The vaccination record bears on reasonableness, not on a competing statutory mandate.***

Plaintiff does not contend that A.R.S. § 11-1014(A) required home quarantine. The statute provides that a properly vaccinated dog that bites "may be confined and quarantined at the home of the owner or wherever the dog is harbored and maintained with the consent of and in a manner prescribed by the county enforcement agent." The point is narrower and it is a reasonableness point: Defendants recorded on the same day that the animal was current on his vaccinations, Dkt. 14 at ¶ 42; thus, the ten-day pound confinement that § 11-1014(A) makes mandatory for unvaccinated biters therefore had no application, and Defendants nonetheless removed the animal and kept him. Whether that was reasonable under the Fourth Amendment is a question of fact. The City's reframing of this as "[a] disagreement about which of two lawful confinement options officers selected," Dkt. 18 at 9, assumes the reasonableness that Plaintiff disputes.

***3. Consent does not resolve the claim, and certainly not on the pleadings.***

The City's consent argument rests on a single allegation—that Plaintiff walked the animal to the transport vehicle. Dkt. 14 at ¶ 40; Dkt. 18 at 10. It ignores the instrument. The block conferring authority "to come upon my property and seize the animal" is struck through and signed by no one. Dkt. 14 at ¶ 36. The only executed block is a promise to redeem the animal on October 17. *Id.* ¶¶ 37–38. And the officers' own report records what they told her: the animal "will need to go to PACC for a precautionary 10-day quarantine." *Id.* ¶ 34.

Voluntariness and scope are both questions of fact. *Schneckloth*, 412 U.S. at 227; *Jimeno*, 500 U.S. at 251. A consent given in acquiescence to a claim of lawful authority is no consent at all. *Bumper v. North Carolina*, 391 U.S. 543, 548–49 (1968). And whatever its scope on October 7, consent cannot extend past the date the City printed on its own form.

A seizure is justified “only to the extent that the government's justification holds force. Thereafter, the government must cease the seizure or secure a new justification.” *Brewster v. Beck*, 859 F.3d 1194, 1196–97 (9th Cir. 2017); *accord United States v. Place*, 462 U.S. 696, 709 (1983). The City has never identified the justification that operated on October 18. Indeed, it did not serve the Order to Show Cause until November 3, 2025. Dkt. 14-4.

***4. Community caretaking does not support dismissal.***

The City offers *Cady* and *McArthur* under a “*Cf.*” signal (Dkt. 18 at 10), which is a fair signal for what they are: authorities that do not decide this case. Both turn on their facts, and neither addresses an animal already confined by its owner, walked out on a leash, and currently vaccinated. Neither explains the detention after October 17, the notice stating no ground, or the City’s later decision to convert a quarantine into a destruction proceeding.

***5. “PACC custody, not COT's” is the deprivation, not a defense.***

The City says custody during the interval “was PACC custody, not COT's.” Dkt. 18 at 10. The County has separately taken the position that it holds the animal pursuant to a court order the City procured. The City captioned its own notice “Jurisdiction: Tucson,” set a City of Tucson bond, filed the Petition, and appeared as the State. Dkt. 14 at ¶¶ 46–47, 49. *Monell* does not require that the City own the kennel; it requires that City policy be a moving force. Each Defendant retains the independent ability to end the deprivation and, each has declined. *See id.* ¶¶ 81, 83, 105.

***6. Monell** is adequately pleaded, and the City answers a theory the first amended complaint does not plead.*

Chapter 4 is an ordinance “officially adopted and promulgated” by the Mayor and Council and is municipal policy; no pattern of prior incidents is required where the policy is the enactment itself. *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 690 (1978). The City’s October 7 and October 11 instruments are its own official forms, supplying no warrant, no checked ground, and a release date its officers disregarded. Dkt. 14 at ¶ 173. And Plaintiff’s first amended complaint expressly disclaims the standalone ratification theory the motion spends a paragraph refuting. Dkt. 14 at ¶ 174.

*7. The demand-letter argument fails on the document and on the law.*

The City asserts the letter "never mentions a warrant, a seizure, the Fourth Amendment." Dkt. 18 at 3. The incorporated letters say otherwise. Dkts. 14-7 & 14-8. More fundamentally, § 1983 imposes no pre-suit notice requirement. *Felder*, 487 U.S. at 140–41. A plaintiff is not confined on the pleadings to the theories her demand letter happened to emphasize.

**D. Count II States a Procedural Due Process Claim Against the City.**

*1. The disclaimer is a jurisdictional boundary, not a concession.*

The City reads Paragraph 109 of the first amended complaint—which states that Count II "does not challenge the sufficiency of the November 24, 2025 hearing as a judicial proceeding"—as leaving nothing behind. Dkt. 18 at 11. It is the opposite. That sentence is how the pleading keeps this claim independent of any state-court judgment. What remains is the process the City itself designed, provided and withheld: a notice that stated no statutory ground, Dkt. 14 at ¶¶ 47–48; a ten-day quarantine form that expired by its own terms, *id.* ¶¶ 37–39; the refusal of redemption on October 10, 11 and 13, *id.* ¶ 44; and the delay from the City's own October 17 release date to a petition filed November 3.

*2.* **Barry v. Barchi** *is a promptness case, and promptness is what is missing.*

The City cites *Barry v. Barchi*, 443 U.S. 55, 64–66 (1979), for the proposition that a prompt post-deprivation hearing cures a brief pre-hearing detention. Dkt. 18 at 11. *Barchi* found a due process violation precisely because the scheme did not assure a prompt post-suspension determination. Here, Snuggles was detained on October 7, 2025, and the City of Tucson did not serve its Order to Show Cause until November 3, 2025, for a hearing occurring on November 24, 2025. And the deprivation here is not brief: the animal has been held continuously since October 7, 2025, and the November 24 hearing did not end it. Dkt. 14 at ¶ 57. A case about a fifteen-day license suspension does not authorize a multi-month seizure of a living animal on a form that disclaims seizure authority.

*3.* **Mathews** *weighs the City's own instruments.*

Under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), the private interest is a living companion animal. The risk of erroneous deprivation under the procedures actually used is

substantial: an impoundment notice with no ground identified, no evaluation of the kind § 4-13(c)(2) makes mandatory before a muzzle order, and no consideration of the vaccination status Defendants recorded the same day. The government's burden in supplying those safeguards is minimal; the City's Code own Chapter 4 already requires one of them before a lesser deprivation. Each element of that balance is factual. *See Zinermon v. Burch*, 494 U.S. 113, 132 (1990) (where deprivation flows from established procedures and predeprivation process is feasible, it must be supplied).

***4.* The County's conduct is pleaded as the County's.**

The November 2 no-contact directive and the January 5 medical non-disclosure are pleaded against the County, not the City. Dkt. 14 ¶¶ 114–115. They show only that nothing after November 24 cured the City's own process.

**E. Count III, Pleaded in the Alternative, Should Be Narrowed Rather Than Dismissed.**

Count III is pleaded expressly in the alternative. Dkt. 14 at ¶ 118. Where the Fourth Amendment supplies the rule of decision, Plaintiff relies on Count I and does not ask the Court to duplicate it. *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998). Plaintiff does not contend that the City set the supersedeas bond or collected the daily boarding charges. What Count III reaches as to the City is its own enactment and its own continuing choice.

First, § 4-12(d) prices the life-preserving disposition and leaves the lethal one free. The provision conditions transfer of a forfeited animal on the City having "previously approved the appropriation of funds for that specific purpose," failing which the enforcement agent bears the cost. Destruction carries no funding condition, no verification requirement and no documentation requirement. Dkt. 14 at ¶ 163. That is an ordinance, adopted by the Mayor and City Council, and it is municipal policy without more. *Monell*, 436 U.S. at 690.

Second, the City's own enactment and its own choice to keep the petition on file are what keep City-side consequences of the hold in place. Plaintiff does not ask this Court to

order the City to disobey or decline to enforce the City Court order. The claim reaches the funding structure of § 4-12(d) and the City's continuing assessment of a lethal, unfunded option over a life-preserving one. Fees accrue daily and Plaintiff has no means of stopping them except by abandoning the animal or paying. Dkt. 14 at ¶ 121.

Third, § 4-11(l) does not answer the claim. The City argues that any fees are excused if Plaintiff ultimately prevails. Doc. 18 at 12. A contingent refund at the end of a multi-year appellate process is not process; it does not reduce the risk of erroneous deprivation while the deprivation is occurring, and it does not address the conditioning of a living animal's survival on continuing payment.

Fourth, if the Court disagrees, the remedy is narrow. Count III is an alternative theory. It can be dismissed as to the City without disturbing Counts I, II, or IV through VI.

## F. Counts IV Through VI State Facial Claims and Plaintiff Has Standing.

### *1. Count IV: the City's answer depends on a fact it cannot establish here.*

The City argues that § 4-13(c)(2)'s evaluation requirement belongs only to an administrative track, and that § 4-11 supplies more process, not less. Dkt. 18 at 13–14. The City is incorrect.

First, the text answers the City's limitation. Section 4-13(c)(2) requires an evaluation "[w]henever the city enforcement agent has reason to believe an animal is dangerous," with no qualifier. Section 4-13(a) defines a dangerous animal to include one declared vicious or destructive under § 4-7 or § 4-11. The City's reading imports a cross-reference the text does not contain.

Second, the claim is not that Plaintiff received no hearing. It is that the same Chapter requires an individualized assessment of the animal's present propensity before the City may compel a muzzle, and requires none before the City may obtain an order that the animal be killed. A contested hearing about a single past act is not that assessment. *Mathews* asks about the probable value of the specific additional safeguard, 424 U.S. at 335, and the City cannot argue the safeguard is unavailable, unworkable, or valueless when its own ordinance mandates it before a lesser deprivation.

Third, the City says Plaintiff "received the very individualized hearing and expert evaluation" the claim describes. Dkt. 18 at 4, 14. The pleading alleges none occurred. Dkt. 14 ¶¶ 72, 74. The City's Exhibit 2 records that Plaintiff and Dr. Moreno were denied access; the Superior Court resolved that only on preservation. Dkt. 18-3 at 4–5. That is a fact question, and the City's answer to Count IV rests on it.

Fourth, the City's structural argument overstates what § 4-11 guarantees. Section 4-11(f) requires clear-and-convincing proof before a vicious- or destructive-animal disposition. A different subsection, § 4-11(c), already authorizes forfeiture and destruction on a preponderance—on the distress / dangerous-condition track, not the track used here. Plaintiff does not contend Snuggles was adjudicated under subsection (c). The point is narrower: Chapter 4 already treats killing as available on a lesser showing in one setting. It cannot be that the vicious-animal track is more protective when it skips the evaluation the muzzle track requires.

After *Patel*, 576 U.S. at 418, a facial challenge considers the mine-run applications the provision governs. A provision that never requires the assessment cannot supply one. Standing is not in doubt: the City invoked § 4-11(f)(3) against Plaintiff and still presses the order. Dkt. 14 ¶ 140; Ex. 14-4 at 7/10.

***2. Count V: the challenge to § 4-7(1)(b) is prospective.***

The City argues that because the magistrate found the animal both "vicious" and "destructive," invalidating the "destructive" definition would not redress Plaintiff's injury. Dkt. 18 at 14. Plaintiff does not contend that invalidating § 4-7(1)(b) would return Snuggles. Count V seeks prospective relief against a provision that authorizes the single irreversible remedy on a finding of property damage alone, with no element of danger to any person and no public-health predicate. Dkt. 14 at ¶¶ 145–148. The police power the City invokes is safety or health. A property-damage-only predicate does not supply that justification in the mine-run applications the definition authorizes. The State authorized court-ordered euthanasia only for an animal with a propensity to attack or endanger human beings without provocation. A.R.S. §§ 11-1001(16), 11-1014(H).

As to "vicious": Plaintiff does not press a vagueness theory as to an animal that bites. The standardless-discretion theory is directed at "endangers," an undefined term reaching conduct as ambiguous as lunging or barking, in a determination of life and death. Dkt. 14 at ¶ 151; *Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 495 (1982) (plaintiff must establish that ordinance is impermissibly vague in all of its applications)

***3. Count VI: the scheme is already operating on this animal.***

The City argues Count VI is unripe because no step has been taken under § 4-12. Doc. 18 at 15. But a forfeiture-for-destruction order is a disposition decision under the Chapter's lethal option, and Count VI's defects inhere in the text: § 4-12(a) supplies no criteria for choosing among adoption, destruction, and transfer; § 4-12(a)(3)'s second sentence is incapable of coherent application and conflicts with § 4-12(b); § 4-12(d) makes the life-preserving disposition funding-contingent; and § 4-11(k) affords review with no stay of disposition. Dkt. 14 at ¶¶ 155–166. A plaintiff already put through the forfeiture machinery, whose animal stands subject to an order entered under it, is not a "someday" plaintiff. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014).

***4. Standing does not depend on Coyoki.***

Plaintiff does not rest Counts V and VI on Coyoki. Standing follows from the City's invocation of §§ 4-7 and 4-11(f)(3) against Snuggles and from the destruction order it still defends. Dkt. 14 ¶ 140; Ex. C.

**G. Abstention Does Not Warrant Dismissal or a Stay.**

***1. The first amended complaint does not ask this Court to enjoin any Arizona court, and the state forum is not adequate for the claims asserted here.***

*Younger* requires an ongoing state proceeding, an adequate opportunity to raise the federal claims, and federal relief that would interfere with that proceeding. *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432 (1982). The third element is missing. Plaintiff disclaims any request that this Court enjoin, vacate, or declare invalid any Arizona order. Dkt. 14 ¶¶ 12, 104, 116, 180. The relief runs against Defendants' custody, billing, and future enforcement of their ordinances.

The second element is missing as well. A special-action review for abuse of discretion in the adequacy of a magistrate's findings—which is what Exhibit 2 is—affords no forum for § 1983 damages against the City and three individual officers, for *Monell* discovery, or for a facial injunction running prospectively against future enforcement. The pending appeal in *Evancho v. Tucson City Court*, No. 2 CA-CV 2026-0137 (Ariz. Ct. App.), reviews the same municipal order on a confined record. The County was not a party to those proceedings at all. *See Gilbertson v. Albright*, 381 F.3d 965, 978 (9th Cir. 2004) (en banc).

***2. The City Court proceeding is not the* Sprint *category the motion describes.***

*Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 78–82 (2013), confines *Younger* beyond criminal prosecutions to a narrow class of civil enforcement proceedings "initiated to sanction the federal plaintiff . . . for some wrongful act," typically following an investigation "culminating in the filing of a formal complaint or charges." *Herrera v. City of Palmdale*, 918 F.3d 1037, 1044 (9th Cir. 2019). The City calls the forfeiture order "the paradigmatic sanction a sovereign imposes for a code violation." Dkt. 18 at 15. It cites no provision for that proposition. Section 4-7(3) authorizes the vicious- or destructive-animal declaration and its attendant penalties only "upon a finding of guilt." Plaintiff was never charged with any offense, never convicted, and no fine or penalty was requested or imposed against her. *Sprint* itself warns against extending category two beyond its narrow class. 571 U.S. at 81–82. Even if the Court were to treat the Order to Show Cause as category two under *Spring*, the interference and adequacy defects above independently defeat abstention.

***3. If the Court abstains at all,* Gilbertson *requires a stay of damages, not dismissal.***

If this Court abstains at all, the proper result is a stay of Plaintiff's damages case, not dismissal. *Gilbertson v. Albright*, 381 F.3d 965, 968 (9th Cir. 2004) (en banc). The City's own motion acknowledges that framework.

***4.* Colorado River *does not apply.***

A *Colorado River* stay requires exceptional circumstances and full confidence the state case will end this one. *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913

(9th Cir. 1993). No stay or dismissal is proper where there is "substantial doubt" that the state proceeding will end the litigation. *Id.* (citations omitted). The proceedings are not parallel: the officers, the County, Lesher, and Kozachik are not parties in the state court proceeding, and damages, *Monell,* and facial invalidity are not at issue there.

**H. The § 1988 Request Should Be Denied.**

A prevailing § 1983 defendant recovers fees only if the action is frivolous, unreasonable, or without foundation. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978). The City responded to the amended claims and concedes they include new theories. Dkt. 18 at 2–3. That is not frivolity, unreasonableness, or claims without foundation.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the City of Tucson's Motion to Dismiss in its entirety, deny its request for a stay, and deny its request for fees under 42 U.S.C. § 1988. If the Court concludes that any particular request for relief would operate upon an order of the Tucson City Court as an order, Plaintiff requests that the Court narrow that request rather than dismiss claims as to which the City has raised no jurisdictional objection.

DATED this 28th day of September 2026.

*/s/ Christina Ponig*
Christina E. Ponig *(Admitted Pro Hac Vice)*
FLETCHER HELD, PLLC
William B. Thomas
MCDOWELL HETHERINGTON, LLP
*Attorneys for Jennifer Evancho*

**CERTIFICATE OF SERVICE**

I certify that, on September 28, 2026, I served counsel for Defendants with a copy of the foregoing document through the Court's electronic filing system.

*/s/ Christina Ponig*
Christina E. Ponig *(Admitted Pro Hac Vice)*