J.C. Patrascioiu
CURL, GLASSON & PATRASCIOIU, P.L.C.
485 S. Main Ave., Bldg. 1
Tucson, AZ 85701
(520) 884-7777
Fax (520) 620-0921
jcp@curllaw.com
PCC No. 65961, State Bar No. 24836
*Attorneys for Defendant City of Tucson*

IN THE UNITED STATES DISTRICT COURT

OF THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jennifer Evancho,<br><br>Plaintiff,<br>v.<br><br>City of Tucson, a municipal corporation; Pima County, a political subdivision of the State of Arizona; Jan Lesher, in her official capacity as Pima County Administrator; Steve Kozachik, in his official capacity as Director of Pima Animal Care Center; DOES 1 through 10, in their individual and official capacities as Animal Control Officers, Supervisors, and employees of the City of Tucson and/or Pima County responsible for the seizure, detention, and threatened destruction of Sergeant Snuggles,<br><br>Defendants. | CASE NO: 4:26-CV-00363-RM<br><br>**REPLY IN SUPPORT OF CITY OF TUCSON'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Hon. Rosemary Marquez |

Defendant City of Tucson ("COT") submits this Reply in support of its Motion to Dismiss First Amended Complaint (Doc. 18) (the "MTD") and addressing the matters raised in Plaintiff's Response (Doc. 22) ("Response" or "Resp."). The Response fails to raise a meritorious challenge. Plaintiff now claims that her damages arise, not from order

CURL, GLASSON & PATRASCIOIU, P.L.C.
485 S. Main Ave., Bldg. 1, Tucson, AZ 85701
(520) 884-7777 ❖ Fax (520) 620-0921
www.curllaw.com

that her dog (the "Dog") be forfeit but from its placement and detention prior to the November 24, 2025 hearing that produced that order. Nonetheless, the Response does not identify a single COT employee or agent who handled the Dog, a single COT decision that kept the Dog in custody before the hearing, or a single COT policy that directed the conduct Plaintiff challenges. Instead, the Response mischaracterizes Pima Animal Care Center ("PACC") officers as "the City's officers," describes Plaintiff's own delivery of the Dog for quarantine as a taking, and then argues that those officers disregarded COT's ordinance and COT's forms. An allegation that Pima County (the "County") employees departed from COT policy is the opposite of an allegation that COT policy was the "moving force" behind a constitutional violation. As this Court lacks subject matter jurisdiction and Plaintiff has failed to state a claim, the MTD should be granted.

## I. <u>Argument</u>

The Response's list of ten "contested facts," does not change the analysis. Resp. at 4:10–5:19. Most amount to legal conclusions, such as whether COT policy was a moving force or whether pleaded conduct amounts to consent, which the Court does not accept as true on a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The rest, such as the circumstances of the attack in which the Dog caused injury to Plaintiff's elderly mother's face, scalp, arm, and groin (the "Incident"), are immaterial to COT's liability.

### A. No COT actor or COT policy caused any pre-hearing deprivation.

#### 1. The officers are County employees, and the custody was the County's.

Officers Mills, Jacobus, and Estrella are PACC officers and therefore County agents, and the FAC does not allege otherwise. *See* FAC generally. PACC, not COT, held the Dog at all times. MTD at 10:22-23. The Response does not dispute any of this. Rather, it simply substitutes "the City's officers" for "PACC," or repeatedly and improperly refers to undifferentiated "Defendants". Resp. at 4:19-20, 7:27-28, 6:6, 6:9, 7:9, 8:9-10, 8:12-13, 10:3, 14:26-27. Ultimately, every pre-hearing act the Response attributes to COT was actually performed by County personnel, in County custody.

Plaintiff argues the "Jurisdiction: Tucson" designation on the notice makes County

CURL, GLASSON & PATRASCIOIU, P.L.C.
485 S. Main Ave., Bldg. 1, Tucson, AZ 85701
(520) 884-7777 Option 2 ❖ Fax (520) 620-0921
www.curllaw.com

employees COT actors. Resp. at 9:12-19. This argument lacks merit. The county enforcement agent is charged by statute with enforcing "municipal ordinances which the board of supervisors has contracted to enforce." A.R.S. § 11-1007(A)(1). Identifying whose ordinance PACC was enforcing does not identify who acted. Plaintiff argues that "*Monell* does not require that the City own the kennel." Resp. at 9:17. Nonetheless, *Monell* does require a COT policy that was the moving force. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). The Response identifies no such policy.

**2. The Response alleges departure from COT policy, not execution of it.**

The only COT "policies" the Response identifies are Chapter 4 of the Tucson City Code ("TCC") and two forms. Resp. at 9:21-28. Its theory is that PACC officers disregarded each of them: that § 4-10(a) requires plain view or a warrant and officers did not comply, or that the form set an October 17 release date that officers ignored, or that the October 11 notice listed statutory grounds that officers did not check. Even taken as true, those allegations establish that COT policy prohibited the conduct alleged. Municipal liability requires "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Where a policy is lawful on its face, a plaintiff must satisfy "rigorous standards of culpability and causation." *Brown*, 520 U.S. at 405. The FAC fails to establish causation.

Plaintiff's assertion that no pattern is required "where the policy is the enactment itself," holds only where the enactment itself directs the violation. *Brown*, 520 U.S. at 404–05. Plaintiff identifies no provision of Chapter 4 that directs removal without plain view or a warrant, or detention past a release date, or an incomplete notice. Lastly, her contention that "[e]ach Defendant retains the independent ability to end the deprivation," amounts to a failure-to-act theory, not a municipal policy. Resp. at 9:18-19.

**3. The quarantine followed the state standard.**

TCC § 4-44 requires that biting animals be impounded and quarantined as set forth

CURL, GLASSON & PATRASCIOIU, P.L.C.
485 S. Main Ave., Bldg. 1, Tucson, AZ 85701
(520) 884-7777 Option 2 ❖ Fax (520) 620-0921
www.curllaw.com

in A.R.S. § 11-1014.[1] Under § 11-1014(A), a vaccinated dog that bites may be quarantined at home only "with the consent of and in a manner prescribed by the county enforcement agent." Plaintiff concedes that § 11-1014(A) did not require home quarantine." Resp. at 8:5-6. Quarantine at PACC therefore complied with the governing standard, and the only discretionary choice belonged to the County's enforcement agent. Plaintiff challenges neither § 4-44 nor § 11-1014(A) and no COT policy she attacks caused the quarantine.

**B. Plaintiff delivered the Dog for quarantine and there was no "taking".**

The Response's Fourth Amendment argument assumes a taking that the FAC's allegations refute. Plaintiff executed the Quarantine Transport Agreement and personally walked the Dog on a leash to the transport vehicle. FAC ¶¶ 37–38, 40. The block authorizing officers "to come upon my property and seize the animal" was struck and never used because no one entered the property or claimed authority to do so. *Id.* ¶ 36. That is the opposite of *Bumper v. North Carolina*, where officers asserted they had search warrant. 391 U.S. 543, 548–49 (1968). The only statement Plaintiff identifies is that the Dog "will need to go to PACC for a precautionary 10-day quarantine." FAC ¶ 34. That accurately described § 11-1014(A), as incorporated by § 4-44, which Plaintiff concedes permitted pound quarantine. Resp. at 8:5-9. The FAC's allegations leave no plausible inference that her delivery of the Dog was involuntary.

Notably, the Response's repeated reference to Plaintiff's October 10, 11, and 13 calls are irrelevant. Resp. at 2:18, 6:8, 10:14-15. Each call preceded the October 17 release date to which, even according to Plaintiff, she agreed. FAC ¶ 38. Declining release during the agreed to quarantine period was not a deprivation.

Further, TCC § 4-10(a)'s plain-view-or-warrant language does not convert the intake into a constitutional violation. Even if it was assumed the ordinance was not followed, local-law requirements do not define Fourth Amendment reasonableness. *Virginia v. Moore*, 553 U.S. 164, 176 (2008). In any event, Plaintiff alleges that officers

[1] TCC § 4-44 actually cites A.R.S. § 24-372 but it was renumbered and amended to A.R.S. § 11-1014 in 1990.



CURL, GLASSON & PATRASCIOIU, P.L.C.
485 S. Main Ave., Bldg. 1, Tucson, AZ 85701
(520) 884-7777 Option 2 ❖ Fax (520) 620-0921
www.curllaw.com

observed the Dog in its enclosure without entering it, which would amount to an animal in plain view. FAC ¶¶ 31, 40. Thus, initially, there was no "taking."

After the initial quarantine, the Dog was held on PACC's October 11 impoundment under § 4-10(a)(3), which was based on the Incident in which Plaintiff's mother was seriously injured. Plaintiff argues *Brewster v. Beck*, which addresses a seizure whose justification lapsed. 859 F.3d 1194 (9th Cir. 2017). The justification here did not lapse: a magistrate found the Dog vicious by clear and convincing evidence on November 24. Further, the custody prior to that hearing was PACC's, not COT's. MTD at 10:22-23.

**C. Count II fails against COT.**

Plaintiff disclaims any challenge to the November 24 hearing and concedes the November 2 directive and January records issue are County conduct. FAC ¶ 109, Resp. at 11:9-11. All that is left is the October 11 notice and the interval before the hearing. But *Barry v. Barchi* permits a pre-hearing deprivation where a prompt post-deprivation hearing is assured. 443 U.S. 55 (1979). Meanwhile, Chapter 4 assures a hearing with written notice, reciprocal disclosure, counsel, cross-examination, a clear-and-convincing standard, and written findings. TCC § 4-11(a)(3)–(5), (f), (j). Plaintiff received such a hearing. FAC ¶ 49. Any shortcoming in the October 11 notice's checkboxes was cured by the written petition and the full hearing that followed shortly thereafter. Plaintiff cites no authority holding an interval of the kind alleged to be constitutionally deficient. Finally, Plaintiff continues to complain of detention after November 24, even as she explicitly denies challenging the order for that ongoing detention. Resp. at 10:23-25, FAC ¶ 109. That is detention under the magistrate's order and is beyond this Court's review.

**D. *Rooker-Feldman* bars the injunctive and declaratory relief sought.**

The Response misunderstands the MTD. COT sought dismissal of the injunctive and declaratory relief under Rule 12(b)(1), and dismissal of the remaining claims under Rule 12(b)(6) or, alternatively, a stay. MTD at 9:15-19, 16:12-15. That request for relief does not amount to a concession that any counts state a claim or are not subject to abstention doctrine.

CURL, GLASSON & PATRASCIOIU, P.L.C.
485 S. Main Ave., Bldg. 1, Tucson, AZ 85701
(520) 884-7777 Option 2 ❖ Fax (520) 620-0921
www.curllaw.com

Meanwhile, on the relief that is barred, the Response effectively concedes the point: it limits return of the Dog to "any increment of detention the order does not command," and offers "[w]ithdrawal of the petition or a stipulation to release" as COT's "own voluntary act." Resp. at 7:2-10. Since November 24, the order commands forfeiture and there is no uncommanded increment. Further, relief available only through COT's voluntary act is not relief this Court can order. Plaintiff's request that the Court "narrow" her prayer concedes that the prayer, as pleaded, seeks relief from a state-court judgment. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283-284 (2005); *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 859 (9th Cir. 2008). Again, any claim for detention after November 24 complains of injury caused by the judgment, regardless of Plaintiff's disclaimer. FAC ¶ 109.

**E. Plaintiff has abandoned Count III against COT.**

Plaintiff now "does not contend that [COT] set the supersedeas bond or collected the daily boarding charges." Resp. at 11:15-18. But that is Count III. FAC ¶¶ 118–123. Meanwhile, the § 4-12(d) funding theory the Response substitutes does not appear in Count III and appears to be drawn from Count VI. *Id.* ¶ 163. A plaintiff may not amend her complaint through an opposition brief. *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

Regardless, Plaintiff also invites dismissal of Count III as to COT. Resp. at 12:10-11. The Court should accept the invitation. Even on its merits, an owner's responsibility for impoundment costs is commonplace[2] while TCC § 4-11(l) excuses all fees if the owner prevails. That is not conscience-shocking as a matter of law.

**F. Counts IV through VI still fail.**

**1. Plaintiff has abandoned the only basis for prospective standing.**

Plaintiff concedes that invalidating § 4-7(1)(b) would not return the Dog while also disclaiming reliance on Coyoki, her other dog. Resp. at 13:21, 14:17-19. Count V

---

[2] State law imposes it on owners of vicious animals with no refund. A.R.S. § 11-1014(I).

CURL, GLASSON & PATRASCIOIU, P.L.C.
485 S. Main Ave., Bldg. 1, Tucson, AZ 85701
(520) 884-7777 Option 2 ❖ Fax (520) 620-0921
www.curllaw.com

therefore seeks purely prospective relief for a plaintiff with no animal subject to future enforcement. That is not an injury in fact. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 105 (1983). The same is true of Count VI. The magistrate ordered destruction under § 4-11(f)(3). There is no choice among dispositions under § 4-12(a) pending and § 4-12(d) is only triggered if the enforcement agent elects a transfer and charges the cost to COT. Finally, destruction is stayed, so the absence of a stay in § 4-11(k) has never affected Plaintiff. In short, there is no credible threat of enforcement of § 4-12 against Plaintiff.

**2. Plaintiff concedes the vagueness challenge.**

Plaintiff "does not press a vagueness theory as to an animal that bites." Resp. at 14:1. Yet it is admitted the Dog bit a person. A plaintiff whose conduct is clearly covered cannot challenge a provision as vague as applied to others. *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18–19 (2010).

**3. State law does not limit Chapter 4.**

The Response suggests that the State authorized euthanasia only for unprovoked attacks on humans. Resp. at 13:26-28 (citing A.R.S. §§ 11-1001(16), 11-1014(H)). But Plaintiff ignores that the state animal-control article "shall not apply to incorporated cities or towns that impose a license fee and vaccination on dogs by ordinance" that is equal to or more stringent than the article. A.R.S. § 11-1018(A). COT imposes both. TCC §§ 4-76, 4-81, 4-82. Further, even under the state definition, a "vicious animal" includes one "so declared after a hearing before . . . a city magistrate." A.R.S. § 11-1001(16). Plaintiff's citations to state statutes lack merit.

**4. Count IV tries to recast an as-applied grievance as a facial challenge.**

The text of § 4-13 is consistent with the MTD's analysis. The evaluation in § 4-13(c)(2) appears in the subsection governing the enforcement agent's own declaration, which turns on a propensity "as determined by the city enforcement agent" under guidelines the agent develops. TCC § 4-13(a)(2), (c)(1)–(3). Where a magistrate has already declared an animal vicious under § 4-11, that declaration "may not be contested" in the § 4-13 process. *Id.* § 4-13(d)(1)(a). The magistrate's adjudication displaces the

CURL, GLASSON & PATRASCIOIU, P.L.C.
485 S. Main Ave., Bldg. 1, Tucson, AZ 85701
(520) 884-7777 Option 2 ❖ Fax (520) 620-0921
www.curllaw.com

agent's determination. In other words, it is not a lesser substitute for it.

The Response's allegation of the denial of access to the Dog is an as-applied complaint about PACC, and is irrelevant to whether § 4-11(f)(3) is facially invalid. Resp. at 13:3. Notably, the Superior Court found that Plaintiff never asked the City Court to order an evaluation. Doc. 18-3 at 5. Finally, Plaintiff's § 4-11(c) argument concerns a subsection she concedes was never applied to her. Resp. at 13:8-9.

**G. At a minimum, *Younger* requires a stay.**

Plaintiff's disclaimers neither control nor resolve the interference inquiry. The question is whether the federal relief sought would have the practical effect of enjoining the state proceeding. *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1149 (9th Cir. 2007). An order returning the Dog, or enjoining the provisions underlying a forfeiture order that remains pending before the Court of Appeals, would have that effect.

On adequacy, Plaintiff argues her federal claims are not pending in state court. Resp. at 15:1-7. But Plaintiff bears the burden of showing that state procedural law barred presentation of her federal claims. *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14–15 (1987). Here, she fails to make that showing. In any case, the unavailability of damages in the state proceeding is the reason damages claims are stayed rather than dismissed, not a reason to refuse abstention. *Gilbertson v. Albright*, 381 F.3d 965, 968 (9th Cir. 2004) (en banc).

Plaintiff's *Sprint* argument conflates the criminal penalty provision of TCC § 4-7(3) with the civil proceeding under § 4-11. The § 4-11 proceeding was initiated by COT, following an investigation, through a formal petition, to address conduct § 4-7(2)(a) makes unlawful. Those are the hallmarks of the civil enforcement proceedings akin to a criminal prosecution that *Sprint* identifies. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 79–80 (2013).

**H. COT is entitled to fees under 42 U.S.C. § 1988.**

A prevailing defendant recovers fees where a claim is "frivolous, unreasonable, or without foundation," or where the plaintiff "continued to litigate after it clearly became

CURL, GLASSON & PATRASCIOIU, P.L.C.
485 S. Main Ave., Bldg. 1, Tucson, AZ 85701
(520) 884-7777 Option 2 ❖ Fax (520) 620-0921
www.curllaw.com

so." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421–22 (1978). A defendant may recover the fees attributable to frivolous claims even where other claims are not frivolous, and need not obtain a judgment on the merits to prevail. *Fox v. Vice*, 563 U.S. 826, 836 (2011); *Harris v. Maricopa Cnty. Superior Ct.*, 631 F.3d 963, 971 (9th Cir. 2011); *CRST Van Expedited, Inc. v. EEOC*, 578 U.S. 419, 431–34 (2016).

The claims against COT meet the standard. Plaintiff asserted Count III against COT while conceding that COT neither set nor collected the charges it challenges. Resp. at 11:15-18. She asserted Counts I.A and II against COT for the conduct of County employees, in County custody, that her own allegations attribute to PACC. FAC ¶¶ 22, 34, 44; Resp. at 11:9-11. She asserted Counts V and VI while now disclaiming the only basis for standing and conceding that relief would not redress her injury. Resp. at 13:19–14:15. And she did all this after COT's first motion to dismiss (Doc. 8) identified the same or similar defects in the Complaint (Doc. 1). That some theories are new does not make them well founded. Resp. at 16:8-9. COT requests that the Court find these claims frivolous, unreasonable, and without foundation, and permit COT to submit its fee application under LRCiv 54.2.

**I. Plaintiff's conferral objection provides no basis to deny the MTD.**

Plaintiff's conferral objection requests no relief. Resp. at 3:8-16. Further, Plaintiff's attached exhibit (Doc. 22-1) does not include her counsel's response on September 2, 2026. In any case, COT sought Plaintiff's position in writing before filing, and the parties were unable to agree as to the merits of the MTD.

**II. Conclusion**

For these reasons and those set forth in the MTD, COT respectfully requests that the Court dismiss Plaintiff's claims for injunctive and declaratory relief against COT under Rule 12(b)(1), dismiss the remaining claims against COT under Rule 12(b)(6), and award COT its reasonable attorneys' fees under 42 U.S.C. § 1988. In the alternative, COT requests that the Court dismiss Plaintiff's claims for declaratory and injunctive relief against COT and stay her damages claims against COT pending resolution of the state

CURL, GLASSON & PATRASCIOIU, P.L.C.
485 S. Main Ave., Bldg. 1, Tucson, AZ 85701
(520) 884-7777 Option 2 ❖ Fax (520) 620-0921
www.curllaw.com

proceedings.

DATED: October 5, 2026

CURL, GLASSON & PATRASCIOIU, P.L.C.

By: /s/ *J.C. Patrascioiu*
J.C. Patrascioiu
*Attorneys for Defendant City of Tucson*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 5, 2026 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

William B. Thomas
McDOWELL HETHERINGTON LLP
1001 Fannin Street, Suite 2400
Houston, TX 77002
william.thomas@mhllp.com
*Attorneys for Plaintiff*

Christina E. Ponig
FLETCHER HELD, PLLC
808 Travis Street, Suite 1553
Houston, Texas 77002
cmaccio@fletcherheld.com
*Attorneys for Plaintiff*

Tyler Campman
Rebecca K. O'Brien
PIMA COUNTY ATTORNEY
CIVIL DIVISION
32 North Stone Avenue, Suite 2100
Tucson, Arizona 85701
Tyler.Campman@pcao.pima.gov
Rebecca.OBrien@pcao.pima.gov
*Attorneys for Pima County Defendants*

/s/ *SJP*