LAURA CONOVER
PIMA COUNTY ATTORNEY
CIVIL DIVISION
Tyler Campman, SBN 036416
Deputy County Attorney
Tyler.Campman@pcao.pima.gov
Rebecca K. O'Brien, SBN 021954
Deputy County Attorney
Rebecca.OBrien@pcao.pima.gov
32 North Stone Avenue, Suite 2100
Tucson, Arizona 85701
Telephone: 520-724-5700
*Attorneys for Defendant Pima County*



**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

Jennifer Evancho,

Plaintiff,

vs.

City of Tucson, et al.,

Defendants.

No. 4:26-cv-00363-RM

**PIMA COUNTY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

Pima County replies in support of its Motion to Dismiss Plaintiff's First Amended Complaint. [Doc. 19.] Plaintiff's Response in Opposition to Pima County's Motion to Dismiss ("Response") [Doc. 21] reframes her claims in an unsuccessful attempt to clear jurisdictional and pleading hurdles. This Reply is supported by the accompanying Memorandum of Points and Authorities and the complete record in this action.

///

///

LAURA CONOVER
PIMA COUNTY ATTORNEY
CIVIL DIVISION

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION.

Plaintiff's Response opens with the proposition that the County's Motion to Dismiss "rests on a single sentence: the County 'has, and continues, to act pursuant to a court order.'" In part, that is true. Rather than demonstrating a weakness in Pima County's case, however, it reflects the key defect with Plaintiff's First Amended Complaint ("FAC"). The FAC is an improper end-run around the state courts who have ruled against Plaintiff. For the reasons outlined below, it should be dismissed.

## II. ARGUMENT.

### 1. Plaintiff's claims remain internally reconcilable.

Rather than clarifying her position, Plaintiff's Response only further demonstrates the vanishingly narrow legal gap Plaintiff seeks to thread and makes it more difficult for Pima County to understand the charges leveled against it. She states that she "does not challenge the destruction orders in this Court, and she does not contend that the County is free to ignore them," and accepts the County's contention that it is complying with those orders. [Doc. 21, p. 9.] She also concedes that, "A court order can be a defense to the acts it commands." *Id.* at 2. But at the same time, the very first paragraph of the FAC alleges that Plaintiff brings this action "to end the ongoing seizure of her dog, Sergeant Snuggles, and to recover damages for the seizure." [Doc. 15-1, ¶ 1.] The dog is being held pursuant to the order issued by the Tucson City Court, which mandated the dog be forfeited to Pima County Animal Care Center ("PACC") for humane destruction ("Order"). Plaintiff's arguments are incompatible with her claims and requested relief.

Plaintiff's requested relief in her FAC includes that the dog be returned to her. [Doc. 15-1, ¶¶ 104, 179.] Pima County cannot both comply with the Order and return the dog to Plaintiff. In attempting to buttress her argument based on *Brewster v. Beck*, F.3d 1194, 1196-97 (9th Cir. 2017), Plaintiff claims that, "[a]nswering whether the justification still

LAURA CONOVER
PIMA COUNTY ATTORNEY
CIVIL DIVISION

holds in the twelfth month reflects no judgment, because no court has been asked the question." [Doc. 21, p. 10.] It is difficult to understand what question Plaintiff believes hasn't been asked—PACC remains in possession of the dog under the Order. That is the justification. In addition, the amount of time that the dog has been impounded is based on *Plaintiff's* continued pursuit of her state court remedies. Therefore, the length of time her state court case has taken cannot support Plaintiff's argument.

In a section titled, "***The orders say nothing about how the animal is held***," Plaintiff tries to recast her argument into one more focused on the conditions of the impoundment, rather than the impoundment itself, stating that "Counts I.B, II and III are directed at precisely that residue, and the motion does not engage it." *Id.* at 13. That is a gross mischaracterization of Count I.B of the FAC, which is aimed primarily at the County's continued impoundment of the dog after November 24, 2025 (the date of the Order). [Doc. 15-1, ¶¶ 101-107.] The main thrust of that section is Plaintiff's complaint that the dog is currently being held at all, not how it is being held. Plaintiff cannot change the character of her argument at the response stage to defeat a proper motion to dismiss.

**2. The FAC should be dismissed pursuant to *Rooker-Feldman*.**

The FAC should be dismissed pursuant to the *Rooker-Feldman* doctrine because this is a case brought by a state court loser complaining of injuries allegedly caused by a state court judgment rendered before these proceedings commenced, and Plaintiff is inviting review of that judgment by this Court. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Nothing in the Response can bring the FAC past this jurisdictional obstacle. For the reasons outlined above, the FAC is clearly a *de facto* appeal of the state court ruling. *Bianchi v. Rylaardsam,* 334 F. 3d 895, 898 (9th Cir. 2003), quoting *Feldman,* 460 U.S. at 483 n. 16 (a *de facto* appeal in federal court occurs when "claims raised in the federal court action are 'inextricably intertwined with the state court's decision such that the adjudication of the federal claims would undercut the state ruling or require

LAURA CONOVER
PIMA COUNTY ATTORNEY
CIVIL DIVISION

the district court to interpret the application of state laws or procedural rules.'"'). As much as Plaintiff attempts to re-invent the lawsuit as one based on the October 7 impoundment and "custodial practices the destruction orders do not specify," the allegations and requested relief in the FAC clearly go to the heart of the Order or are inextricably intertwined with it. Plaintiff asserts that "Injunctive relief against the County is limited to conditions of custody the order does not specify and to any increment of detention the order does not command." [Doc. 21, p. 9.] However, the FAC clearly requests relief that would directly contradict the Order as described above. Simply put, PACC's current possession of the dog is based on the Order, and Plaintiff's requested relief runs afoul of the Order and fails at the jurisdictional threshold.

Further, Plaintiff's claims regarding how the dog is being held and boarding fees she is paying pursuant to Pima County code provisions are also inextricably linked to the Order. Again, the County's possession of the dog is pursuant to the Order. The Order, therefore, is the reason she is paying boarding fees. Similarly, the claims regarding the conditions in which the dog is being held are collateral to the Order itself. Plaintiff's issues with what the Order does or does not say should be dealt with in state court and do not present a federal claim.

Plaintiff notes that *Kollenburn* is an unpublished, out-of-district decision. True. However, it is on point, and relevant persuasive authority. *Joe Hand Promotions, Inc. v. Gonzalez,* 423 F. Supp. 3d 779, 784 (D. Ariz. Nov. 5, 2019). The Court should follow its logic. There, the plaintiff's claims were "deeply entangled with the issues considered and decided by the circuit court," and "granting the requested relief would have the unquestionable effect of reversing and voiding a state court judgment." *Kollenburn v. Cnty. of Clackamas*, 2021 WL 719895, at *5 (D. Or. Feb. 24, 2021). So it is here. Unquestionably, granting Plaintiff's request that the dog be returned to her would void and

LAURA CONOVER
PIMA COUNTY ATTORNEY
CIVIL DIVISION

reverse the Order. This Court therefore does not have the jurisdiction to grant such a request.

**3. Pima County does not ask this Court to resolve contested facts.**

Plaintiff claims that "The County's merits argument depends at nearly every step on a factual conclusion in its favor." [Doc. 21, p. 3.] That is incorrect. For example, more than a page of the Response is devoted to discussion of the fact that the dog was on a tie-out when it attacked her mother but was removed from the tether and was secured behind a fence by the time PACC officers arrived on the scene. *Id*. at 4. That is not in dispute. However, she incorrectly claims that the moment her dog attacked her mother is not "the moment that matters to any claim in this case." *Id.* It is more accurate to say that this is the *most* important moment in this case.

On October 7, 2025, Plaintiff's mother tapped the dog on the head because she knew that's where he liked to be petted. [Doc. 14-3, pp. 70, 72.] In response, the dog mauled her, leaving a piece of her scalp in the yard and fresh spots of blood on his white fur. *Id.* at 14-15. Plaintiff's mother required surgical intervention for her injuries. *Id.* at 76. This is the moment that began the chain of events in this case, ultimately leading to a full evidentiary hearing taking place within just a few weeks of the incident at which Plaintiff was represented by counsel and availed herself of the opportunity to present witnesses. *Id.* The Tucson City Court magistrate considered the evidence and ultimately ordered that the dog was a vicious animal and was to be humanely destroyed. [Doc. 14-5.] The attack is the moment that provided the justification for Pima County's initial impoundment of the animal.

Plaintiff also claims that when PACC officers arrived at her property on that same day, no officer entered the enclosure and no officer sought a warrant. [Doc. 21, p. 4.] However, those factual allegations do not support Plaintiff's argument. What they show is that the dog was taken from Plaintiff with no issues and with her consent. [Doc. 15-1, ¶

LAURA CONOVER
PIMA COUNTY ATTORNEY
CIVIL DIVISION

40.] This moment, therefore, cannot serve as the grounds for a Fourth Amendment seizure claim.

In another section titled "**The information blackout**," Plaintiff takes issue with the fact that PACC staff were allegedly instructed not to speak with her. [Doc. 21, p. 5.] Even taking this allegation as true, it does not provide grounds for any constitutional claim. Plaintiff points to no authority that would require PACC staff to be in constant communication with her, not does she provide authority that the alleged failure to do so constitutes a deprivation of due process. In fact, she concedes that she was able to get information about the dog's condition via PACC's compliance with her public records request. [Doc. 15-1, ¶ 69.] Ultimately, even taking the allegations in the FAC as true, Pima County's impoundment of the dog was justified and done with Plaintiff's consent. [Doc. 15-1, ¶ 40.] Further, given the important interests in animal control and public safety inherent in this case, the brief window of time the dog was impounded prior to November 24, 2025 hearing was eminently reasonable. *See Barry v. Barchi*, 443 U.S. 55, 64 (1979).

**4. Monell liability has not been adequately pled.**

Plaintiff has not adequately pled *Monell* liability. First, Pima County cannot be liable pursuant to *Monell* because there is no underlying constitutional violation. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). As discussed *supra*, Plaintiff's claims do not give rise to constitutional violations because all of the actions alleged on behalf of PACC employees have either been pursuant to the Order or entirely justified by the circumstances. It is also the case that a single instance of conduct cannot generally satisfy the *Monell* requirement. *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021). Plaintiff has not adequately identified policies or procedures fairly attributable to the County such that *Monell* liability may lie, nor has she identified a cognizable legal theory as to how those policies or procedures led to a constitutional violation. There is, therefore, no adequately pled *Monell* claim. Because the FAC fails to state a claim and this

LAURA CONOVER
PIMA COUNTY ATTORNEY
CIVIL DIVISION

Court lacks jurisdiction under *Rooker-Feldman,* the FAC should be dismissed without leave to amend.

**5. In the alternative, Plaintiff's damages claim should be stayed pursuant to *Younger* abstention.**

Should the Court determine that it has jurisdiction and that Plaintiff has stated a claim, Plaintiff's case should still be stayed in the alternative pursuant to *Younger* abstention. *Younger* abstention applies because this case is both a quasi-criminal proceeding and implicates the state's interest in enforcing the orders of its courts. *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013) (citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 (1975) and *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1 (1987)). Therefore, this Court should stay any claim for damages pending the resolution of the state court proceedings. [Doc. 19, p. 6.] The arguments in Plaintiff's Response are unavailing.

**A. *Younger* applies to this case.**

Plaintiff argues that the state proceedings are neither a quasi-criminal enforcement action, nor do they involve the state's interest in enforcing the orders and judgments of its courts. Both are incorrect. First, the underlying dangerous-animal proceedings are civil enforcement actions initiated by a government entity. After an investigation and evidentiary hearing, the Tucson City Court ultimately issued its Order. As Pima County noted in its Motion to Dismiss, Plaintiff has described the state proceedings as a quasi-criminal sanction of herself. See **Exhibit 5** to Doc. 19, Plaintiff/Petitioner's Motion to Vacate Destruction Order, p. 17 ("A scheme that secures a **criminal-level determination** and **an irrevocable sanction** by lowering the burden and deleting the defense cannot be reconciled with procedural due process") (emphasis added). Plaintiff should not be permitted to characterize her claims one way in state court and then adopt a materially different characterization in federal court to obtain a litigation advantage.

LAURA CONOVER
PIMA COUNTY ATTORNEY
CIVIL DIVISION

However, the Court need not determine that the state court proceedings are quasi-criminal in nature—they clearly involve the state's interest in enforcing the orders of its courts. The Tucson City Court ordered that the dog be forfeited and humanely destroyed. The Tucson City Court clearly has an interest in the enforcement of its own order—the Order is otherwise meaningless. If Plaintiff's requested relief is granted, this Court would directly overrule the Order issued by the Tucson City Court. This case, therefore, falls within the category of cases to which *Younger* applies.

**B. Plaintiff mischaracterizes her claim in light of *Younger's* federal claim availability requirement.**

Again, Plaintiff tries to recast the nature of her claim against Pima County, arguing that the state forum was not adequate because the County is not a party, and therefore, her § 1983 damages claim could not be raised against them. [Doc. 21, p. 11.] That may be true as far as it goes, but her FAC is not primarily a damages claim against Pima County. Paragraph 1 of the FAC states that her action is brought "**to end the ongoing seizure of her dog, Sergeant Snuggles**, and to recover damages for the seizure, detention, and threatened destruction of her property." [Doc. 15-1, ¶ 1] (emphasis added). From the very first words of the FAC, it is clear that the main purpose of Plaintiff's federal action is to get her dog back, which goes to the heart of the Tucson City Court Order and is the subject of the ongoing state court action. Her damages claim is secondary and seeks recompense for alleged damages she asserts occurred because of the Order.

While Pima County concedes that Plaintiff likely would not have been able to join them in the special action proceedings below in order to bring § 1983 claims, she did have the opportunity to raise federal claims. Arizona courts are courts of general jurisdiction and may adjudicate federal constitutional and statutory claims. To the extent Plaintiff believed the state court process violated her due process rights and/or the terms of the Order were insufficient, she should and could seek relief in the state court action. There is nothing in

LAURA CONOVER
PIMA COUNTY ATTORNEY
CIVIL DIVISION

Arizona special action procedure narrowing the substantive scope of claims that may be raised. Therefore, *Younger's* adequate opportunity prong is satisfied. *See Communications Telesystems Int'l v. California Pub. Util. Comm'n*, 196 F.3d 1011, 1020 (9th Cir. 1999) ("The 'adequate opportunity' prong of *Younger* is no more difficult to satisfy than the res judicata test. *Younger* requires only the absence of 'procedural bars' to raising a federal claim in the state proceedings"). The elements of *Younger* are met here. If the Court determines it has jurisdiction and Plaintiff has adequately pleaded a claim against Pima County, it should still stay the case pending the resolution of the state court proceedings.

**6. Pima County is entitled to fees.**

A prevailing defendant may recover fees pursuant to 28 U.S.C. § 1988 where the plaintiff's action was frivolous, unreasonable, or without foundation. *Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n*, 434 U.S. 412 (1978). Plaintiff's federal claims are frivolous because they are the subject of ongoing state litigation that this Court cannot overrule or interfere with. Should the Court find that some of Plaintiff's claims are non-frivolous, Pima County should still be awarded reasonable fees for the costs it would not have incurred but for the frivolous claims. *Fox v. Vice*, 563 U.S. 826 (2011). Similarly, sanctions pursuant to 28 U.S.C. § 1927 are appropriate because the proceedings in this case have been unreasonably and vexatiously multiplied. Subjective bad faith should be found here because the FAC knowingly or recklessly raised frivolous arguments. *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431 (9th Cir. 1996).

Simply put, Plaintiff is attempting to use this action to get her dog back, even though Pima County has the dog pursuant to an Order of the Tucson City Court, which is the subject of Plaintiff's pending appeal. That is plainly improper. Plaintiff is aware of the Order and by her own words does not challenge it. There is no way to frame the repeated requests in the FAC that this Court overrule the Tucson City Court and Pima County

LAURA CONOVER
PIMA COUNTY ATTORNEY
CIVIL DIVISION

Superior Court as anything but frivolous, unreasonable, and without foundation. Pima County is entitled to fees for its defense of these claims.

## III. CONCLUSION.

Ultimately, Plaintiff's FAC represents an attempt to get this Court to overrule the Tucson City Court and the Pima County Superior Court and get her dog back. This Court lacks jurisdiction to grant such relief. The Court should grant Pima County's Motion to Dismiss in its entirety and award Pima County its reasonable attorneys' fees incurred in defending this action, pursuant to 28 U.S.C. § 1988 and/or § 1927.

RESPECTFULLY SUBMITTED October 5, 2026.

LAURA CONOVER
PIMA COUNTY ATTORNEY

By/s/: *Tyler Campman*
Tyler Campman
Rebecca O'Brien
Deputy County Attorneys

LAURA CONOVER
PIMA COUNTY ATTORNEY
CIVIL DIVISION

**CERTIFICATE OF SERVICE**

I hereby certify that on October 5, 2026, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Additionally, a copy of the foregoing was mailed on this same date to the following recipient:

William B. Thomas
McDOWELL HETHERINGTON LLP
1001 Fannin Street, Suite 2400
Houston, TX 77002
william.thomas@mhllp.com
Christina E. Ponig (Admitted Pro Hac Vice)
FLETCHER HELD, PLLC
808 Travis Street, Suite 1553
Houston, Texas 77002
cmaccio@fletcherheld.com
*Attorneys for Plaintiff*

J.C. Patrascioiu
CURL, GLASSON & PATRASCIOIU, PLC
485 S. Main Ave., Bldg. 1
Tucson, AZ 85701
jcp@curllaw.com
*Attorneys for Defendant City of Tucson*

By: */s/ Melanie Mosier*