**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Jennifer Evancho,

Plaintiff,

v.

City of Tucson, et al.,

Defendants.

No. CV-26-00363-TUC-RM

**ORDER**

Pending before the Court is Plaintiff's Application for Temporary Restraining Order ("TRO") (Doc. 1), Application for Preliminary Injunctive Relief and Motion for Expedited Consideration (Doc. 4), City of Tucson's Motion to Dismiss Plaintiff's original Complaint (Doc. 8), Pima County's Motion to Dismiss Plaintiff's original Complaint (Doc. 10), the City of Tucson's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 18), and Pima County's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 19).

For the following reasons, the Application for TRO will be denied. The Application for Preliminary Injunctive Relief and Motion for Expedited Consideration will be denied insofar as it requests issuance of a preliminary injunction, and granted insofar as the Court has prioritized the resolution of the Application. The City of Tucson and Pima County's respective Motions to Dismiss Plaintiff's original Complaint will be denied as moot. The respective Motions to Dismiss Plaintiff's First Amended Complaint will be granted in part.

## I. Background

Plaintiff initiated this action on July 17, 2026. (Doc. 1.) In addition to her claims,

her Complaint contained a request for a TRO. (Doc. 1 at 37.) On July 23, 2026, Plaintiff filed the Application for Preliminary Injunctive Relief and Motion for Expedited Consideration. (Doc. 4.) Both the request for a TRO and the Application for Preliminary Injunctive Relief request that the Court enjoin Defendants from euthanizing Sergeant Snuggles and order his immediate release. (Docs. 1, 4.) Defendants City of Tucson and Pima County responded in opposition to the Application for Preliminary Injunctive Relief, and Plaintiff replied. (Docs. 9, 11, 16.)

Both the City of Tucson and Pima County moved to dismiss Plaintiff's Complaint. (Docs. 8, 10.) Following the filing of the Motions to Dismiss, Plaintiff filed a First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 15(a)(1)(B).[1] Plaintiff's FAC notes that Plaintiff previously applied for preliminary injunctive relief, and states that the application "remains pending and is maintained on this Amended Complaint." (Doc. 14 at 33.) On September 15, 2026, the City of Tucson and Pima County separately filed Motions to Dismiss Plaintiff's FAC. (Docs. 18, 19.) The Motions to Dismiss the FAC are fully briefed. (Docs. 20, 21, 22, 23, 24.)

Plaintiff's claims arise from legal proceedings for animal forfeiture and euthanasia initiated against her by the City of Tucson. (*See* Doc. 14.) On October 7, 2025, a dog owned by Plaintiff—"Sergeant Snuggles"—attacked Plaintiff's mother, causing very serious injuries that required hospitalization and surgery. (Doc. 14-3 at 14.) After taking Sergeant Snuggles into Pima Animal Care Center custody for a quarantine period to observe for symptoms of rabies following the attack (Doc. 14 at 9), the City of Tucson filed a Petition for Order to Show Cause Re: Animal Forfeiture in Tucson City Court (Doc. 14-4 at 3). The Petition submitted that it was the belief of the State that Sergeant Snuggles posed a threat to public safety, and that the appropriate remedy was humane destruction. (Doc. 14-4 at 3.) Sergeant Snuggles has remained detained during the pendency of the state court proceedings. (*See* Doc. 14.)

The Tucson City Court held a hearing on the matter on November 24, 2025. (Doc.

[1] Under Rule 15(a)(1)(B), "if [a] pleading is one to which a responsive pleading is required," it may be amended within "21 days after service of a motion under Rule 12(b)[.]"

14 at 10.) After the testimony of several witnesses, the court concluded that Sergeant Snuggles was a vicious animal as defined by Tucson City Code § 4-7, and ordered that he be surrendered for humane destruction. (Doc. 14-3 at 6-117.) Plaintiff filed a Petition for Special Action in the Pima County Superior Court requesting review of that decision, and the magistrate judge overseeing the City Court proceedings stayed her order mandating destruction of the dog pending resolution of Plaintiff's Petition. (Doc. 14 at 10-11.) On March 26, 2026, the Pima County Superior Court denied Plaintiff's Petition for Special Action, stating that it "cannot find the trial court abused its discretion in issuing its ruling in this case. The Court's findings were adequate, met the requirements of the code, and were supported by the evidence in the record." (Doc. 18-3 at 6.) Plaintiff initiated an appeal of the Superior Court's decision on April 8, 2026, which remains pending before the Arizona Court of Appeals. (Doc. 18-4, Doc. 19-6 at 2.)

Plaintiff's FAC brings six counts.[2] (Doc. 14 at 18-30.) Count I is composed of two parts. (*Id.* at 18-20.) Count I(A) alleges a violation of the Fourth Amendment as a result of an alleged failure to comply with certain portions of the Tucson City Code governing the impoundment of animals during Sergeant Snuggles' initial detention. (*Id.*) Count I(B) alleges that Sergeant Snuggles' ongoing detention is a violation of the Fourth Amendment. (*Id.*) Count II asserts that certain Defendants' alleged failure to comply with portions of the Tucson City Code governing the impoundment of animals constitutes a violation of procedural due process under the Fourteenth Amendment. (*Id.* at 21.) Count III alleges that the City Code requirement that Plaintiff pay a bond and boarding fees for her dog during the pendency of her appeals in state court is a violation of substantive due process under the Fourteenth Amendment. (*Id.* at 23.) Counts IV, V, and VI allege that various portions of the Tucson City Code provisions governing the impoundment and disposition of animals believed to be vicious or dangerous are facially unconstitutional under the Fourteenth Amendment. (*Id.* at 24-30.)

[2] Throughout her FAC, Plaintiff conflates factual allegations and legal conclusions. (*See* Doc. 14.) The precise nature of her claims, particularly Counts I and II, is difficult to understand as a result.

## II. Motions to Dismiss the Original Complaint

An amended complaint supersedes the original complaint, leaving the original complaint without legal effect. *Ramirez v. Cnty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015). As such, a motion to dismiss an original complaint becomes moot upon the filing of an amended complaint. *Huian Cnty. Mubing E- Com. Co Ltd v. Interlink Prods. Int'l Inc.*, No. C25-2733-KKE, 2026 WL 853803 (W.D. Wash. Mar. 27, 2026). Accordingly, the Court will deny as moot Defendants' Motions to Dismiss Plaintiff's original Complaint (Docs. 8, 10).

## III. Motions to Dismiss the FAC – Arguments Under *Rooker-Feldman* & *Younger*

In their Motions to Dismiss, Defendants argue that the *Rooker-Feldman* and *Younger* doctrines each independently bar Plaintiff's claims from being heard in this Court. (Docs. 18, 19.) Defendants also argue that Plaintiff has failed to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Docs. 18, 19.) Since the *Rooker-Feldman* doctrine is a jurisdictional bar, the Court finds it appropriate to first examine the application of the *Rooker-Feldman* doctrine to this case. Following its consideration of whether *Rooker-Feldman* applies, the Court will turn to the application of the *Younger* abstention doctrine and Rule 12(b)(6).

### a. *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine[3] stands for the proposition that federal district courts generally lack jurisdiction to review state court judgments. *T. M. v. Univ. of Maryland Med. Sys. Corp.*, 146 S. Ct. 1739, 1746 (2026) (citing *Atlantic Coast Line R. Co. v. Locomotive Engineers*, 398 U.S. 281 (1970)). The Supreme Court of the United States is the only federal court with appellate jurisdiction to review state court judgments. *Id.* This doctrine rests on a "negative inference" from 28 U.S.C. §§ 1257 and 1331, which delineate the jurisdiction of the Supreme Court to review state court judgments, and the federal question

[3] *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), are the two cases forming the basis of what is called the *Rooker–Feldman* doctrine.

jurisdiction of the district courts, respectively. *Id.* at 1750. The *Rooker-Feldman* jurisdictional bar applies to judgments that remain subject to further review in state court. *T.M.*, 146 S. Ct. at 1748-49.

The *Rooker-Feldman* doctrine is narrow; it bars only "cases brought by state court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "Reduced to its essence, *Rooker* held that when a losing plaintiff in state court brings a suit in federal district court asserting as legal wrongs the allegedly erroneous legal rulings of the state court and seeks to vacate or set aside the judgment of that court, the federal suit is a forbidden de facto appeal." *Noel v. Hall*, 341 F.3d 1148, 1156 (9th Cir. 2003) (discussing *Rooker*, 263 U.S. 413). If a forbidden de facto appeal is brought from a state court decision, the federal court must also decline to hear any claims that are "'inextricably intertwined' with the state court decision." *Noel*, 341 F.3d at 1158.

The *Feldman* case itself demonstrates the distinction between issues that are inextricably intertwined with a state court judicial decision, and those that are not. *See Feldman*, 263 U.S. at 413. In *Feldman*, two graduates of unaccredited law schools challenged under the Fifth Amendment the validity of a rule promulgated by the local District of Columbia court—and judicially applied to the graduates by the same—that prevented them from sitting for the bar examination in the District. *Id.* at 468-69. The Court held that to the extent that the graduates' suit sought direct review in federal court of the local court's judicial decision applying to the rule to them, it was a forbidden appeal. *Id.* at 482. Moreover, insofar as the graduates' suit presented an as-applied constitutional challenge to the rule itself, that challenge was inextricably intertwined with the judicial decision of the local court, and therefore also unreviewable in federal court. *Id.* at 486-87. The only portion of the graduates' suit that could be entertained in federal court was their facial challenge to the constitutionality of the rule, unrelated to any particular application. *See id.*

Here, the state court rendered a judgment against Plaintiff before the commencement of this federal action (Doc. 18-3); as such, if any of Plaintiff's claims constitute a de facto appeal from the state court decision, those claims and any claims "inextricably intertwined" with them would not be reviewable in this Court.

Counts I and II of Plaintiff's FAC skirt characterization as de facto appeals from the state court judgment. These Counts allege violations of the Fourth Amendment and the Fourteenth Amendment, respectively, caused by various Defendants' failure to comply with certain portions of the Tucson City Code, and their failure to update Plaintiff on Sergeant Snuggles' condition. (Doc. 14 at 18-23.) The portions of the City Code cited by Plaintiff relate to the procedures prescribed for impoundment of an animal prior to a hearing on its ultimate disposition. (*See id.*) These portions of the City Code were not directly addressed in the Tucson City Court or Pima County Superior Court rulings in this matter; the issue before both courts was whether Plaintiff's dog could be deemed "vicious" as defined by the Tucson City Code. (*See* Doc. 18-3.) Nor did the state courts address what, if any, information should be provided to Plaintiff regarding the dog's condition. (*Id.*) As such, it does not appear that Counts I or II assert as legal wrongs the allegedly erroneous legal rulings of the state court.[4]

Count III also avoids designation as a de facto appeal from the judgment of the state court. Count III alleges that the state-law requirement that Plaintiff pay a $3,600 bond and $16,000 in boarding fees for her dog during the pendency of her appeals in state court is a violation of substantive due process under the Fourteenth Amendment. (Doc. 14 at 23.) It is unclear from the FAC whether Plaintiff challenges the relevant portions of the Tucson City Code, § 4-11(h) and § 4-11(l), as facially unconstitutional or unconstitutional as applied to her. (*See id.*) Regardless of the exact nature of Plaintiff's claim, these provisions were not addressed in the state court proceedings, and Plaintiff therefore does not assert as

[4] The Court notes, however, that a claim under 42 U.S.C. § 1983 requires the deprivation of a *federal* right. *See Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397 (1997). A violation of state law does not give rise to a federal civil rights claim. *Ove v. Gwinn*, 264 F.3d 817, 824 (9th Cir. 2001); *see also Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996) ("[Movant] may not . . . transform a state-law issue into a federal one merely by asserting a violation of due process.").

a legal wrong any erroneous legal ruling of the state court in Count III.

Finally, Counts IV, V, and VI allege that various portions of the Tucson City Code provisions governing the impoundment and disposition of animals believed to be vicious or dangerous are facially unconstitutional under the Fourteenth Amendment. (Doc. 14 at 24-30.) These claims were not presented to the state court, and as in *Feldman*, the Court concludes that such facial challenges do not constitute a de facto appeal from the judgment of the state court.

In sum, the Court does not find that the *Rooker-Feldman* jurisdictional bar is applicable to any of Plaintiff's claims. Accordingly, the Court must next consider whether it should abstain from adjudicating this case under the *Younger* doctrine.

**b. *Younger* Abstention**

In "exceptional circumstances," the *Younger* abstention doctrine requires a federal court to decline to hear a case when a parallel state proceeding is ongoing. *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 368 (1989) (discussing *Younger v. Harris*, 401 U.S. 37 (1971)). *Younger* abstention is rooted in "overlapping principles of equity, comity, and federalism[.]" *Arevalo v. Hennessy*, 882 F.3d 763, 765 (9th Cir. 2018).

In order to determine whether *Younger* abstention is appropriate, a federal court must consider whether the ongoing state proceeding falls into one of the three following categories of cases: (1) "ongoing state criminal prosecutions"; (2) "certain civil enforcement proceedings" that are generally "akin to a criminal prosecution"; and (3) "civil proceedings involving certain orders . . . uniquely in the furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) (cleaned up).

If the state proceeding falls into one of those categories, the court must next consider whether each part of the following three-part inquiry is satisfied: (1) the state proceeding must be "ongoing"; (2) "implicate important state interests"; and (3) provide "an adequate opportunity . . . to raise constitutional challenges." *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). If the state proceeding falls into one of the three

categories identified above and meets the three *Middlesex* elements, a federal court should abstain under *Younger* if "the federal action would have the practical effect of enjoining the state proceedings." *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014).

The Court will consider first whether the ongoing state court proceedings between the State of Arizona and Plaintiff fall into the categories of cases that trigger *Younger* abstention, and thereafter will consider whether the three *Middlesex* elements are satisfied. Finally, the Court will consider whether any claims in this action would have the practical effect of enjoining the parallel state proceedings.

**i. Categories of Cases Triggering *Younger* Abstention**

The City of Tucson and Pima County both contend that the state court proceedings at issue in this matter are civil enforcement proceedings akin to a criminal prosecution.[5] (Doc. 18 at 8; Doc. 19 at 5.) Civil enforcement proceedings are likely akin to a criminal prosecution when they are "initiated to sanction the federal plaintiff, i.e., the party challenging the state action, for some wrongful act. In cases of this genre, a state actor is routinely a party to the state proceeding and often initiates the action. Investigations are commonly involved, often culminating in the filing of a formal complaint or charges." *Sprint*, 571 U.S. at 79-80. Other district courts to consider the question have determined that civil proceedings initiated by the state for the forfeiture and euthanasia of a dog fall into the category of a civil enforcement proceeding warranting *Younger* abstention. *Kabir v. City of Elk Grove*, No. 2:22-CV-01661-TLN-DB, 2022 WL 4540097 (E.D. Cal. Sept. 28, 2022); *Najman v. Vill. of Sands Point, New York*, No. 19-CV-5811 (JS)(SIL), 2021 WL

[5] Pima County also contends that the state court proceeding at issue falls into the category of a civil proceeding involving orders uniquely in the furtherance of the state courts' ability to perform their judicial functions. (Doc. 19 at 5.) Cases in this category implicate "the regular operation of [a state court's] judicial system" with respect to "the processes by which the State compels compliance with the judgements of its courts[.]" *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 13-14 (1987). For example, this category has been applied by the Supreme Court to require federal courts to avoid interfering with civil contempt orders issued by state courts, *Juidice v. Vail*, 430 U.S. 327, 336 n. 12 (1977), and to avoid interfering with state requirements to post bond pending appeal, *Pennzoil*, 481 U.S. at 3. Here, the Court does not find persuasive Pima County's argument that a state court proceeding for forfeiture and euthanasia of a dog implicates a state court's ability to perform its judicial functions.

1026512 (E.D.N.Y. Mar. 17, 2021); *Van Patten v. City of Binghamton*, 137 F. Supp. 2d 98 (N.D.N.Y. 2001).

Here, the Court concludes that the parallel state court proceedings at issue are civil enforcement proceedings akin to a criminal prosecution. The parallel state proceedings were initiated to sanction Plaintiff with forfeiture of her dog due to its attack on Plaintiff's mother.[6] The State of Arizona initiated the proceedings against Plaintiff in Tucson City Court via a Petition for Order to Show Cause Re: Animal Forfeiture, and in response to the filing, the presiding Tucson City Court judge ordered Plaintiff to appear and explain why the relief sought in the Petition should not be granted. (Doc. 14-4.) The Petition contains approximately five pages of detailed factual allegations, and the Disclosure in Support of the Petition lists several witnesses and exhibits that the State sought to use during the hearing on the Petition. (*Id.*) The factual allegations, witness list and exhibit list indicate that an investigation took place prior to the commencement of the proceedings. As such, in accordance with other district courts, the Court finds that the proceedings initiated by the State against Plaintiff for forfeiture of her dog are civil enforcement proceedings akin to a criminal prosecution.[7]

**ii. *Middlesex* Elements**

**1. Ongoing State Proceeding**

The first *Middlesex* element is satisfied if the parallel state proceedings were ongoing on the date that the federal action was filed. *Gilbertson v. Albright*, 381 F.3d 965, 969 n.4 (9th Cir. 2004). In her response to Defendants' Motions to Dismiss the FAC, Plaintiff does not challenge the satisfaction of this element in this matter. (*See* Doc. 22 at 14-15.) This federal action was filed on July 17, 2026 (Doc. 1); on that date, Plaintiff's appeal from the Pima County Superior Court's disposition of her Petition for Special

---

[6] The Court notes that Plaintiff has characterized the proceedings initiated against her as "criminal" in her filings with the Pima County Superior Court. (Doc. 19-7 at 18.)

[7] When, as here, obtaining state-court review of the original judgment requires the federal plaintiff to file a writ or petition in another state court, the proceedings are to be treated as a "unitary" process, and the reasons why the original judgment constituted a civil enforcement proceeding apply equally to the subsequent action. *Kabir*, 2022 WL 4540097 at *6.

Action was pending.[8] (Doc. 19-6 at 2.) Accordingly, the first *Middlesex* element is satisfied.

**2. Important State Interests**

The second *Middlesex* element is satisfied if the ongoing state proceedings implicate an important state interest. *Gilbertson*, 381 F.3d at 969. Important state interests may be implicated in a proceeding for the enforcement of a municipal code. *Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 801 (9th Cir. 2001). Moreover, a municipality has "a strong interest in the safety of its residents, including by protecting them against dog bites." *Kabir*, 2022 WL 4540097 at *7 (concluding that *Younger* abstention applied to civil enforcement proceeding initiated for forfeiture and euthanasia of dog). In her response to Defendants' Motions to Dismiss the FAC, Plaintiff does not dispute that protecting the safety of residents from dog bites is an important state interest. (*See* Doc. 22 at 14-15.) The Court concludes that the ongoing state proceedings at issue implicate the important state interest in protecting public health and safety.

**3. Adequate Opportunity to Raise Constitutional Challenges**

The third and final *Middlesex* element is satisfied if the state proceedings afford the federal plaintiff an adequate opportunity to raise her constitutional challenges. *Gilbertson*, 381 F.3d at 969. "A federal court's exercise of *Younger* abstention does not turn on whether the federal plaintiff actually avails [herself] of the opportunity to present federal constitutional claims in the state proceeding, but rather whether such an opportunity exists." *Herrera v. City of Palmdale*, 918 F.3d 1037, 1046 (9th Cir. 2019) (citing *Juidice v. Vail*, 430 U.S. 327 (1977)). "The burden on this point rests on the federal plaintiff to show that state procedural law barred presentation of [her] claims." *Id.* (cleaned up). "[A] federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987); *see also Baffert v. California Horse Racing Bd.*, 332 F.3d 613, 619 (9th Cir.

[8] The appeal is still pending as of the date of this Order. (Doc. 19-6 at 2.)

2003).

Here, Plaintiff argues that a petition for special action review "affords no forum for § 1983 damages against the City and three individual officers, for *Monell* discovery, or for a facial injunction running prospectively against future enforcement." (Doc. 22 at 15.) However, the very basis of the *Younger* doctrine is the recognition that principles of comity require federal courts to refrain from undue interference with state court proceedings through injunctions, and "*Younger* principles may apply to claims for damages under § 1983." *Gilbertson*, 381 F.3d at 979. The third *Middlesex* element is not concerned with whether the state court provides a forum for damages under § 1983. *See id.* Moreover, an injunction is not needed when, as here, the execution of a judgment is stayed pending appeal and a state court may simply declare in the course of direct review that Plaintiff prevailed on a constitutional challenge. Plaintiff has not shown that she lacks an adequate opportunity to raise her constitutional claims in the state proceedings, and the Court therefore concludes that the third *Middlesex* element is satisfied.[9]

#### iii. Whether This Action Would Have the Practical Effect of Enjoining State Proceedings

As stated above, if the parallel state proceeding falls into one of the three categories of cases triggering *Younger* and meets the three *Middlesex* elements, a federal court should abstain under *Younger* if "the federal action would have the practical effect of enjoining the state proceedings." *ReadyLink*, 754 F.3d at 759. However, "direct interference" is not a condition of *Younger* abstention. *Gilbertson*, 381 F.3d at 978. Seeking to have a federal court declare facially unconstitutional a portion of a municipal code has the practical effect

[9] Plaintiff initiated review of the Tucson City Court's judgment against her via a Petition for Special Action in Pima County Superior Court. Rule 4 of the Arizona Rules of Procedure for Special Actions provides that "[a] special action may be brought only if a lower court or a body, officer, or person: (a) failed to exercise discretion that they have a duty to exercise; or failed to perform a duty required by law for which they have no discretion; (b) proceeded, or threatened to proceed, without, or in excess of, jurisdiction or legal authority; or (c) made a decision that was arbitrary and capricious or an abuse of discretion, which can include a legal error." The Ninth Circuit has concluded that similar language governing state court review of administrate proceedings in California provided an adequate opportunity for review of constitutional claims. *Kenneally v. Lungren*, 967 F.2d 329, 333 (9th Cir. 1992).

of enjoining state proceedings enforcing that portion of the code. *Villa San Clemente, LLC v. City of San Clemente*, No. SACV171484JVSJCGX, 2017 WL 8793227 at *5 (C.D. Cal. Dec. 22, 2017).

Here, success on Counts I(A) and I(B), II, IV, V, and VI of Plaintiff's FAC would have the practical effect of enjoining the parallel state proceedings. Count I(A) alleges that the failure to comply with Tucson City Code provisions governing the impoundment of animals during Sergeant Snuggles' initial detention was a violation of the Fourth Amendment. (Doc. 14 at 19.) Although Plaintiff's FAC is not entirely clear, Count I(A) appears to serve as a basis upon which Plaintiff seeks Sergeant Snuggles' release; however, the Tucson City Court has ordered him forfeited to the State, and the Pima County Superior Court has affirmed that order. (Doc. 18-3.) Count I(B) also alleges that Sergeant Snuggles' detention is a violation of the Fourth Amendment, but, as noted, the Tucson City Court has ordered him forfeited. (*Id.*) Count II argues that the failure to comply with portions of the Tucson City Code governing the impoundment of animals constitutes a violation of procedural due process under the Fourteenth Amendment. (Doc. 14 at 21.) While, as with Count I(A), the exact nature of Count II is opaque, it implies the invalidity of the state court proceedings, or at the least, Sergeant Snuggles' ongoing detention. (*See id.*)

Counts IV, V, and VI request that the Court declare unconstitutional various portions of the Tucson City Code governing the confiscation and designation of dangerous and vicious animals. (*Id.* at 24-30.) These portions of the Tucson City Code are enmeshed with the ongoing state proceedings, and a judgment that they are unconstitutional would therefore have the practical effect of enjoining the parallel state-court proceedings linked to Sergeant Snuggles. Although Plaintiff argues that she does not "request that this Court enjoin, vacate, or declare invalid any Arizona order[,]" (Doc. 22 at 14), the issue of whether Plaintiff asks this Court to directly invalidate an order of an Arizona court is distinct from whether this action would have the practical effect of enjoining the state proceedings.

Count III is the sole claim that would not have the practical effect of enjoining the state proceedings. Count III is Plaintiff's claim that the requirement that she pay a $3,600

bond and $16,000 in boarding fees—which continue to accrue—during the pendency of her appeals in state court is a violation of substantive due process under the Fourteenth Amendment. (Doc. 14 at 23.) This claim does not concern the detention or euthanization of Plaintiff's dog, nor the validity or constitutionality of any state-court proceeding. Since there is no readily apparent reason why this claim would have the practical effect of enjoining the ongoing state-court proceedings, the Court will proceed with consideration of this claim, as more fully set forth below.

Since Counts I(A) and (B), II, IV, V, and VI would have the practical effect of enjoining the state proceedings, the Court concludes that *Younger* abstention is appropriate in the above-captioned matter as to those claims.

**iv. Exceptions to *Younger* Abstention**

Although the parties do not address the issue, the Court finds it appropriate to examine whether any recognized exceptions to *Younger* abstention may apply in this matter. Even where application of the *Middlesex* elements discussed above would indicate that *Younger* abstention is required, a federal court should not invoke the *Younger* doctrine if there is a "showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate." *Stockton v. Brown*, 152 F.4th 1124, 1138 (9th Cir. 2025), *cert. denied*, 146 S. Ct. 2627 (2026) (cleaned up). However, "a mere allegation of bad faith or unconstitutionality" is not sufficient to show that exercising jurisdiction is appropriate. *Id.*; *Baffert*, 332 F.3d at 621 ("[T]he constitutional dimension of the error claimed does not, by itself, constitute an exception to the application of *Younger* abstention."). An example of "extraordinary circumstances" includes a deprivation of a person's physical liberty that cannot be fully vindicated after trial. *Arevalo v. Hennessy*, 882 F.3d 763 (9th Cir. 2018) (holding that *Younger* abstention did not apply where petitioner was incarcerated for over six months without a constitutionally adequate bail hearing).

Here, while Plaintiff vigorously contests the constitutionality of Defendants' actions and the outcome of the parallel state-court proceedings, these arguments are insufficient to

show that *Younger* abstention should not be invoked in this case. Moreover, while the FAC indicates that Plaintiff believes the state-court proceedings were initiated without justification, it alleges no facts adequate to show bad faith or harassment. Finally, although the Court recognizes the emotional toll the state-court proceedings have taken on Plaintiff, this case is not comparable to one in which a person alleges that he or she has been detained in violation of the Constitution. As such, the Court concludes that no exception to the application of *Younger* abstention is applicable.

**v. Effect of *Younger* Abstention on This Matter**

If *Younger* principles apply, claims for injunctive relief should be dismissed because such claims ask only that the federal court interfere with the state proceeding. *Gilbertson*, 381 F.3d at 981. When damages are sought and *Younger* principles apply, a federal court should instead "refrain from exercising jurisdiction *temporarily*" by staying litigation as to claims for damages "until such time as the state proceeding is no longer pending." *Id.* (emphasis in original). If there are claims to which *Younger* does not apply, those claims should proceed without a stay. *Herrera*, 918 F.3d at 1049.

Plaintiff's claims for injunctive relief—the Application for TRO contained in her original Complaint and her Application for Preliminary Injunction (Docs. 1, 4)—will be denied insofar as they arise from Counts I, II, IV, V, and VI, because *Younger* principles apply to these claims as discussed above. Insofar as Plaintiff seeks damages under Counts I, II, IV, V, and VI, these claims will be stayed until the parallel state proceedings at issue in this case are no longer pending. Consideration of Count III will proceed because *Younger* principles do not apply to this claim, as discussed above.

**IV. Motions to Dismiss the FAC – Arguments as to Count III**

In Defendants' Motions to Dismiss the FAC, Defendants argue pursuant to Federal Rule of Civil Procedure 12(b)(6) that Plaintiff fails to state a claim in Count III. As previously noted, Count III is Plaintiff's claim that the Tucson City Code requirement that she pay a bond and boarding fees—which continue to accrue—during the pendency of her appeals in state court is a violation of substantive due process under the Fourteenth

Amendment. (Doc. 14 at 23.) Tucson City Code § 4-11(h) states that "[i]f an animal is impounded pursuant to this section, the owner must post twenty (20) days of impoundment fees in advance as a bond to defray some of the costs of boarding, impoundment and any veterinary care needed." Tucson City Code § 4-11(l) states that "[u]nless good cause is shown, the owner shall be liable for all veterinary, impound and board fees resulting from the animal's impoundment until a final decision by the magistrate or special magistrate including the pendency of an appeal. The owner shall not be responsible for any fees if the owner prevails at the hearing or ultimately on appeal."

**a. Legal Standard**

Dismissal of a complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990)). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

A court evaluating a motion to dismiss must view the complaint "in the light most favorable to the plaintiff." *Abramson v. Brownstein*, 897 F.2d 389, 391 (9th Cir. 1990). "If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distribg. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

**b. Discussion**

The Fourteenth Amendment's Due Process Clause prohibits states from depriving persons of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1. The clause protects individuals against violations of both substantive and procedural

due process. *Regino v. Staley*, 133 F.4th 951, 959 (9th Cir. 2025). The substantive component of the Due Process Clause "forbids the government from depriving a person of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with rights implicit in the concept of ordered liberty.'" *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)).

When a fundamental right—such as matters relating to marriage, family, procreation, and the right to bodily integrity—is not implicated, government action need only have a rational relationship to a legitimate state interest to survive a substantive due process challenge. *Witt v. Dep't of the Air Force*, 527 F.3d 806, 817 (9th Cir. 2008) ("Substantive due process cases typically apply strict scrutiny in the case of a fundamental right and rational basis review in all other cases.").

Even assuming that Tucson City Code § 4-11(h) and § 4-11(l) effect a deprivation of property by requiring the owners of impounded animals to post bond and pay boarding and veterinary fees during the appeal of an order for the forfeiture of an animal, these requirements do not shock the conscience or interfere with rights implicit in the concept of ordered liberty. These requirements are rationally related to the legitimate government interest in ensuring that sufficient funds exist to maintain adequate care of the animal while the legal case linked to it proceeds. Moreover, § 4-11(l)'s specification that if "good cause" is shown an owner may not be required to pay fees suggests that Plaintiff could argue to the state court that the fees are an undue burden. The statement that "[t]he owner shall not be responsible for any fees if the owner prevails at the hearing or ultimately on appeal" further demonstrates the reasonableness of the provision. The Court concludes that Plaintiff has not alleged facts sufficient to state a plausible claim for violation of substantive due process, and Count III must therefore be dismissed.[10]

Accordingly,

. . . .

---

[10] Since Count III must be dismissed, Plaintiff's Application for Temporary Restraining Order (Doc. 1) and Application for Preliminary Injunction (Doc. 4) will be denied to the extent that they request issuance of injunctive relief arising from Count III.

**IT IS ORDERED:**

1. Plaintiff's Application for Temporary Restraining Order (Doc. 1) is **denied**.
2. Plaintiff's Application for Preliminary Injunctive Relief and Motion for Expedited Consideration (Doc. 4) is **granted** to the extent that the Court has prioritized the resolution of the Application and is **otherwise denied**.
3. Defendants' Motions to Dismiss Plaintiff's original Complaint (Docs. 8, 10) are **denied as moot**.
4. Defendants' Motions to Dismiss Plaintiff's FAC (Docs. 18, 19) are **granted** insofar as the Court concludes that *Younger* abstention is applicable to Counts I, II, IV, V, and VI, and insofar as the Court **dismisses** Count III for failure to state a claim.
5. Counts I, II, IV, V, and VI are **stayed** pending resolution of the parallel state-court proceedings at issue in this matter. The parties shall file a status report **thirty (30) days** from the date this Order is filed, and every **sixty (60) days** thereafter, describing the status of the parallel state-court proceedings. The parties shall notify the Court within **five (5) days** of the date that the parallel state-court proceedings conclude.

Dated this 4th day of November, 2026.

Honorable Rosemary Márquez
United States District Judge